UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| GUANGZHOU CONSORTIUM DISPLAY PRODUCT, LTD., *et al.* <br><br> Plaintiffs, <br><br> vs. <br><br> PNC BANK, N.A., *et al.*, <br><br> Defendants. | Civil Action No. 2:11-cv-00005 <br><br> DECLARATION OF YUNNI TANG IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b) |

I, Yunni Tang, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am account manager for defendant Standard Chartered Bank (China) Limited (Guangzhou Branch) ("SCBC"). I make this declaration in support of SCBC's Motion to Dismiss plaintiffs' First Amended Complaint in the above-captioned action. I make this declaration based on my personal first-hand knowledge and experience as well as based on information and belief after a review of relevant records and correspondence maintained by SCBC. If called as a witness, I could and would competently testify to what is stated in this declaration.

### Corporate Background of Standard Chartered Bank (China) Limited

2. Since April 2007, SCBC has been a commercial bank incorporated in China under Chinese law. SCBC is an independent subsidiary of Standard Chartered Bank, a U.K.-based bank. SCBC is not a branch of Standard Chartered Bank. SCBC is a separate and independent legal entity existing under Chinese law.

3. Other than its U.K.-based parent, SCBC has no other parent entity. It also does not own any subsidiary. Likewise, SCBC does not own or operate branches outside of China.

4. SCBC is a general banking business that provides retail and wholesale banking



EXHIBIT 1

services to individuals and corporate entities in China.

5. SCBC conducts no business in the United States of America, owns no property in the U.S., has no employees in the U.S., has no U.S. mailing address, does not solicit business or advertise its banking services in the U.S., does not pay taxes directly in the U.S., and is not licensed to do business in any U.S. State.

6. SCBC maintains an internet website accessible from the U.S. at www.standardchartered.com.cn. With regard to jurisdiction, the website sets forth the following legal notice on its Terms & Conditions page, www.standardchartered.com.cn/terms-and-conditions/en:

> The Bank controls and maintains this Web Site from the People's Republic of China (for the purpose of this Legal Notice, excluding Hong Kong SAR, Macao SAR and Taiwan). The materials and information contained in this section of this Web Site, relating to the People's Republic of China, is directed at and restricted to individuals resident in or entities having a place of business in the People's Republic of China ONLY. The Bank makes no representation that the materials and information contained herein is appropriate or available for use in other locations / jurisdictions.

### Origination of Loan to Guangzhou Consortium Display Product, Ltd.

7. Representatives of plaintiff Guangzhou Consortium Display Product, Ltd. ("Guangzhou Consortium") first contacted SCBC by e-mail in June 2007 regarding a potential loan to Guangzhou Consortium. A director of Guangzhou Consortium who is also its Chief Financial Officer, Roger Schreiber, initiated contact with SCBC on that occasion. Mr. Schreiber introduced himself as a director of Guangzhou Consortium, a Chinese company that SCBC knew to be located in the Guangdong province of China.

8. Mr. Schreiber explained to SCBC in June 2007 that SCBC's services had been recommended to Guangzhou Consortium by National City Bank ("NCB").

9. Mr. Schreiber subsequently traveled to the Guangzhou branch of SCBC and met

face-to-face with two SCBC employees, Mr. Lucas Du, an Assistant Vice President and Relationship Manager, and Ms. Olive Zhang, a Credit Analyst.

10. SCBC and Mr. Schreiber negotiated a loan for Guangzhou Consortium at an in-person meeting in China and by e-mail. The negotiations culminated in a loan agreement dated July 2, 2007. The loan agreement was signed in China on behalf of Guangzhou Consortium by Joyce Xu, a Chinese citizen and employee of Guangzhou Consortium. Ms. Xu was authorized to sign the loan agreement by a resolution of Guangzhou Consortium's board of directors. The members of the Guangzhou Consortium board of directors who authorized entering into the loan agreement were Steven Oberst, a U.S. resident, Lynda Oberst, a U.S. resident, Roger Schreiber, a U.S. resident, Godwin Chow, a Hong Kong resident, and Esther Chow, a Hong Kong resident. A true and correct copy of the loan agreement and the corresponding board resolution of Guangzhou Consortium are attached hereto as Exhibits A and B, respectively.

11. The July 2, 2007 loan agreement was by and between Guangzhou Consortium, a Chinese corporation, and SCBC, a Chinese bank. There were no other parties or signatories to the loan agreement. *See* Exhibit A.

12. To secure the repayment obligation of Guangzhou Consortium, it was agreed by and between Guangzhou Consortium and SCBC that, in addition to signing the loan agreement and bearing direct responsibility for the loan's repayment, Guangzhou Consortium would take the necessary steps to cause another bank to issue a letter of credit to protect SCBC against a potential default on the loan by Guangzhou Consortium.

13. SCBC took no part in negotiating the issuance of a letter of credit. On August 12, 2007, NCB issued a standby letter of credit to SCBC (the "Standby Letter of Credit").

