UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| **GUANGZHOU CONSORTIUM DISPLAY PRODUCT, LTD,** *et al.* | : | **Case No. 2:11-CV-00005-DLB** |
| | : | |
| | : | **JUDGE DAVID L. BUNNING** |
| **Plaintiffs,** | : | |
| | : | **MAGISTRAGE JUDGE** |
| **vs.** | : | **J.GREGORY WEHRMAN** |
| | : | |
| **PNC BANK, NATIONAL ASSOCIATION,** *et al.* | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
STANDARD CHARTERED BANK (CHINA) LIMITED'S MOTION TO DISMISS
AND REQUEST FOR EVIDENTIARY HEARING
ON ISSUE OF PERSONAL JURISDICTION**

**(EVIDENTIARY HEARING AND ORAL ARGUMENT REQUESTED)**

---

## I.   INTRODUCTION

Through a general appearance,[1] Defendant Standard Chartered Bank (China)

Limited ("SCBC") has moved to dismiss this action for lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(2).  (Doc. # 57).  SCBC has also moved to dismiss

Plaintiffs' claim for breach of fiduciary duty pursuant to Fed. R. Civ. P. 12(b)(6).  *Id.*   In

support of its Motion, SCBC selectively attempts to misguide the Court by (a) arguing

this action arises from a simple loan agreement; and (b) making inaccurate, broad-

sweeping statements based exclusively on "facts" set forth in a document outside of the

---

[1] As the Sixth Circuit Court of Appeals has previously held, a general appearance alone constitutes a waiver of a personal jurisdiction defense.  *Gerber v. Riordan,* 649 F.3d 514 (6th Cir. 2011).

pleadings -- the Declaration of Yunni Tang.  Aside from the fact that Lucas Du – not Yunni Tang – was Plaintiffs' principal point of contact at SCBC, the Declaration cannot be accurate or based on first-hand knowledge, in light of the information gathered to date.  The Declaration is devoid of any specific first-person references that would demonstrate Yunni Tang had any direct knowledge of the "facts" she espouses.[2]

Moreover, the Declaration (and SCBC) oftentimes makes sweeping, inaccurate generalizations that contradict the allegations and the very documents already exchanged in this case.[3]   For example, SCBC and Ms. Tang state categorically that SCBC "has had no interaction or contact with the United States of America, the Commonwealth of Kentucky, or plaintiffs Consortium Companies, Incorporated [and the other plaintiffs]" even though they repeatedly interacted with Plaintiffs for more than three years and requested and received signed documents from them, including a Letter of Undertaking they attach to the Declaration.  Memo in Support, p. 4; Tang Declaration, ¶28.  Similarly, SCBC and Ms. Tang assert that "[a]ll dealings with regard to the Loan from 2007 to 2010 were exclusively between Guangzhou Consortium and SCBC," in apparent denial that SCBC specifically requested and received information from Consortium Companies, Incorporated ("Consortium USA"), a Kentucky corporation that SCBC knew owned Guangzhou Consortium Display Product, Ltd ("Consortium China"), its wholly-foreign owned enterprise. Memo in Support, p. 6;

---

[2] In fact, Yunni Tang does not appear on any of the thousands of documents (including emails) exchanged to date between Plaintiffs and Defendant PNC Bank in this case.

[3] The Affidavit of Roger Schreiber is submitted in connection with Plaintiffs' Memorandum in Opposition.  His affidavit and the supporting documents attached contradict Yunni Tang's version of events that form the basis for SCBC's Motion.

Tang Declaration, ¶15.   Perhaps most blatant, SCBC and Ms. Tang state "[a]t no time in the history of the loan did SCBC have any dealings or interaction with plaintiff Consortium Companies, Incorporated," a "fact" plainly refuted in a document SCBC supplies.  Memo in Support, p. 7; Tang Declaration, ¶22.

