UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

*Electronically Filed*

| | |
|---|---|
| GUANGZHOU CONSORTIUM PRODUCT COMPANY, ET AL. ) ) ) | |
| PLAINTIFFS ) ) | |
| v. ) ) | CIVIL ACTION NO. 2:11-CV-00005-DLB |
| PNC BANK, NATIONAL ASSOCIATION, ET AL. ) ) ) | |
| DEFENDANTS ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
THE ERRATA SHEET OF PLAINTIFF CONSORTIUM COMPANY, INC.**

In a shameless and transparent attempt to neutralize the impact of the unfavorable deposition testimony of its corporate representative, Plaintiff Consortium Company, Inc. ("CCI") has submitted an errata sheet which completely alters many of the responses the witness gave under oath. CCI's attempt to materially change the testimony of its witness under FED. R. CIV. P. 30(e) should be rejected.

Rule 30(e) allows a deponent to review his transcript and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." That Rule is not intended, however, as an opportunity for a deponent to materially change sworn testimony.

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, *i.e.*, he reported "yes" but I said "no," or a formal error, *i.e.*, he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. **The Rule cannot be interpreted to allow one to alter**

> **what was said under oath**. If that were the case, one could merely answer the questions with no thought at all and then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La 1992)) (emphasis added).

On its errata sheet, CCI makes thirty-one "corrections" to its corporate representative's (Roger Schreiber) testimony, many of which are wholly inappropriate under Rule 30(e). For instance, CCI seeks to materially change testimony on pages 22 through 24 of Schreiber's deposition regarding who drafted the Capital Contribution Authorization ("CCA"), which is a document that is at the center of this case. In the deposition, Schreiber, testified as follows:

> Q. [A]s I understand your testimony, it's your belief that the original draft of the CCA was prepared either by Joyce Xu or Standard Chartered Bank or an accountant, a Chinese accountant, that CCC was working with in China?
>
> A. Yes.
>
> [Objection by Mr. Papakirk]
>
> A. I would say yes, I – that's to my understanding.
>
> Q. One of those three or a combination of those three, correct?
>
> A. Okay. Yes.
>
> . . .
>
> Q. So the first draft of the CCA was prepared by Joyce Xu, the Chinese accountant that CCC had retained, Standard Chartered Bank, or a combination of those three; is that correct?
>
> [Objection by Mr. Papakirk]

2

> A. That is correct.[1]

On the errata sheet, which is attached as Exhibit 2 hereto, CCI changes that testimony as shown in bold below:

> Q. [A]s I understand your testimony, it's your belief that the original draft of the CCA was prepared either by Joyce Xu or Standard Chartered Bank or an accountant, a Chinese accountant, that CCC was working with in China?
>
> A. **The accountant drafted the initial CCA as a potential solution to the pending problems, as clarified by the email history.**
>
> A. **The accountant drafted the initial CCA as a potential solution to the pending problems.**
>
> Q. One of those three or a combination of those three, correct?
>
> A. **No, the accountant drafted the initial CCA proposal.**
>
> . . .
>
> Q. So the first draft of the CCA was prepared by Joyce Xu, the Chinese accountant that CCC had retained, Standard Chartered Bank, or a combination of those three; is that correct?
>
> A. **The accountant drafted the initial CCA as a potential solution to the pending problems.**

Similarly, on page 70 of the deposition, Schreiber testified:

> Q. I thought you told me Joyce drafted [the CCA]?
>
> A. Joyce, in cooperation with the accountant, but it was the accountant's, I think, original idea that said this could be a workable option.

---

[1] Cited excerpts from CCI's corporate representatives May 30 and 31 deposition are attached at Exhibit 1, hereto.

