**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT COVINGTON**

| | |
|---|---|
| GUANGZHOU CONSORTIUM DISPLAY PRODUCT, LTD., *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., *et al.*,<br><br>Defendants. | Civil Action No. 2:11-cv-00005-DLB |

**DEFENDANT STANDARD CHARTERED BANK (CHINA) LIMITED'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

## PRELIMINARY STATEMENT

In its primary moving papers, Standard Chartered Bank (China) Limited ("SCBC") demonstrated that it could not be subject to either general or specific personal jurisdiction in the Commonwealth of Kentucky because SCBC cannot be "found" in Kentucky and because SCBC's actions relevant to this action amounted to nothing more than providing lending services in China to a Chinese company, plaintiff Guangzhou Consortium Display Product Company, Ltd. ("Guangzhou Consortium").[1] SCBC also demonstrated that Plaintiffs had failed to state a claim against it because: (1) the mere allegation in Plaintiffs' complaint of a banking relationship and SCBC's status as a beneficiary of a letter of credit does not demonstrate SCBC's

[1] In a footnote, Plaintiffs argue that SCBC has made a "general appearance" and thereby waived its defense of personal jurisdiction, citing *Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011). In that case, it was held that defendants waived their personal jurisdiction defense when their attorney entered a general appearance on their behalf without raising any defense. *Id.* at 520. The court noted, however, that "[o]nly those submissions, appearances and filings that give plaintiff a reasonable expectation that defendants will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking, result in waiver of a personal jurisdiction defense." *Id.* at 519 (citations and internal quotations omitted). The court further noted that Fed. R. Civ. P. 12(h) provides that a party waives the defense of lack of personal jurisdiction by failing to either make it by motion under Rule 12 or include it in a responsive pleading. *Id.* at 518. As SCBC has indeed raised the defense of lack of personal jurisdiction by its first response in this action, a Rule 12 motion, and its attorneys had not previously entered any general appearance that would lead the Plaintiffs or the Court to believe that SCBC intended to defend Plaintiffs' action on the merits, Plaintiffs' assertion that SCBC has somehow waived its personal jurisdiction defense is thus wholly without merit.

undertaking of a fiduciary duty to the borrower, Guangzhou Consortium, or the applicant under the letter of credit, plaintiff Consortium Companies, Inc.; and (2) there is no activity alleged in the Complaint by SCBC that could have breached a fiduciary duty on its part, even if one arguably existed.

In their opposition, Plaintiffs contend e-mail and telephone communications between plaintiff Roger Schreiber and SCBC provide a basis for specific personal jurisdiction here. Plaintiffs are wrong because, as already shown and as further demonstrated by Plaintiffs' own evidentiary submissions, SCBC's correspondence with Roger Schreiber in Kentucky was merely incidental to SCBC's provision of banking services in China to Guangzhou Consortium. Indeed, it was Plaintiffs who reached into China to conduct business there through Guangzhou Consortium. SCBC's contacts with Kentucky resulted only from providing plaintiff Guangzhou Consortium with a line of credit for its purpose of continuing to do business in China. As such, SCBC's contacts with Guangzhou Consortium's representatives and shareholders in Kentucky are not a basis for personal jurisdiction under the Kentucky long-arm statute, and Constitutional due process prohibits an exercise of personal jurisdiction over SCBC.

Plaintiffs also fail to salvage their breach of fiduciary duty claim against SCBC because, rather than showing a basis for the claim, their opposition papers make clear that: (1) an SCBC representative disavowed any fiduciary duty; and (2) even without a duty to do so, SCBC notified Plaintiffs as early as 2008 of the inability to convert U.S. Dollars to Chinese Renminbi, due to Chinese regulations and Guangzhou Consortium's insufficient capitalization.

## ARGUMENT

### I. Plaintiffs Have Failed to Make a *Prima Facie* Showing of Personal Jurisdiction

In the absence of an evidentiary hearing, Plaintiffs bear the burden of making a *prima facie* showing that this Court may exercise personal jurisdiction over SCBC. *See Hillerich &*

*Bradsby Co. v. Hall*, 147 F. Supp. 2d 672, 676 (W.D. Ky. 2001). The contacts described by Plaintiffs in their opposition papers are insufficient to describe a basis for personal jurisdiction under either the Kentucky long-arm statute or under a Constitutional due process analysis.