14. SCBC's loan to Guangzhou Consortium was an arm's length transaction

negotiated between SCBC and representatives of Guangzhou Consortium, including Roger Schreiber and Joyce Xu. SCBC's request that Guangzhou Consortium procure a Standby Letter of Credit to protect SCBC's loan to Guangzhou Consortium was likewise part of the arm's length negotiation of terms of the loan.

### Loan Maintenance

15. Once the loan was in effect, from 2007 to 2010, all dealings with regard to the loan were exclusively between Guangzhou Consortium and SCBC. To wit:

   A. SCBC received all payments of principal and interest on the loan directly from Guangzhou Consortium.

   B. SCBC mailed loan statements to Guangzhou Consortium at its mailing address in China.

   C. SCBC's point of contact at Guangzhou Consortium for any loan issues was Joyce Xu, a Guangzhou Consortium employee and resident and citizen of China. SCBC employees were in frequent e-mail contact with Ms. Xu from 2007 to 2010.

   D. SCBC employees held in-person meetings with Roger Schreiber, CFO and Guangzhou Consortium director, and Steven Oberst, a Guangzhou Consortium director, at SCBC's offices in Guangzhou, China.

16. SCBC employees never traveled to the U.S. to conduct meetings with Mr. Schreiber or any other Guangzhou Consortium board member there.

17. SCBC did not participate in the negotiation of any amendments to the Standby Letter of Credit.

18. Over the course of the loan relationship, SCBC grew increasingly concerned about Guangzhou Consortium's ability to repay the loan from SCBC. SCBC requested on a

number of occasions that Guangzhou Consortium increase its capital in case of need.

19. As a result of SCBC's demands that Guangzhou Consortium's capital be increased to improve its loan repayment capability, in August 2008, Guangzhou Consortium procured two letters of undertaking from Guangzhou Consortium's two shareholders, Consortium Companies, Incorporated, a U.S. corporation, and Smart Plus Development Limited, a Hong Kong corporation. The letters of undertaking were intended to insure that Guangzhou Consortium would be sufficiently capitalized. True and correct copies of the letters of undertaking are attached hereto as Exhibits C and D, respectively.

20. In an e-mail dated August 10, 2008, SCBC explained to Roger Schreiber that the reason it was requesting the letters of undertaking from Guangzhou Consortium's shareholders, and the reason SCBC desired that Guangzhou Consortium's capitalization be increased, was because "[a]ccording to China SAFE's regulation, foreign banks can not claim overseas securities and convert USD into RMB if there is no GAP between its total approved investment amount and registered capital for Guangzhou Consortium. Guangzhou Consortium ("The Company") has zero GAP at current moment, thus we need undertaking from shareholder that in case of need, the parent will make necessary capital injection to enlarge the GAP between total approved investment amount and registered capital." This statement informed Roger Schreiber that SCBC would be unable to use U.S. dollar funds received by it under a demand on the Standby Letter of Credit to satisfy the debt owed by Guangzhou Consortium in Chinese Renminbi if Guangzhou Consortium was insufficiently capitalized. A true and correct copy of the August 10, 2008 e-mail to Roger Schreiber is attached hereto as Exhibit E.

21. Despite the letters of undertaking and other assurances of capitalization, Guangzhou Consortium remained grossly undercapitalized through at least July 2010.

22. At no time in the history of the loan did SCBC have any dealings or interaction with plaintiff Consortium Companies, Incorporated.

**Demand for Payment Under Letter of Credit**

23. SCBC first learned that PNC would not renew its Standby Letter of Credit as of July 13, 2010, when it was so informed in an e-mail from Roger Schreiber, a director of Guangzhou Consortium, on or about March 1, 2010.

24. SCBC later received a SWIFT communication from PNC on April 29, 2010, informing SCBC that the Standby Letter of Credit would not be renewed.

25. SCBC informed Guangzhou Consortium directors Steven Oberst and Roger Schreiber by e-mail that it intended to demand payment on the Standby Letter of Credit before July 13, 2010, if Guangzhou Consortium failed to fulfill its repayment obligation.

26. By July 1, 2010, Guangzhou Consortium and PNC had been unable to reach a solution that would protect SCBC from risk of non-payment on its loan. As a result, SCBC issued a SWIFT message on July 1, 2010, to NCB/PNC, exercising its right to draw payment under the Standby Letter of Credit.

27. SCBC received payment from PNC under the Standby Letter of Credit on July 9, 2010.

28. At all relevant times, SCBC had no interaction or contact with the United States of America, the State of Kentucky, or plaintiffs Consortium Companies, Incorporated, Steven M. Oberst, Lynda S. Oberst, Clinton S. Oberst, Susan J. Oberst, or Roger C. Schreiber. The only contact between SCBC and any of the individual plaintiffs in the present action was in their representative capacities as board members of Guangzhou Consortium.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

    Executed on July 4, 2012, at Guangzhou, China.

                                                                               [Yunni Tang]