If the Declaration is to be considered, SCBC's assertions and inconsistencies must be examined through limited discovery and an evidentiary hearing.  This Court has discretion to allow limited discovery and hold an evidentiary hearing on the issue of personal jurisdiction even where, like here, Plaintiffs can make a *prima facie* showing of personal jurisdiction over SCBC.  Fed. R. Civ. P. 12(i).  Accord *Standafer v. Turner*, 7:05-215, 2005 WL 2403732, *1 (E.D. Ky. Sept. 28, 2005)(allowing limited discovery as to plaintiff's citizenship); *Angstrom v. Wray*, 382 F. Supp.2d 895, 898 (E.D. Ky. 2005)(allowing limited discovery to determine exact circumstances regarding jurisdiction over Florida defendant).  Accordingly, Plaintiffs respectfully request an order denying SCBC's Motion to Dismiss outright or, in the alternative, an order denying SCBC's Motion to Dismiss so as to allow limited discovery and an evidentiary hearing on SCBC's Motion to Dismiss for lack of personal jurisdiction.

Even if the Court is not inclined to grant Plaintiffs' request for limited discovery and an evidentiary hearing, Plaintiffs nevertheless demonstrate below that this Court has personal jurisdiction over SCBC and that Plaintiffs have stated a claim against SCBC upon which relief may be granted.[4]

---

[4] In addition to requesting an evidentiary hearing on SCBC's motion under Fed. R. Civ. P. 12(b)(2), Plaintiffs respectfully request oral argument with respect to SCBC's entire Motion to Dismiss.

3

## II.     STATEMENT OF FACTS

### A.     Consortium Companies, Inc.'s Chinese Investment

Plaintiff Consortium USA is a manufacturer of point of purchase displays and a designer of product packaging.  Consortium USA is a corporation duly organized and existing under the laws of the Commonwealth of Kentucky, with its principal place of business located in Erlanger, Boone County, Kentucky.  First Amended Complaint, ¶¶1-2.

Plaintiff Roger Schreiber was Consortium USA's Chief Financial Officer from December 1999 to December 2010.  Schreiber Affidavit, ¶1, attached hereto as Exhibit A.  Mr. Schreiber continues to own 25% of Consortium USA.  *Id.*, ¶2.  Plaintiff Consortium China is a wholly-foreign owned enterprise ("WFOE") of Consortium USA.  First Amended Complaint, ¶¶1-2.  As a WFOE, Consortium China is an investment vehicle operated in China but owned by a foreign investor, Consortium USA.  Schreiber Aff., ¶ 3.  (See also Law of the People's Republic of China on Wholly Foreign- Owned Enterprises, Art. 1.)[5]  To be recognized as a WFOE, each WFOE must open an account with the Bank of China or "another bank designated by the state foreign exchange control authorities."  *Id.*, Art. 18.  Moreover, each WFOE is required to open at least two bank accounts in a Chinese bank: a registered capital bank account for injection of registered capital and a Chinese Renminbi ("RMB") bank account for normal business operation.  *Id.*

[5] Available on the U.S.-China Business Council website.

In 2007, after months of soliciting Plaintiffs' business, National City Bank, predecessor in interest to Defendant PNC Bank, entered into various loan agreements with Consortium USA.  First Amended Compl., ¶11; see also Plaintiffs' Memorandum in Opposition to PNC Bank's Motion to Dismiss (Doc. # 31).  Among other things, those loan agreements were entered into for the purpose of supporting Consortium China's banking transactions in China.  First Amended Compl., ¶11.  National City had introduced SCBC as its Gateway bank and had promoted its alliance with SCBC to Consortium USA.[6]  Schreiber Aff., ¶6,¶7, Exh. A-3 at Bates Nos. CONS03538-3539, CONS04700.  As a result of the special confidence and trust it placed in National City and its successor PNC, Consortium USA changed its bank and established a banking relationship with SCBC, National City's global alliance partner.  First Amended Compl., ¶11.

### B.  SCBC's Relationship with Plaintiffs

SCBC's own website contains the following message directed to **foreign enterprises**: "Account Opening Document List To be Provided for all Accounts." www.standardchartered.com.cn/wholesale-banking/account-services/account-open-doc-list/en/.  The list consists of eleven documents required of WFOEs opening bank accounts in China, including official Business Account Opening Forms; the parent company's Articles of Association; a declaration of the beneficial owners of the parent company; and an organization chart.  *Id.*  The website also includes a United States '800 number' for callers interested in SCBC's services.  *Id.*

---

[6] National City Bank's own documents, produced in this case by Defendant PNC Bank, promote this relationship. See Documents attached as Exhibit B.