On the errata sheet, however, CCI seeks to delete that entire answer and replace it with: "Joyce translated the draft prepared by the Chinese accountant." Likewise, on page 297 of the deposition, CCI makes the following addition to Schreiber's testimony:

> Q. So Standard Chartered Bank is the party that came up with the idea or the suggestion for the capital contribution solution, correct?
>
> [Objection by Mr. Papakirk]
>
> A. That's what I stated in this memo **however, based on earlier documentation we know that the original draft of the CCA came from the China accountant.**

Rule 30(e) simply does not allow these sorts of material alterations, which should therefore be stricken. *Saffa v. Okla. Oncology, Inc.*, 405 F. Supp. 2d 1280, 1283-1284 (N.D. Okla. 2005) ("The deposition change proposed by Defendant is a material alteration of the deposition testimony. Plaintiff's motion to strike the deposition errata sheet is granted.").

CCI's "correction" of Schreiber's testimony on pages 137 through 144 regarding Exhibit 16 to the deposition is likewise impermissible under Rule 30(e).[2] In the deposition, Schreiber testified as follows:

> Q. Is that Mr. Dodd's signature on – at the bottom of [Exhibit 16]?
>
> [Objection by Mr. Papakirk]
>
> A. It certainly appears to be.

---

[2] Exhibit 16 is an email in which Plaintiff Guangzhou Consortium Product Display Company's ("CCC") Joyce Xu informs Mr. Schreiber that she "cancelled" some words in the CCA that PNC's Thomas Dodd signed, and then submitted the altered document to Standard Chartered Bank with Mr. Dodd's forged signature on it.

4

. . .

Q. Joyce Xu reproduced – whether it was photocopied or not, Joyce Xu reproduced Mr. Dodd's signature on [Exhibit 16], didn't she?

[Objection by Mr. Papakirk]

A. I don't know for sure, but I – it appears she did.

. . .

Q. If somebody who didn't work for you or worked for a company that you were affiliated with took a signature of yours and photocopied it onto a document without your knowledge and without your authorization, would you have a problem with that?

[Objection by Mr. Papakirk]

. . .

A. Yes. That would concern me, okay? I would look into that further.

Q. Did you ever tell Mr. Dodd that Joyce had affixed his signature to a version of the [CCA] without his authorization?

[Objection by Mr. Papkirk]

. . .

A. No, I did not.

. . .

Q. And [Joyce Xu] says: I gave [Exhibit 16] to Standard Chartered Bank, correct?

[Objection by Mr. Papakirk]

A. I believe what she was doing is she transferred it to verify that it was going to be – if we had an agreement like that, that it would be workable from their perspective.

Q. She gave it to Standard Chartered Bank?

5

> A. She should have eliminated the signatures on it for the draft. Correct.

On the errata sheet, however, CCI alters this entire line of testimony as follows:

> Q. Is that Mr. Dodd's signature on – at the bottom of [Exhibit 16]?
>
> A. **It appears to be a photocopy of his signature.**
>
> . . .
>
> Q. Joyce Xu reproduced – whether it was photocopied or not, Joyce Xu reproduced Mr. Dodd's signature on [Exhibit 16], didn't she?
>
> [Objection by Mr. Papakirk]
>
> A. I don't know for sure, but I – it appears she did **cut and paste a workable document together so the parties would understand what was needed and thereafter obtain original signatures with a "chop" or "seal". Photocopied signatures like this, are never allowed in formal documents in China.**
>
> . . .
>
> Q. If somebody who didn't work for you or worked for a company that you were affiliated with took a signature of yours and photocopied it onto a document without your knowledge and without your authorization, would you have a problem with that?
>
> [Objection by Mr. Papakirk]
>
> . . .
>
> A. Yes. That would concern me, okay? I would look into that further **however, knowing that in China photocopied signatures are never allowed in formal documents, and that original signatures with a "chop" or "seal" are required, I would have believed it was a working document, not a final document**.