**A. Plaintiffs' Showing Reinforces the Lack of Meaningful Contacts Between SCBC and Kentucky**

Plaintiffs have submitted an Affidavit of Roger Schreiber, which purports to describe the connections between SCBC and Plaintiffs in the Commonwealth of Kentucky. Mr. Schreiber's affidavit and the exhibits thereto, however, demonstrate that all meaningful conduct occurred between representatives of the two Chinese entities in this action and, for the most part, in China.

<u>Avoidance of Critical Issues</u>

As an initial matter, Mr. Schreiber's affidavit notably omits to refute or even address two key jurisdictional facts detailed in the Declaration of Yunni Tang, dated July 4, 2012 (the "Tang Decl."): (1) Guangzhou Consortium was not created for the purpose of permitting Plaintiffs and SCBC to enter into business together, but the company instead existed and was operating in China *before* Mr. Schreiber first approached SCBC about opening a line of credit with SCBC, *see* Tang Decl. at ¶ 7; and (2) when Mr. Schreiber negotiated the opening of a line of credit account for Guangzhou Consortium, he held the title of Chief Financial Officer of Guangzhou Consortium, as evidenced by documents signed by him and attached as Exhibits to the Tang Declaration. *Id.* These facts are neither inconsistent with the allegations in the Complaint nor the documents submitted in the Schreiber Affidavit.

<u>A Failure to Address the Origin of the Banking Relationship</u>

Mr. Schreiber's Affidavit also shows that Plaintiffs initiated a lending relationship between SCBC and Guangzhou Consortium. Specifically, an e-mail at Exhibit A-2 thereof shows that Mr. Schreiber traveled to Guangzhou to meet with SCBC representatives in person.

Moreover, at paragraph 6 of his Affidavit, Mr. Schreiber merely states, "In the Spring of 2007, National City Bank promoted its Gateway program with Standard Chartered Bank (China) Limited to Consortium Companies, Inc. I was introduced to Lucas Du through the efforts of National City Bank and I was copied on an email sent to Lucas Du by Nancy Downey of National City Bank on May 1, 2007. Lucas Du is and was a representative of Standard Chartered Bank (China) Limited." Thus, there is no basis for any assertion that SCBC reached into Kentucky to establish a relationship with Plaintiffs.

In his Affidavit, Mr. Schreiber also places undue emphasis on a May 1, 2007 e-mail from Nancy Downey to Lucas Du with respect to the establishment of a relationship with SCBC. That e-mail post-dates an earlier e-mail, dated April 29, 2007, in the same chain, in which Mr. Schreiber refers to his even earlier in-person meeting with Lucas Du held in Guangzhou, China. *See* Schreiber Aff. at Exhibit A-2. Thus, the May 1, 2007, e-mail does not describe how the relationship between SCBC and Guangzhou Consortium began. Accordingly, Plaintiffs cannot contradict that it was Mr. Schreiber who reached into China to first make contact with SCBC. *See* Tang Decl. at ¶ 7-10.

<u>The Irrelevance of Guangzhou Consortium's WFOE Status</u>

Next, attempting to more closely tie Plaintiffs with Guangzhou Consortium, Plaintiffs highlight the concept that Guangzhou Consortium, as a wholly-foreign owned enterprise ("WFOE"), is "an investment vehicle operated in China but owned by a foreign investor, Consortium USA." *See* Schreiber Aff. at ¶ 3, Opp. Brief at p. 4. Plaintiffs fail to note, however, that, according to their own cited authority, <u>Law of the People's Republic of China on Wholly-Foreign Owned Enterprises</u>, a WFOE has the independent status of a Chinese legal person (Article 8), that the WFOE must set up account books in China and accept the supervision of

financial and taxation authorities in China (Article 14), and that a foreign investor may only receive profits out of the WFOE after the company is liquidated (Article 19).