To comply with SCBC's requirements and to establish a relationship as a WFOE, Consortium USA provided numerous documents at the request of SCBC, including the business account opening forms, a declaration of the beneficial owners of Consortium USA (on Consortium USA letterhead), an organization chart (on Consortium USA letterhead), and a verified copy of Consortium USA's certificate of existence issued by the Commonwealth of Kentucky.  Schreiber Aff., ¶5, Exhibit A-1.  Those documents were furnished directly by Consortium USA to SCBC and unequivocally reflect that the WFOE is owned by a Kentucky corporation.

Moreover, as part of the relationship, SCBC required Plaintiffs to secure a U.S. standby letter of credit to secure a loan.  First Amended Compl., ¶¶11-12.  In furtherance of that standby letter of credit, Consortium USA's CFO, Roger Schreiber, had direct communication with SCBC representatives, including Lucas Du, by email and telephone.  A vast majority of those telephone calls and emails originated from or were directed to Consortium USA's offices in Kentucky.  Schreiber Aff., ¶7, Exhibit A-3.  Indeed, as part of the standby letter of credit process, SCBC requested and Consortium USA furnished documents executed and sealed in Kentucky including, but not limited to, a Subordination Agreement and Letter of Undertaking by Consortium USA.  *Id.*, ¶7, Exhibit A-3 at Bates Nos. CONS08905-8906; *Id.*,¶9, Exhibit A-4.  The Letter of Undertaking itself provides that "[t]his letter of undertaking shall be governed by and construed in accordance with the laws of the United States and we hereby irrevocably submit to the non-exclusive jurisdiction of the courts of the United States." *Id.*

At the outset, SCBC received a standby letter of credit issued to Consortium USA.   Under the initial terms of the standby letter of credit, the applicant was Consortium USA and the beneficiary was SCBC.[7]  *Id.*, ¶10.   The standby letter of credit was issued on SCBC's terms.   Memo in Support, p. 6; Exhibit 1-E to Tang Declaration.

SCBC's dealings with Consortium USA did not end with the standby letter of credit.  After it demanded payment under the standby letter of credit, SCBC continued to deal with Consortium USA and its principals concerning the very issue that is the subject of this suit – the currency conversion issue.   On multiple occasions, SCBC, through Lucas Du, participated in the discussion with Consortium USA on how potentially to address the problem.  First Amended Compl., ¶¶18-19.; Schreiber Aff., ¶7, Exhibit A-3 at Bates Nos. CONS04700, CONS11387-11391.  Among other things, Mr. Du suggested a direct capital injection by Consortium USA into an account maintained at SCBC.  *Id.*   In his emails, Mr. Du expressly communicates with Consortium USA (and PNC) on ways to solve the currency conversion issue after Plaintiffs learned about it. *Id*.  This communication and active participation by SCBC directly led to the Capital Contribution Authorization signed by Consortium USA and PNC.   In fact, Mr. Du explains it to its global partner, PNC, and indicates that a capital injection by

---

[7] The SWIFT transmission from National City Bank to SCBC on July 25, 2007 identifies the applicant of the standby letter of credit as Consortium USA and the beneficiary as SCBC.  This document, presumably in the files of SCBC, is attached as Exhibit C.

Consortium USA would be acceptable to SCBC in lieu of calling the Standby Letter of Credit.[8]   Schreiber Aff., ¶7, Exhibit A-3 at Bates No. CONS_04700.

Further, Mr. Du's own emails explain how, in 2010, SCBC had just "now" learned of the currency conversion problem. Schreiber Aff., ¶7, Exhibit A-3 at Bates No. CONS_04700.  This is in direct contradiction to Ms. Tang's declaration that this issue was brought to Consortium's attention in August 2008.  *See, e.g.*, Memo in Support, p. 8; Tang Declaration, ¶20.