6

> Q. Did you ever tell Mr. Dodd that Joyce had affixed his signature to a version of the [CCA] without his authorization?
>
> [Objection by Mr. Papkirk]
>
> . . .
>
> A. No, I did not **because this document was a working copy and was not intended to be a final document**.
>
> . . .
>
> Q. And [Joyce Xu] says: I gave [Exhibit 16] to Standard Chartered Bank, correct?
>
> [Objection by Mr. Papakirk]
>
> A. I believe what she was doing is she **sent the copy** to verify that it was going to be – if we had an agreement like that, that it would be workable from their perspective.
>
> Q. She gave it to Standard Chartered Bank?
>
> A. She should have eliminated the signatures on it for the draft. Correct. **But everyone involved would know that photocopied signatures are not usable and that this was a working copy**.

These are precisely the sort of material alterations and qualifications that Federal Courts overwhelmingly disapprove of under Rule 30(e).

The preceding two examples are not the only instances of CCI's abuse of Rule 30(e). On page 55 of the deposition, CCI changes Schreiber's testimony that the CCA was the "letter" signed by PNC to the "agreement" signed by PNC in order to clarify "that it was an agreement signed by the bank, not a letter." This is, of course, a legal issue for this Court to decide and Plaintiff's original testimony regarding its characterization of the document is therefore important. Moreover, on page 181 of the deposition, Schreiber testified that National City Bank (now PNC) "did not" participate

7

in CCI's meetings with Standard Chartered Bank in China. On its errata sheet, however, CCI changes this testimony in order to supposedly "clarify" that National City Bank did "not directly" participate in those meetings. Rule 30(e) simply was not intended to allow this sort of material change in deposition testimony given under oath.

For the reasons set forth herein PNC respectfully requests the Court grant its motion to strike the supposed "corrections" CCI has made on its errata sheet. If the Court allows CCI's material changes to become part of the record, however, PNC requests that it be allowed to reopen CCI's corporate representative's deposition and examine Schreiber on the reasons for the changes to his original testimony – at CCI's expense. "If changes are made, this has the effect of making the examination uncompleted, and the parties ordinarily may then examine the witness further in the light of the new answers." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2118, 603-604 (2010). Indeed, counsel has "the right to inquire, of record and under oath, as to the reasons for any change, and whether such changes originated with the deponent or with the attorney." *Erstad v. Curtis Bay Towing Co.*, 28 F.R.D. 583, 584 (D.C. Md. 1961).

Respectfully submitted,

/s/ Cornelius E. Coryell, II
Cornelius E. Coryell, II
ccoryell@wyattfirm.com
Rania M. Basha
rbasha@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
2500 PNC Plaza
Louisville, Kentucky 40202
502.589.5235

*Counsel for Defendant PNC, National Association*

## CERTIFICATE OF SERVICE

       I hereby certify that on August 27, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Gregory W. McDowell<br>GREGORY W. MCDOWELL, P.S.C.<br>7415 Burlington Pike, Suite B<br>Florence, KY 41042<br><br>*Co-counsel for Guangzhou Consortium Display Product Company, Ltd. and Consortium Companies, Incorporated*<br><br>*Attorney for Steven M. Oberst, Lynda S. Oberst, Clinton S. Oberst, and Susan J. Oberst*<br><br>Todd J. Flagel<br>James Papakirk<br>FLAGEL & PAPAKIRK LLC<br>50 E Business Way, Suite 410<br>Cincinnati, OH 45241<br><br>*Co-Counsel for Guangzhou Consortium Display Product Company, Ltd. and Consortium Companies, Incorporated* | Matthew Decker<br>Karl Geercken<br>Alex Hood<br>ALSTON & BIRD LLP<br>90 Park Avenue<br>New York, NY 10016<br><br>P. Blaine Grant<br>John Shannon Bouchillon<br>HAYDEN CRAIG & GRANT PLLC<br>718 West Main Street, Suite 202<br>Louisville, KY 40202<br><br>*Attorneys for Standard Charter Bank (China) Limited*<br><br>Kevin R. Feazell<br>CORS & BASSETT<br>537 East Pete Rose Way, Suite 400<br>Cincinnati, OH 45202-3502<br><br>*Attorney for Roger C. Schreiber* |

                                        /s/ Cornelius E. Coryell, II

60236816.1