Plaintiffs' E-mails Support SCBC's Characterization of the Lending Relationship

Plaintiffs attempt to compensate for lack of substance with sheer volume, attaching as Exhibit A-3 to Mr. Schreiber's affidavit seventy-seven pages of duplicative e-mail correspondence between him and Lucas Du, a SCBC employee. This correspondence actually shows that SCBC entered into a business transaction in China with an existing Chinese company, Guangzhou Consortium, when it agreed to provide that entity with a line of credit account, and that Roger Schreiber and the other Plaintiffs corresponded with SCBC in their roles as executives, officers or directors of Guangzhou Consortium. It also shows that SCBC's "contacts" with Kentucky in the form of telephone and e-mail correspondence with Mr. Schreiber were *incidental* to SCBC's role as lender to Guangzhou Consortium in China, and Mr. Schreiber's role as an executive and director of that Chinese entity. Numerous e-mails from multiple time periods spanning the entire relationship between SCBC and Guangzhou Consortium confirm this circumstance, and include, but are not limited to, the following.

- A series of e-mails from April 29, 2007, through May 8, 2007, illustrates the relationship created by and between SCBC and Guangzhou Consortium, and not by and between SCBC and Consortium Companies, Inc. *See* Exhibit A-3 at pp. 29-33, Bates numbered CONS_03537-41. On April 29, 2007, Mr. Schreiber transmitted a message to Lucas Du with the subject "LOC for Consortium Companies China," in which he refers to his prior face-to-face meeting between Schreiber and Du *in Guangzhou*. *Id.* at p. 32. Mr. Schreiber writes that he was "encouraged following our meeting and felt that ***Standard Chartered Bank and Consortium Companies China could develop a very positive and mutually beneficial relationship that could last for many years***." *Id.* (emphasis added). He continues, "Joyce [Xu, a Guangzhou

Consortium employee] now informs me that she is working with you on the further development of transitioning all of ***our*** banking needs to Standard Chartered Bank" and that Joyce has "the authority to negotiate and complete whatever requirements are necessary for the proper operation of ***our*** company's banking needs." *Id.* (emphasis added). This correspondence demonstrates (1) that Guangzhou Consortium had a pre-existing banking relationship in China before it sought a line of credit from SCBC; and (2) that Roger Schreiber was corresponding with Lucas Du in his capacity as an executive of Guangzhou Consortium. Indeed, Roger Schreiber was the Chief Financial Officer of Guangzhou Consortium. *See* Tang Decl. at ¶ 7 and at Exhibit 1-B.

- On May 1, 2007, Mr. Schreiber reiterated to Lucas Du that his "primary objective [was] to rely on you and Joyce to recommend the best banking alternative and solution for the SCB and CCC [Consortium Companies China] relationship." *Id.* at p. 30-31. He continued, "I would welcome and prefer to work within the system that works best for SCB and CCC." *Id.* at 31. In response, on May 8, 2007, Lucas Du both refuted Mr. Schreiber's implied reliance on SCBC, denied SCBC's acceptance of any duties above and beyond that of an ordinary lender, and unambiguously stated: "I would say the 'primary objective' for me at current stage, would be helping ***your company*** to switch current short term loan outstanding from China Merchant Bank to SCB against a standby LC." *Id.* at 30. Mr. Schreiber agreed, "I certainly agree with the 'primary objective' of a smooth transition of our LOC banking from CMB to SCB." *Id.* at 29.

- On June 28, 2007, Lucas Du e-mailed Roger Schreiber to inform him of the specific service being provided by SCBC to Guangzhou Consortium: "We are pleased to advise you that CNY7Mn revolving short term loan has been approved by SCB China." *See* Exhibit A-3 at pp. 24-25, CONS_02330-31.

- In a series of e-mails from July 7, 2007 through July 9, 2007, it was decided that Roger Schreiber would be designated as an authorized signatory for Guangzhou Consortium's account along with Joyce Xu. *See* Exhibit A-3 at pp. 20-23, CONS_02156-57, 02178-79. Ultimately, Joyce Xu signed the agreement establishing the line of credit account with SCBC "for and on behalf of Guangzhou Consortium Display Product Company Ltd.", *see* Tang Decl. at Exhibit 1-A, and not on behalf of any other Plaintiff.

- On August 5, 2007, Lucas Du confirmed to Roger Schreiber, "First CNY2Mn loan drawdown has been successfully made to Guangzhou Consortium on last Thursday. We will cooperate with Joyce [Xu] closely in your future needs." *Id.* at p.26, CONS_02426.