## III.   ARGUMENT

### A.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT STANDARD CHARTERED BANK (CHINA) LIMITED

#### 1. The Court Should Grant an Evidentiary Hearing on the Issue of Personal Jurisdiction

Under Fed. R. Civ. P. 12(i), if a party asserts by motion any of the defenses enumerated in Fed. R. Civ. P. 12(b), such motions must be heard and decided before trial.  The trial court has the discretion to grant an opportunity for limited discovery and an evidentiary hearing on the issue of personal jurisdiction and this Court has previously called for evidentiary hearings in order to clarify the facts.   See *Standafer v. Turner*, 7:05-215, 2005 WL 2403732, *1 (E.D. Ky. Sept. 28, 2005)(allowing limited discovery as to plaintiff's citizenship); *Angstrom v. Wray*, 382 F. Supp.2d 895, 898 (E.D. Ky. 2005)(allowing limited discovery to determine exact circumstances regarding jurisdiction over Florida defendant).   Here, given the Tang Declaration proffered by

---

[8] In significant part, Mr. Du states that "we have been advised that a capital injection from [Consortium USA] . . . can solve this issue properly" and "[w]e opine it would be a good solution and we agree that once our loan outstanding has been settled via this capital injection," SCBC would return funds to PNC.

SCBC and its assertions, the Court should, at a minimum, permit additional discovery on those matters and should conduct an evidentiary hearing to consider the evidence in support of the parties' positions.

### 2. In the Absence of an Evidentiary Hearing, Plaintiffs Need Only Demonstrate a *Prima Facie* Showing of Personal Jurisdiction

When a District Court rules on a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(2) without conducting an evidentiary hearing on the issue of personal jurisdiction, a plaintiff "'need only make a *prima facie* showing of jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). To meet this burden, the plaintiff must establish "'with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3rd Cir. 1987)). In ruling on such a motion, the Court should not '"consider facts proffered by the defendant that conflict with those offered by the plaintiff'" and should "'construe the facts in the light most favorable to the nonmoving party.'" *Id.* (quoting *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)).

Plaintiffs -- not to mention SCBC's own proffered "facts" -- have established, with reasonable particularity, sufficient contacts between SCBC and the Commonwealth of Kentucky to support jurisdiction. At a minimum, the information proffered by SCBC conflicts with that of Plaintiffs and, construed in the light most favorable to Plaintiffs, requires the denial of SCBC's motion to dismiss.

### 3. Personal Jurisdiction and Due Process

Because federal jurisdiction in this case is pursuant to diversity of citizenship, Kentucky law determines whether personal jurisdiction over SCBC is appropriate. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998); accord *UAR GP Services, LLC v. Hodak,* No. 5:09-123-JMH, 2010 WL 1368903, *2 (E.D. Ky. March 31, 2010).

The Court engages in a two-step process to determine if it may exercise personal jurisdiction over an out-of-state defendant. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011); accord *Dierig v. Lees Leisure Indus., Ltd.,* No. 11-125-DLB-JGW, 2012 WL 669968, *7 (E.D. Ky. 2012 )(Bunning, J.). First, claims against an out-of-state defendant must meet **any one** of the categories of Kentucky's long-arm statute. Second, the Court must determine whether federal due process will permit the Court to exercise personal jurisdiction. *Id.*

### i.      Kentucky's Long-Arm Statute Permits Personal Jurisdiction Over SCBC

Kentucky's long-arm statute, KRS 454.210, provides in pertinent part:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly

10

> does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

SCBC contends that the only conceivable option for conferring jurisdiction is subsection (1).   Memo in Support, pp. 12-13.   SCBC relies on KRS 286.2-670 for the proposition that Kentucky law does not permit lending activities to be classified as "doing business" in Kentucky.  *Id.*, pp. 17-19.  However, in *Jude v. First Nat'l Bank of Williamson*, 259 F. Supp.2d 585, 590 (E.D. Ky. 2003), this Court questioned whether the Kentucky legislature "in enacting these exceptions to what is considered 'doing, transacting, or carrying on business'" intended for these banking activities to "also not be considered as 'transacting business' for purposes of asserting jurisdiction under Kentucky's long-arm statute."  Therefore, SCBC's argument is unavailing.

Moreover, SCBC's general and specific activities render KRS 286.2-670 inapplicable.  SCBC, through its website, provides banking services other than loaning money.                    www.standardchartered.com.cn/wholesale-banking/account-services/account-open-doc-list/en/.    Additional, limited discovery will reveal the extent to which SCBC's services and advice were provided to Consortium USA and the other Plaintiffs.  *See, e.g., Community Trust Bancorp, Inc. v. Community Trust Fin. Corp.,* No. 7:10-cv-062-KKC, 2011 WL 673751, *6 (E.D. Ky. Feb. 17, 2011)(holding that interactive online banking activities allowed defendant bank to continuously interact with residents of Kentucky).