- In August 2008, when SCBC sought a Letter of Undertaking to bring Guangzhou Consortium's level of capitalization into accord with Chinese regulations, *see* Exhibit A-3 at pp. 44-46, CONS_08905-07, Lucas Du also requested a Subordination Agreement to be signed by Consortium Companies, Inc. "for assuring the bank that the Parent Company will not ask the Company to repay shareholder loan before bank loan has been repaid." *Id*. The "Company" in the Subordination Agreement that Roger Schreiber was to sign was Guangzhou Consortium, while the Parent Company was Consortium Companies, Inc. By its own terms, the purpose of the Subordination Agreement was to establish that, in the event that Guangzhou Consortium should become indebted to Consortium Companies, Inc., that debt "shall constitute debt subordinated to the rights of the Bank under the Advances irrespective of whether such debt is evidenced by a subordinated promissory note or otherwise." *See* Plaintiffs' Exhibit A-4. The existence of the Subordination Agreement also further speaks against the existence of a fiduciary duty on the part of SCBC, who by this document sought to protect itself against a possible default by Guangzhou Consortium.

- In an August 10, 2008, e-mail to Roger Schreiber, regarding the necessity of the Letter of Undertaking, Lucas Du stated that "[a]ccording to China SAFE's regulation, ***foreign banks can not*** claim overseas securities and ***convert USD into RMB if there is no GAP between its total approved investment amount and registered capital for Guangzhou Consortium.***" *See* Exhibit A-3 at p. 45 (emphasis added). On August 11, 2008, Roger Schreiber responded "The 'Letter of Undertaking' ***is clearly understood*** and not a problem." *Id.* at p. 44 (emphasis added). Thus, Mr. Schreiber acknowledged receipt of advance notice of the currency conversion issue.

- Mr. Schreiber later in August 2008 again stated, "I understood that what we have is a simple Line of Credit for our China operation that is fully backed to SCB by a standby Letter of Credit from an acceptable US Bank." *Id.* at p. 44.

**B. Plaintiffs Have Not Shown a Basis for Jurisdiction Under the Kentucky Long-Arm Statute**

Although they only allege in their Complaint that SCBC had "transacted business" in Kentucky, Plaintiffs now argue in opposition to SCBC's motion, without citation to any authority, that any of the first four sections of KRS 454.201 (2)(a) may apply to SCBC.

<u>There Is No Basis for "Transacting Business" Jurisdiction Under KRS 454.210 (2)(a)(1).</u>

The facts presented by Plaintiffs through the Schreiber Affidavit, which are consistent with those in the Tang Declaration, confirm that SCBC conducted business with Guangzhou Consortium in China, and that any contact with Kentucky was incidental to SCBC's transaction of business in China. Furthermore, as demonstrated in SCBC's initial moving papers, SCBC is shielded from the reach of this prong of the long-arm statute by KRS 286.2-670. Plaintiffs argue that *Jude v. First Nat'l Bank of Williamson*, 259 F. Supp. 2d 586 (E.D. Ky. 2003), decided by this Court, should not control on this point, but research has revealed no subsequent alternative rulings or changes in the law, and so this Court's opinion in *Jude*, that "absent some other

indication from the state legislature or Kentucky courts on the scope of application of K.R.S. § 287.670, this Court is bound to apply the statute", still applies. Plaintiffs have presented no authority to the contrary.

There Is No Basis for "Supply of Services" Jurisdiction Under KRS 454.210 (2)(a)(2)

Plaintiffs have not described how this section of the statute might apply to this action, and the facts show that SCBC did not supply a service or good in Kentucky; it provided a line of credit to Guangzhou Consortium in China.

There Is No Basis for "In State Tortious Injury" Jurisdiction Under KRS 454.210 (2)(a)(3)

Plaintiffs have also not described how this section might apply to their action, but the assembled facts available show that while SCBC representatives indeed sometimes transmitted communications to Plaintiffs in Kentucky due to their status as owners, directors and executives of Guangzhou Consortium, no SCBC representative ever appeared in Kentucky such that he could have caused a tortious injury here. Thus, this provision has no application here.