11

Significantly, SCBC does not deny that certain banking activities at issue in this case were carried out in Kentucky through its global ally and Gateway partner, National City Bank. First Amended Compl., ¶7. And, the evidence to date establishes that SCBC had direct activity in Kentucky. SCBC directed the terms of a U.S. standby letter of credit issued to a Kentucky corporation. Then, after a currency conversion issue surfaced, SCBC participated with the Kentucky corporation, Consortium USA, and PNC Bank in discussions and direction on how to potentially solve the issue, namely through a capital injection from Consortium USA and the Capital Contribution Authorization that ultimately ensued with Defendant PNC Bank. First Amended Compl., ¶¶18-19; Schreiber Aff., ¶7, Exh. A-3.

These activities, primarily through electronic communication, took place in Kentucky, and were more than just mere lending functions. SCBC, individually and as the global partner of National City, took an active role in directing activity in Kentucky after the standby letter of credit was called. Accordingly, SCBC's persistent activities aimed at a Kentucky corporation fall outside the scope of KRS 286.2-670.

The provisions of Kentucky's long-arm statute are stated in the alternative and are not conjunctive. *Jude,* 259 F. Supp.2d at 591. Regardless of whether subsection (1) applies to SCBC, subsections (2), (3) and (4) provide equally proper bases for jurisdiction over SCBC. Specifically, SCBC cannot deny that it knew it was supplying banking services and direction to Consortium USA and its WFOE, nor can SCBC deny that it knew it was engaging in a persistent course of conduct with Consortium USA and its WFOE within Kentucky. SCBC, through its Gateway partner National City

12

Bank, dictated the terms of the standby letter of credit it required.  Memo in Support, pp. 2 and 9; First Amended Compl., ¶11.  SCBC loaned money to Consortium China, a WFOE owned by Consortium USA, and required a U.S. standby letter of credit to secure the loan.  *Id.*  Indeed, the initial standby letter of credit was issued to Consortium USA, with SCBC as the beneficiary.  Schreiber Aff., ¶10, Exhibit A-5.

Likewise, SCBC knew there was a currency conversion issue to the point that, even if SCBC claims it had told this to Plaintiffs, SCBC injected itself by participating with Consortium USA in devising a potential solution.  This culminated in an agreement (the Capital Contribution Authorization) by Defendant PNC Bank to inject capital on behalf of Consortium USA to Consortium China as an alternative to SCBC demanding payment under the standby letter of c`redit.  Among other things, the thrust of Plaintiffs' Complaint is that SCBC breached its duty by failing to ensure that the U.S. standby letter of credit would repay Consortium China's obligations to SCBC. *Id.*, ¶35.  SCBC's acts and omissions resulted in tortious injury to Plaintiffs in Kentucky. *Id.*, ¶16.  SCBC's persistent course of conduct, established by the documents and communication, occurred in Kentucky.  As a result, this Court has jurisdiction over SCBC under Kentucky's long-arm statute.

### ii.    SCBC Is Subject to Personal Jurisdiction Without Violating Due Process

A defendant may be subject to either general or specific personal jurisdiction depending on the nature of the contacts that the defendant has with the forum state. General jurisdiction "'depends on a showing that the defendant has continuous and

systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant.'" *Dierig,* 2012 WL 669968, *11 (quoting *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997)). "Specific jurisdiction, on the other hand, 'exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum.'" *Id.,* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).

In determining whether to exert specific personal jurisdiction, the Sixth Circuit has established a three-part test. First, the Court should examine whether the defendant purposefully availed itself of the privilege of acting in Kentucky or caused a consequence in Kentucky. Next, the Court should ask whether the cause of action arose from the defendant's activities in Kentucky. Finally, the Court should evaluate whether the defendant's contacts with Kentucky have a substantial enough connection so that jurisdiction would be reasonable. *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

Courts look "beyond formalistic measures such as physical presence in the forum and instead evaluate the nature of the contacts and the degree to which they represent a purposeful availment of the forum's protections and benefits." *Ware v. Delta Aliraq, Inc.,* No. 3:10-CV-484-H, 2010 WL 5186730, *3 (W.D. Ky. Dec. 15, 2010)(citing *Cummings v. Pittman,* 239 S.W.2d 77, 86 (Ky. 2007)). Moreover, "[t]he cornerstones of this analysis are foreseeability and voluntariness." *Id.* In *Ware,* an out-of-state defendant contracted with a Kentucky plaintiff to supply a turn-key boiler system to an Iraqi oil refinery.