There Is No Basis for "Out of State Tortious Injury Jurisdiction Under KRS 454.210 (2)(a)(4)

By its own terms, this section of the statute only applies if the alleged tortfeasor

> does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

This section cannot be used to reach SCBC because Plaintiffs have not shown that their alleged injury arose out of SCBC's solicitation of business, engagement in a persistent course of conduct, or derivation of substantial revenue within Kentucky. Even assuming, *arguendo*, that SCBC breached a fiduciary duty, as Plaintiffs have alleged, then that breach of duty could only have been caused by some failure by SCBC to arrange for different collateral protection for its

loan to Guangzhou Consortium in China, the only entity with which SCBC had a lending relationship. No conduct of business or action or other course of conduct related to Kentucky was or could have been the cause of Plaintiffs' alleged injury.

**C. Plaintiffs Have Not Shown Purposeful Availment**

A Kentucky court may only exercise specific jurisdiction over a defendant if a plaintiff can show that the defendant has purposefully availed itself of the privilege of acting in Kentucky, the cause of action arises from the defendant's activities in Kentucky, and the defendant's acts in Kentucky have a substantial enough connection with the Commonwealth to make the exercise of jurisdiction over the defendant reasonable. *See Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Even if, *arguendo*, Plaintiffs had established a basis for reaching SCBC under Kentucky's long-arm statute, they still would be unable to establish a basis for the exercise of personal jurisdiction under the requirements of Constitutional due process.[2]

In light of the voluminous e-mail correspondence submitted with Mr. Schreiber's affidavit, this rule bears repeating: "A numerical count of . . . calls and letters has no talismanic significance: 'The ***quality*** of the contacts as demonstrating purposeful availment is the issue, ***not their number*** or their status as pre- or post- agreement communications.'" *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1301 (6th Cir. 1989) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) (emphasis added)). Plaintiffs simply have not shown that SCBC "intended to establish 'continuing relationships and obligations'" in Kentucky. *Kerry Steel v.*

[2] Plaintiffs do not assert general personal jurisdiction over SCBC in their opposition papers. For purposes of this Reply, SCBC assumes that Plaintiffs have conceded that SCBC is not subject to general personal jurisdiction in Kentucky, and hereby reserves its right to further oppose any attempted assertion of general personal jurisdiction over it in the future. SCBC also notes with respect to Plaintiffs' arguments regarding the SCBC website, Opp. Brief at p. 5, that Plaintiffs do not allege that they ever used or viewed this website. SCBC has also shown that its website is "passive" and "directed at and restricted to individuals resident in or entities having a place of business in the People's Republic of China ONLY." *See* Tang Decl. at ¶ 6. The maintenance of a website, in and of itself, does not constitute the purposeful availment of the privilege of acting in the forum state, because an internet website by its very nature can be accessed internationally. *See, e.g., Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002).

*Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997), quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).

Instead, Plaintiffs in their opposition papers have merely shown that (1) SCBC operates a passive internet website that contains English-language content and is accessible from the United States and (2) that an SCBC representative corresponded with plaintiff Roger Schreiber, a resident of Kentucky with regard to Guangzhou Consortium. Neither of these facts, on their own or in concert, are sufficient to establish purposeful availment. Plaintiffs rely on the cases of *Ivan Ware & Son, Inc. v. Delta Aliraq, Inc.* and *U.S. v. Bacara Partners, LLC* in support of their purposeful availment argument. Both of these cases are clearly distinguishable.

In *Ware*, purposeful availment was found because the defendant solicited the Kentucky-resident plaintiff by placing a telephone call into Kentucky, followed up the phone call with an e-mail, and "played an active role during its two year working relationship with [the plaintiff], often soliciting services and sometimes funds from [the plaintiff].". Case No. 3:10-cv-484, 2010 WL 5186730, *1, *4 (W.D. Ky. Dec. 15, 2010). Also, "a great deal of labor [took] place in Kentucky, and, according to [the plaintiff], the value of that labor was $1,371,500." *Id.* No similar facts are alleged here in the instant case.