After more than two years of planning, and expenses of $1,371,500 incurred by the plaintiff, the defendant awarded the contract to another company. *Id.*, *2. The plaintiff sued the defendant in Kentucky, alleging tort claims. *Id.*, *4. The Court denied the defendant's motion to dismiss for lack of personal jurisdiction, holding that there was "nothing random, fortuitous or attenuated about [the defendant's] contacts with Kentucky." *Id.*, *3. The Court held that the defendant "voluntarily established a working relationship" with the plaintiff for over two years, "exchanging several emails, phone calls and documents along the way." *Id.* As a result, the defendant purposely availed itself in accordance with the first *Mohasco* factor. *Id.*

Similarly, the Court in *United States v. Bacara Partners, LLC,* No. 11-342-JBC, 2012 WL 1984012, *1 (E.D. Ky. May 31, 2012) held that an out-of-state defendant "purposefully availed itself of the privilege of acting or causing a consequence in Kentucky." The defendant negotiated a business relationship with a Kentucky company by, among other things, "negotiating the agreement through correspondence into Kentucky via fax and email and presumably, telephone...." *Id.*

SCBC would have this Court believe that at all times during its banking relationship with Plaintiffs, SCBC was dealing exclusively with Plaintiffs within China. Memo in Support, pp. 5-7; see also Exhibit 1, Declaration of Yunni Tang, ¶¶9-11. However, as the evidence does and will demonstrate, SCBC had frequent contact with Roger Schreiber and Consortium USA in Kentucky, by telephone calls to and from Kentucky and email correspondence to and from Kentucky. Schreiber Aff., ¶¶7-8. These communications were significant and the vast majority of these communications

either originated or were received in Kentucky, Consortium USA's state of incorporation. Those communications also clearly identified Mr. Schreiber's role as CFO of Consortium USA, the owner of the WFOE. SCBC knew this through the documents supplied by Consortium USA over the course of the relationship including, not insignificantly, a verified certificate of corporate existence from the Commonwealth of Kentucky, the Articles of Incorporation, and a declaration of the beneficial owners of Consortium USA. *Id.,* ¶5. The email correspondence alone consists of numerous emails exchanged between Mr. Schreiber and SCBC from the summer of 2007 to late 2010. *Id.,* ¶7.

The formal banking relationship between Plaintiffs and SCBC may have ended in late 2010, when the standby letter of credit was not renewed and SCBC demanded that Consortium China pay off its loan. First Amended Compl., ¶14. However, after Plaintiffs belatedly learned that any payment made to SCBC through the standby letter of credit could not be converted to Chinese currency to repay the outstanding debt, Plaintiffs spent considerable time and resources working with SCBC (and Defendant PNC Bank for that matter) to rectify this error, to no avail. *Id.,* ¶¶18-27. As a result of the quantity and quality of the contacts between SCBC and Plaintiffs in Kentucky, and the fact that they occurred over the course of more than three years through multiple emails and telephone calls, there can be no question that SCBC purposefully availed itself of the privilege of acting or causing a consequence in Kentucky in accordance with the first *Mohasco* factor.

16

For the same reasons, the second *Mohasco* factor -- the cause of action arises from SCBC's actions in Kentucky -- is satisfied. SCBC cannot deny that it was dealing with a WFOE and Consortium USA as the owner. All of the documents establish that relationship. And, to the extent that SCBC claims that was not the case at the outset, SCBC itself converted it into a Kentucky dispute by communicating directly with Consortium USA when it notified Consortium USA of the currency conversion issue that, up to that point, it never disclosed. First Amended Compl., ¶¶15-16. It is self-evident from the First Amended Complaint that Plaintiffs' claim arises from SCBC's assumption of a duty and position of special confidence and trust with Plaintiffs. As discussed below, SCBC's acts and omissions in fulfilling that duty to Plaintiffs, and to the wholly-foreign owned enterprise owned by them, form the basis of Plaintiffs' claim and arise from SCBC's actions.