Similarly, in *Bacara*, purposeful availment was found because the defendant, *inter alia*, (1) solicited the purchase of federal tax refund claims held by a third-party Kentucky resident, (2) consented to be governed by Kentucky law under a related purchase agreement, (3) generated over $3 million in revenue as a result of its Kentucky contacts, and (4) sent fifty percent of the net proceeds from the tax refund claims back into Kentucky. Case No. 11-cv-342, 2012 WL 1984012, *1 (E.D. Ky. May 31, 2012). These contacts with Kentucky were "intentional, significant, and sustained." *Id.* Again, no similar facts are alleged here.

Instead, SCBC's contacts with Kentucky are comparable to, but still more attenuated than, those of the defendant in *Hillerich & Bradsby Co. v. Hall*, 147 F. Supp. 2d 672 (W.D. Ky. 2001). In that case, the defendant made a first phone call into Kentucky, signed a multi-year contract with a Kentucky corporation that called for application of Kentucky law, goods and money were shipped to the defendant from Kentucky, and the defendant phoned and faxed the plaintiff in Kentucky several times each year. *Id.* at 676-77. However, it was the plaintiff who first sought the services of defendant and initiated contact through intermediaries, the contract was not negotiated or signed in Kentucky, the defendant never visited Kentucky, and the defendant performed his part of the agreement entirely outside of Kentucky. *Id.* at 677. The defendant's "duties under the Agreement benefited [plaintiff] outside of Kentucky and only from those benefits did [plaintiff] receive financial gain" and "almost every one of the Kentucky connections which [plaintiff] cite[d] are those arising from [plaintiff's] own presence in the state, rather than [defendant's] purposeful reaching out to the state or to [plaintiff]." *Id.* As a result, the court held that the defendant never purposefully availed himself of the benefits or protections of the state. *Id.* Because SCBC contracted in China with a Chinese corporation in China, SCBC's contacts with Kentucky here are even more attenuated than those described in *Hillerich*. As a result, Plaintiffs have failed to make a sufficient showing of purposeful availment.

### D. Plaintiffs' Cause of Action Did Not Arise Out of SCBC's Actions, if any, in Kentucky

Even if, *arguendo*, purposeful availment could be found, Plaintiffs have not shown and cannot show that their alleged injury, if any, arose out of SCBC's actions in Kentucky. The mere fact that a transaction involves a Kentucky party is not sufficient to show that a cause of action arises from a defendant's actions in Kentucky. *Kerry Steel*, 106 F.3d at 152. Without citation to any authority for the proposition, Plaintiffs incredibly argue that their claim, which allegedly

arises out of SCBC's alleged failure to insure that a standby letter of credit would satisfy Guangzhou Consortium's loan obligations, was *converted* into a Kentucky dispute when SCBC informed Consortium Companies, Inc., a Kentucky corporation and the owner of Guangzhou Consortium, of the currency conversion issue. *See* Opp. Brief at p. 17. Plaintiffs also argued that "SCBC injected itself by participating with Consortium USA in devising a potential solution [to the currency conversion issue]." Opp. Brief at p. 13. Even assuming, *arguendo*, either or both of these assertions to be true, Plaintiffs are seeking to penalize Plaintiffs for attempting to assist Plaintiffs and PNC in finding a solution to the problem of properly capitalizing Guangzhou Consortium so that SCBC would not be required to draw down on the standby letter of credit. In any event, SCBC's suggestion for resolving the currency conversion issue was not followed, as Plaintiffs did not contribute additional capital to Guangzhou Consortium.[3] Moreover, SCBC's communications regarding this issue were conducted between itself and a representative of Guangzhou Consortium. As a result, no fiduciary duty claim could have arisen as between any U.S. plaintiff and SCBC.

## II. <u>Plaintiffs Fail to State a Basis for Jurisdictional Discovery or Evidentiary Hearing</u>

In recognition of the insufficiency of their showing in support of personal jurisdiction, Plaintiffs request limited discovery and an evidentiary hearing on the issue of personal jurisdiction. *See* Opp. Brief at p. 3, 8, 19. This request is misplaced and inappropriate. Plaintiffs claim that this Court has personal jurisdiction over SCBC as a result of SCBC's actions in the Commonwealth, from which Plaintiffs' claims arise. In that case, the extent of SCBC's