Under the third *Mohasco* factor, an inference of reasonableness arises when the first two criteria are met. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996). Notwithstanding this inference, the facts of this case demonstrate that this element is satisfied. To inquire as to reasonableness, the Court must look at "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

SCBC's argument that Kentucky has no interest in litigating this dispute is without merit. Consortium China is a WFOE of Consortium USA. First Amended Compl., ¶¶1-2. As such, Consortium China is an investment vehicle owned by a Kentucky corporation and its citizens. Kentucky has a legitimate interest in protecting

17

the business interests of its citizens and corporations.  See, e.g., *Ware,* 2010 WL 5186730 at *5 (holding that Kentucky has an interest in litigating matters where Kentucky plaintiffs allege the loss of significant amounts of money as a result of acts by out-of-state defendants).

SCBC's argument that it would be a burden to defend this case in Kentucky is equally unpersuasive.  The interests of Kentucky in litigating this case in Kentucky outweigh any burden that SCBC might face.  This is true in light of the fact that SCBC does not deny that certain banking activities in Kentucky were carried out through its global ally and Gateway partner, National City Bank.  Moreover, SCBC's website is clearly directed at foreign investment clients in the United States, including Kentucky.

When considering the pleadings and allegations in a light most favorable to Plaintiffs, there is no doubt that there is a substantial connection between SCBC and Kentucky to make it reasonable for this Court to assert personal jurisdiction over SCBC. This Court should deny SCBC's motion to dismiss.

### 4. Procedure for Evaluating a Motion to Dismiss for Lack of Personal Jurisdiction

In ruling on a motion to dismiss for lack of personal jurisdiction, the District Court has three procedural alternatives:  "'[it] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981)).

18

Here, the written submissions establish a *prima facie* showing of jurisdiction over SCBC.   At a minimum, the submitted affidavits and supporting documents contain conflicting factual statements regarding the nature of SCBC's website, SCBC's activities, and the email communications between SCBC and Plaintiffs.   In order to resolve these issues, the Court should hold an evidentiary hearing after allowing for a limited period of jurisdictional discovery.   See *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (citing *Data Disc, Inc. v. Systems Technology Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).   As the Court is aware, discovery has proceeded between Plaintiffs and Defendant PNC, after the Court denied PNC's Motion to Dismiss.   The parties are in the process of deposing certain individuals who will shed light on the relationship between SCBC, PNC, and the Plaintiffs and the scope and extent of communications over a three year period.   Therefore, limited discovery on the jurisdictional issue can take place in short order and enable the Court to fully appreciate the scope and extent of SCBC's activities in Kentucky.

### B.   PLAINTIFFS' FIRST AMENDED COMPLAINT SUFFICIENTLY STATES A CLAIM FOR BREACH OF DUTY BY SCBC UPON WHICH RELIEF CAN BE GRANTED

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the pleader." *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005).   To the extent some of the same issues and the interrelationships of the parties have been previously briefed in

connection with Defendant PNC Bank's Motion to Dismiss (Doc. #25), Plaintiffs incorporate by reference their Memorandum in Opposition.  (Doc. # 31.)

SCBC's argument that Plaintiffs have failed to allege a valid claim against SCBC for breach of fiduciary duty is without merit.   As previously asserted, the relationships between global allies SCBC and PNC, and Plaintiffs, transcended a debtor-creditor relationship.   SCBC and National City, PNC's predecessor in interest, promoted themselves as experts in international banking transactions.  SCBC relies in part on *Steelvest, Inc. v.Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476 (Ky. 1991).  However, the Court in *Steelvest* actually held that there is a duty on the part of banks to disclose to borrowers and pledgors material facts affecting a loan transaction:

> Courts traditionally view a relationship between a bank and a depositor to be one of debtor-creditor and do not ordinarily impose a fiduciary duty of disclosure upon the bank.  **However, services to borrowers and pledgors may support a finding that a bank, in taking a borrower's note and collateral, falls under a fiduciary duty to disclose material facts affecting the loan transaction.**  In view of changes in the nature of commercial transactions bankers may sometimes be placed in a position of trust with respect to their customer.

*Steelvest,* 807 S.W.2d at 485 (citing *Henkin, Inc. v. Berea Bank and Trust Co.,* 566 S.W.2d 420 (Ky. App.1978))(emphasis added).  Accord *Morton v. Bank of the Bluegrass & Trust Co.,* 18 S.W.3d 353, 359 (Ky. App. 1999)(bank's loan officer had a fiduciary duty to disclose material facts regarding loan transaction).