[3] SCBC requested as early as August 10, 2008, that Plaintiffs avoid the currency conversion issue that spawned the instant action by properly capitalizing Guangzhou Consortium in accord with Chinese regulations. *See* Schreiber Aff., Exhibit A-3, at p. 44-45, CONS_08905-06. SCBC requested again, on June 10, 2010, that Plaintiffs simply directly fund the Guangzhou Consortium capital injection. *Id.* at p. 47, CONS_11387. Instead, Plaintiffs and PNC pursued what both counsel for Plaintiffs and this Court referred to at oral argument on PNC's motion to dismiss as a "legal fiction" and a "sham." *See, e.g.,* Docket No. 37 at p. 37. With reference to the use of the term "sham", counsel for Plaintiffs admitted, "It's a fair characterization, Judge." *Id.*

contacts with Kentucky should already be known to Plaintiffs. Plaintiffs also have not identified what further information they could hope to uncover through discovery. If Plaintiffs could establish personal jurisdiction over SCBC, the information on which to do so would already be in their possession.

Plaintiffs' citation to *Standafer v. Turner*, Case No. 7:05-215, 2005 WL 2403732, *1 (E.D. Ky. Sept. 28, 2005), and *Angstrom v. Wray*, 382 F. Supp. 2d 895, 898 (E.D. Ky. 2005) for the proposition that this Court ought to allow limited discovery on the issue of personal jurisdiction is unavailing. In *Standafer*, defendants were granted permission to take discovery pending a motion to remand on the narrow point of citizenship of the plaintiff for purposes of determining whether the court had diversity jurisdiction. In *Angstrom*, the parties were ordered to conduct discovery as to whether the contacts of one defendant to Kentucky could be attributed to another defendant. In contrast to these two cases, Plaintiffs herein have not specified the issue or issues that they would seek to clarify on discovery.

## III. Plaintiffs' Additional Submissions Do Not Support an Inference of Creation, Assumption or Breach of a Fiduciary Duty by SCBC

"If it appears beyond doubt that plaintiff's complaint does not state facts sufficient to state a claim that is 'plausible on its face," then the claims must be dismissed." *Wilson v. Asset Acceptance, LLC*, 5:12-cv-66-JMH, 2012 U.S. Dist. LEXIS 78266, at *2-3 (E.D. Ky. June 5, 2012), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Plaintiffs' own submissions in opposition to SCBC's motion to dismiss reinforce SCBC's assertion that the relationship between SCBC and Guangzhou Consortium was simply that of a lender and a borrower, and that SCBC assumed no special responsibility to act for the benefit of Plaintiffs in matters connected with the loan. Indeed, in May 2007, Lucas Du asserted, "I would say the 'primary objective' for me at current stage, would be helping ***your company*** to switch

current short term loan outstanding from China Merchant Bank to SCB against a standby LC." Schreiber Aff. at Exhibit A-2 (emphasis added). Mr. Schreiber agreed with this statement. *Id.* Thus, SCBC assumed no duty to Plaintiffs. Further correspondence in August 2008 also shows that SCBC requested proper capitalization of Guangzhou Consortium and warned that a consequence of improper capitalization would be the inability to convert U.S. dollars into Chinese RMB to satisfy the loan. Thus, SCBC could have breached no duty. Plaintiffs have therefore shown that they cannot state a plausible basis for a claim of breach of fiduciary duty against SCBC.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs' claim, as well as PNC's cross-claim, against SCBC should be dismissed in their entirety and with prejudice.

Respectfully submitted,

/s/ P. Blaine Grant
By: P. Blaine Grant
Hayden Craig & Grant, PLLC
718 West Main Street, Suite 202
Louisville, Kentucky 40202
(502) 638-2836

Alston & Bird LLP
Karl Geercken
Matthew Decker
Alex Hood
90 Park Avenue
New York, New York 10016
(212) 210-9400

*Attorneys for Defendant Standard Chartered Bank (China) Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2012, I electronically filed the foregoing *Reply Memorandum of Law in Further Support of Motion to Dismiss* with the clerk of the court by using the CM/ECF system, which provides electronic notice to all counsel of record.

/s/ P. Blaine Grant
P. Blaine Grant
Hayden Craig & Grant PLLC
718 W Main Street
Suite 202
Louisville, KY 40202
Telephone: (502) 638-2836
Facsimile: (502) 805-0705
*Attorneys for Defendant Standard Chartered Bank (China) Limited*