Here, the First Amended Complaint not only asserts SCBC's position of trust with respect to Plaintiffs, it alleges specific facts that move the relationship beyond a

bank-customer relationship.  First Amended Compl., ¶34.  Plaintiffs allege that they relied upon SCBC's knowledge and expertise regarding the issuance of a standby letter of credit securing SCBC's loan.  *Id.*, ¶12.  It is an obvious inference from this allegation that Plaintiffs trusted that the standby letter of credit – requested by SCBC pursuant to its specific terms – was issued for Plaintiffs' benefit as well as for the benefit of SCBC. *Id.*, ¶17.  Further, Plaintiffs allege that SCBC failed to disclose material facts regarding the ability of the standby letter of credit to pay off Plaintiffs' indebtedness to SCBC.  *Id.* In the end, the failure to disclose a material fact – that the Loan couldn't be paid by the very standby letter of credit created to do so (and directed by SCBC) – directly led to Plaintiffs' injuries, including the corporate claims and the claims relating to personal guarantees.

Even assuming that SCBC's assertion that it "kept Plaintiffs duly informed of Guangzhou Consortium's loan status and the consequences of certain financial choices," is true, Memo in Support, p. 21, the assertion supports Plaintiffs' position that SCBC served in a position of special confidence and trust to each of the Plaintiffs given the interrelationships of the parties.   And, because SCBC served in a special and trusted role in Plaintiffs' Chinese banking affairs, or their roles with respect to the banking affairs, SCBC assumed the highest duty to act in Plaintiffs' interests.  See *Govaerts v. Suntec Industries Inc.*, 1:09-CV-147-M, 2010 WL 2178517 (W.D. Ky. May 26, 2010) citing *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928) (Cardozo, C.J.) ("A [fiduciary] is held to something stricter than the morals of the market place.  Not honesty alone, but the punctilio of an honor the most sensitive….").  SCBC's breach of its duty and of

its position of trust resulted in Plaintiffs' default under the SCBC loan, effectively shutting down Plaintiffs' business in Asia and negatively impacting their business in Kentucky.   First Amended Compl., ¶16.

Consortium has sufficiently pled and alleged facts in support of its claim against SCBC for breach of duty and SCBC's motion to dismiss should be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant Standard Chartered Bank (China) Limited's Motion to Dismiss should be denied.   Plaintiffs Guangzhou Consortium Display Product, Ltd. and Consortium Companies, Inc. further respectfully request that the Court enter an order allowing the parties to conduct limited discovery as to the jurisdictional issue and to hold an evidentiary hearing on the motion to dismiss.   A proposed order is attached hereto.

Respectfully submitted,
**FLAGEL & PAPAKIRK LLC**

/s/James Papakirk
James Papakirk
Todd J. Flagel (KBA 91116)
50 E Business Way, Suite 410
Cincinnati, Ohio 45241
(513) 984-8111
jpapakirk@fp-legal.com
tflagel@fp-legal.com

*Co-counsel for Guangzhou Consortium*
*Display Product Company, Ltd., and*
*Consortium Companies, Incorporated*

**GREGORY W. McDOWELL, P.S.C.**

/s/ Gregory W. McDowell
Gregory W. McDowell KBA#83227
7415 Burlington Pike, Suite B
Florence, Kentucky 41042
(859) 371-7774
gmcdowell@assuredtitle.com

*Co-Counsel for Guangzhou Consortium Display Product Company, Ltd., and Consortium Companies, Incorporated*

*Attorney for Steven M. Oberst, Lynda S. Oberst, Clinton S. Oberst, and Susan J. Oberst*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Clerk using the CM/ECF system this 9th day of August, 2012, which will serve the following:

| | |
|---|---|
| Cornelius E. Coryell, II | ccoryell@wyattfirm.com |
| P. Blaine Grant | blaine@haydencraiggrant.com |
| J. Shannon Bouchillon | Shannon@haydencraiggrant.com |
| Karl Geercken | karl.geercken@alston.com |
| Matthew Decker | matt.decker@alston.com |
| Alex Hood | alex.hood@alston.com |
| Kevin R. Feazell | krf@corsbassett.com |

/s/James Papakirk
James Papakirk