UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

*Electronically Filed*

| | | |
|---|---|---|
| GUANGZHOU CONSORTIUM PRODUCT DISPLAY COMPANY, ET AL. | ) ) ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | CIVIL ACTION NO. 2:11-CV-00005-DLB |
| v. | ) | |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION, ET AL. | ) ) | |
| | ) | |
| DEFENDANTS | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF COUNTERCLAIM PLAINTIFF PNC BANK, NATIONAL ASSOCIATION**

Counterclaim Plaintiff, PNC Bank, National Association, by counsel, hereby tenders the following memorandum in support of its motion for summary judgment on its breach of contract claims against Consortium Companies Incorporated ("CCI"). For the reasons set forth herein, PNC is entitled to judgment against CCI as a matter of law.

**BACKGROUND**

**A.     CCI Agreed to Reimburse PNC for Any Amount Drawn on the Standby Letter of Credit.**

On July 17, 2007, CCI, through its Chief Financial Officer, Roger Schreiber, submitted an Application for Irrevocable Standby Letter of Credit to PNC (the "Application"). (*See* 5/30/12 Deposition of Roger Schreiber **[DN 108-1]**, 310-12).[1] The

---

[1] The Application was submitted to PNC's predecessor, National City Bank, N.A. ("NCB"). PNC is the successor by merger to NCB and, therefore, is entitled to enforce

(continued…)

Application requested PNC issue an Irrevocable Standby Letter of Credit in the amount of $1,000,000 US dollars for the benefit of Standard Chartered Bank (China) Limited ("Standard Chartered").  (*See* Application for Irrevocable Standby Letter of Credit, 1).[2] In addition, the Application expressly acknowledged that CCI approved the language to be used in the standby letter of credit.[3]

The Application required CCI to "date and officially sign the Reimbursement and Security Agreement included herein."  [*Id.*].  The Reimbursement and Security Agreement (the "RSA") provided the terms under which the standby letter of credit would be issued.[4]  Schreiber was authorized to sign both the Application and the RSA on behalf of CCI.  (*See* 5/30/12 Schreiber Depo. **[DN 108-1**], 311-12; *see also* Answer of Consortium Companies, Inc. to PNC Bank, National Association's Counterclaim ("CCI's Answer") **[DN 43**], ¶1).

PNC approved the Application and issued letter of credit No. SCL013861 (the "SBLC") on July 23, 2007.  The SBLC specifically reflected the language approved by CCI, including the designation of the beneficiary, the amount of the credit, and the

---

(…continued)

the obligations that are the subject of this action.  PNC and NCB are hereinafter collectively referred to as "PNC."

[2] A copy of the Application has already been made part of the Court record, most recently as Exhibit 11 to PNC's Memorandum in Support of Motion for Summary Judgment ("PNC Summary Judgment Memorandum ") **[DN 104-12**].  For the Court's convenience, the Application is also attached hereto as Exhibit 1.

[3] Schreiber's approval of the language is attached as Exhibit 12 to PNC's Summary Judgment Memorandum **[DN 104-13**].

[4] For the Court's convenience, a copy of the RSA is also included in the documents attached hereto as Exhibit 1.

manner in which the credit could be drawn.[5]   With respect to the manner in which

payment could be requested by Standard Chartered, the SBLC stated:

---

:47A:  /Additional Conditions

…

This Standby [LOC] will become effective on July 23, 2007 and will expire at our counters on July 13, 2008.  It is a further condition of this [LOC] that it will be automatically extended for additional one year periods from the present or any future expiration date unless we notify you by authenticated swift message at least 60 days prior to the then current expiration date that we elect not to extend this [LOC] beyond the then current expiration date.  ***Upon receipt of our authenticated swift message advising that this [LOC] will not be extended, you may draw on us by means of your authenticated swift message stating:  "We have been advised that National City Bank [LOC] No. SCL013861 will not be extended beyond the current expiration date of (insert date).  We hereby draw USD (insert amount) under [LOC] No. SCL013861 being the outstanding amount of the aggregate principal, accrued interest, fees, costs, expenses and taxes, if any, regarding the general banking facility denominated in any currency which we have made available to Consortium Companies, Inc."***

***We shall effect payment as per your instructions upon receipt of the above mentioned authenticated swift message sent to NATCUS33.***

---

[Exhibit 2 hereto, pg.2] (emphasis added).  The SBLC further provided that it was subject

to the Uniform Customs and Practice for Documentary Credits (the "UPC") published by

the International Chamber of Commerce.  [*Id.*].[6]  The RSA, likewise, provided that the

SBLC was controlled by the UPC.  (*See*, Exhibit 1 hereto, ¶13).

---

[5] A copy of the SBLC has already been made part of the Court record including as an attachment to the Memorandum in Support of Defendant's Motion to Dismiss First Amended Complaint ("PNC's Motion to Dismiss") [**DN 25-5**].  For the Court's convenience, a copy of the SBLC is also attached hereto as Exhibit 2.

[6] The International Chamber of Commerce ("ICC") is a non-governmental organization comprised of thousands of companies and business associations in more than 140
(continued…)

### B.    CCI Approved Each Amendment to the SBLC.

The SBLC was amended four times.[7]  Each amendment was reflected in written communications between PNC and Standard Chartered which were also shared with CCI.  All of the four amendments were approved and authorized by CCI.  (*See* 5/30/12 Schreiber Depo. **[DN 108-1]**, 322).

### C.    PNC Complied With Standard Chartered's Demand for Payment Under the SBLC.

On April 24, 2010, pursuant to the requirements set forth in the SBLC, PNC provided Standard Chartered with notice that it would not extend the SBLC past its expiration date of July 13, 2010.[8]  CCI was aware that PNC was not going to renew the SBLC and knew that PNC was required to notify Standard Chartered of that decision. (*See* 5/30/12 Schreiber Depo. **[DN 108-1]**, 323).

---

(...continued)

countries.  The ICC promulgates and publishes trade practices and rules covering a wide variety of banking, trade and international contract related issues.  The ICC Uniform Customs and Practice for Documentary Credits apply where they are shown to be incorporated into the text of the credit, such as the SBLC.

[7] The amendments to the SBLC have already been made part of the Court record including as attachments to PNC's Motion to Dismiss [**DN 25-6 – 25-9**].  The first amendment, dated July 26, 2007, changed the words "The Applicant" to "Guangzhou Consortium Display Product Company, Ltd." and deleted the words "made available to Consortium Companies" and replaced them with "made available to Guangzhou Consortium Display Product Company, Ltd." **[DN 25-6]**.  The second amendment, dated July 11, 2008, increased the amount of the SBLC from "USD 1,000,000" to USD 2,000,000." **[DN 25-7]**.  The third amendment, dated July 2, 2008, changed the beneficiary's name to "Standard Chartered Bank (China), Limited Guangzhou Branch." **[DN 25-8]**.  The fourth amendment was issued on February 22, 2010 and merely reflected PNC's acquisition of NCB and modified only the name of the issuing bank and the number of the SBLC **[DN 25-9]**.

[8] A copy of PNC's notice of nonrenewal has already been made a part of the Court's record including as an attachment to PNC's Motion to Dismiss **[DN-25-10]**.

4

Two months later, on July 1, 2010, Standard Chartered drew on the SBLC by directing PNC to transfer $1,762,220.[9]  Specifically, Standard Chartered instructed PNC as follows:

:79  :/Narrative

…

**WE HAVE BEEN ADVISED THAT PNC BANK, NATIONAL ASSOCIATION LETTER OF CREDIT NO. 12500762-00-000 WILL NOT BE EXTENDED BEYOND THE CURRENT EXPIRATION DATE OF JULY 13, 2010.  WE HEREBY DRAW USD 1762220.00 UNDER LETTER OF CREDIT NO. 12500762-00-000 BEING THE OUTSTANDING AMOUNT OF THE AGGREGATE PRINCIPAL, ACCRUED INTEREST, FEES, COSTS, EXPENSES AND TAXES, IF ANY REGARDING THE GENERAL BANKING FACILITY DENOMINATED IN ANY CURRENCY WHICH WE HAVE MADE AVAILABLE TO GUANGZHOU CONSORTIUM DISPLAY PRODUCT COMPANY LTD.  PLEASE REMIT PROCEEDS BY TT WITHOUT DEDUCTION OUR NEW YORK OFFICE (CHIPS) NO. ABA 256/SWIFT CODE SCBLUS33) FOR CREDIT TO SCB SHANG HAI USD A/C NO. 3582-088515-001 (UIV254960) WITH THEM UNDER SWIFT ADVICE TO US QUOTING OUR REFERENCE.**

(SBLC draw request, Exhibit 3 hereto) (emphasis added).   As acknowledged by Schreiber, the draw request reflected the language required by the terms of the SBLC as amended:

> Q.   What I am asking you is, is there anything that was improper in this message drawing on these Standby Letter of Credit that made the draw request something that PNC should not have honored?
>
> Mr. Papakirk:  Objection (text of objection omitted)

---

[9] A copy of Standard Chartered's draw request has already been made part of the Court record including as an attachment to PNC's Motion to Dismiss [**DN 25-11**].   For the Court's convenience, a copy of the request is also attached hereto as Exhibit 3.

A.     I do not see anything here that stands out.  But, again, I am not a legal expert on international banking SWIFT messages.

Q.     I am not asking you that.  I am asking you as Consortium's representative – CCI's representative, is there anything on this draw request that you think – that Consortium claims made the draw request improper so that it should not have been paid or honored by PNC?

…

A.     Other than the fact that our obligation was 1 million 6 and they asked for a million 762.  That's a discrepancy, but ….

Q.     But PNC was authorized to pay up to $2 million, weren't they?

A.     Yes, they were.

(5/30/12 Schreiber Depo. **[DN 108-1]**, 326-327).   PNC transferred $1,762,220 to the account designated by Standard Chartered on July 7, 2010.[10]

> **D.     CCI Also Signed a Term Note Agreeing to Repay a Separate Obligation to PNC.**

PNC also provided funding for CCI's operations in Europe.   The outstanding debt owed to PNC for those obligations is reflected in a Term Note dated December 30, 2009 in the principal amount of $1,000,000 (the "Term Note").[11]   The Term Note was signed by Roger Schreiber on behalf of CCI and his signature was witnessed by CCI's president, Steven Oberst.  (*See* Exhibit 4 hereto, pg. 7).

---

[10] A copy of the confirmation that Standard Chartered received funds pursuant to the SBLC has already been made part of the Court's record including as an attachment to PNC's Motion to Dismiss **[DN 25-12]**.

[11] A copy of the Term Note has already been made a part of the Court's record including as an attachment to Roger C. Schreiber's Motion for Partial Summary Judgment **[DN 126-4]**.  For the Court's convenience, a copy of the Term Note is also attached hereto as Exhibit 4.

**E.**     **PNC Demanded Reimbursement of the Amount Drawn on the SBLC and Payment of the Amount Due on the Term Note.**

By letter dated November 16, 2010, PNC demanded reimbursement of the amount paid on the SBLC and the amount due under the Term Note.[12]   CCI has failed and refused to honor PNC's request for payment of those obligations.

The outstanding principal owed to PNC under the RSA was $1,762,220. (*See* Affidavit of Thomas Dodd, attached hereto as Exhibit 5).   Outstanding interest on the RSA as of March 7, 2013 is $107,023 and interest continues to accrue on that debt at the rate of $108 per day.   [*Id.*].   As of March 7, 2013, the outstanding principal and interest owed to PNC on the Term Note is $1,142,081.   [*Id.*].   Interest continues to accrue on that debt at the rate of $159.91 per day.   [*Id.*].   In addition, there is a late charge due and owing on that debt in the amount of $3,000.   The Term Note and RSA also provide that CCI shall indemnify PNC for any attorneys' fees incurred in enforcing or attempting to enforce the obligations set forth in those agreements as well as penalties, costs, and fees related to the collection of those amounts.   As a result of CCI's failure to comply with and honor the terms of those agreements, PNC was required to retain outside counsel to enforce its rights and remedies thereunder.

---

[12] A copy of PNC's default and demand letter has already been made part of the Court's record including as an attachment to PNC's Counterclaim [**DN 38-7**].

## ARGUMENT[13]

Summary judgment is an integral part of the federal rules, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).  It is available if the moving party can establish that the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(a).  Here, it is undisputed that CCI executed both the RSA and the Term Note.  It is further undisputed that CCI is in default under both agreements. PNC is, therefore, entitled to summary judgment allowing it to recover the outstanding debts reflected by those agreements.

### I.   THE UNDISPUTED FACTS ESTABLISH PNC'S RIGHT TO REIMBURSEMENT FOR THE AMOUNT DRAWN ON THE SBLC.

Under the terms of the RSA, CCI unconditionally agreed, among other things, repayment of any amount drawn on the SBLC.  Specifically, the RSA provides as follows:

> In consideration of the issuance at our request of your Standby Letter of Credit (the "Credit"), substantially according to the Application, the terms of which are included herein or are attached hereto and initialed on behalf of ourselves (by any one or more of the undersigned), which terms are hereby approved by us, we hereby unconditionally agree as follows:
>
> 1.    As to drafts under or purporting to be under the Credit, we agree to reimburse you in cash at your counters in the city and state stated

---

[13] PNC has moved the Court for summary judgment on the claims asserted by CCI in its First Amended Complaint [**DN 104**].  PNC fully adopts and incorporates by reference its memorandum in support of that motion [**DN 104-1**] and its reply in support of that motion [**DN 124**] as the arguments and issues addressed therein may be applicable to the affirmative defenses raised by CCI in response to PNC's counterclaim.

on the face hereof, on demand, or if so demanded by you, in advance, for the amount paid or required to pay each draft, plus your drawing fee

(RSA, Exhibit 1 hereto, ¶1). CCI further agreed to pay, on demand, all commissions, fees, and any other charges and expenses (including all charges for legal services) which may be paid or incurred by PNC in connection with the SBLC. [*Id.*]. Finally, CCI agreed that any amounts not paid when due would bear interest at the rate of two percent (2%) above the Libor Flex Rate. [*Id.*].

To recover on a promissory note or other obligation for the loan and repayment of money, the holder or payee must establish (1) there is a note; (2) he is the legal owner and holder of the note; (3) the defendant is the maker of the note; and (4) a certain balance is due and owing on the note. *See e.g.*, C.J.S. *Bills and Notes*, §275 (2008). Once these facts have been established, the bank has made a prima facie case for recovery on the obligation. *Blackburn v. Beverly*, 114 S.W.2d 98, 100 (Ky. 1938).

All of these material facts have been established without dispute. CCI acknowledges that it signed the RSA and delivered the RSA to PNC. PNC disbursed $1,762,220 in accordance with Standard Chartered's draw on the SBLC. CCI received PNC's demand for reimbursement of the amount of that payment and CCI has failed and refused to make payment pursuant to that demand. Finally, there is no legitimate dispute that the outstanding principal owed to PNC under the RSA is $1,766,690.55. The outstanding interest as of March 7, 2013 is $107,023.53, plus interest accruing at the per diem of $108 per day.

Once the record evidence, as here, shows that an agreement to repay a debt "has been duly executed and is in default, a prima facie right to judgment is established and the burden shifts to the debtor to establish an affirmative defense." *Reece*

9

*v. Chestatee State Bank*, 579 S.E.2d 11, 14 (Ga. App. 2003); 12 AM. JUR. *Bills and Notes*, §662 (1997).  When a party establishes its account and the balance due, "the burden then shifted to defendants to establish payment, satisfaction, or that the account was incorrect."  *H.C. Whitmer Co. v. Richardson*, 111 S.W.2d 577, 579 (Ky. 1937).  Because CCI has no defenses to PNC's claim for payment under the RSA, PNC is entitled to judgment on that claim as a matter of law.

## II.   PNC IS ENTITLED TO JUDGMENT ON CCI'S OBLIGATION UNDER THE TERM NOTE.

The Term Note provides that CCI will pay the principal sum of One Million Dollars ($1,000,000) with interest accruing thereon at the rate of 7%.  (*See* Term Note, Exhibit 4 hereto, ¶1).  The Term Note further provides that "Principal shall be due and payable in four (4) equal consecutive monthly installments in the amount of $20,000 each, commencing on January 15, 2010 and continuing on the 15th day of each month thereafter and a final installment of $920,000 on April 30, 2010."  [*Id.* at ¶2(B)].  Any outstanding principal and accrued interest shall be due and payable in full on April 30, 2010.  [*Id.*].  In addition, the Term Note provides that if CCI fails to make any payment due pursuant to the provisions of the note within fifteen (15) calendar days of the due date, CCI would be required to pay a late charge equal to the lesser of 5% of the amount of such payment or $100.  The note also provided for a default interest rate of three (3) percentage points in excess of the interest rate in effect upon the occurrence of CCI's default on its obligations under the Term Note.  [*Id.* at ¶3].  The events which constituted "default" included the non-payment of any principal or interest when due.  [*Id.* at ¶7].

It is undisputed that on November 16, 2010, PNC notified CCI that it was in default under the Term Note and demanded payment thereon.  It is likewise undisputed

that no payment has been made since that date.  CCI has no defenses to its payment obligations under the Term Note and, therefore, PNC is entitled to summary judgment on its claim for nonpayment of the Term Note.

## CONCLUSION

On the basis of the foregoing, PNC has established its right to recovery on the RSA and the Term Note.  In addition, PNC is entitled to recover its costs and attorneys' fees incurred on the basis of the provisions of the RSA and Term Note. Because CCI has not paid in accordance with the terms of the agreements, the Court should enter a judgment in favor of PNC enforcing those obligations.

Respectfully submitted,

/s/ Cornelius E. Coryell, II
Cornelius E. Coryell, II
ccoryell@wyattfirm.com
Rachel K. Mulloy
rmulloy@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
2500 PNC Plaza
Louisville, Kentucky 40202
502.589.5235

*Counsel for Defendant PNC, National Association*

11

## CERTIFICATE OF SERVICE

        I hereby certify that on March 15, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Gregory W. McDowell
GREGORY W. MCDOWELL, P.S.C.
7405 Burlington Pike, Suite 201
Florence, KY 41042

*Co-counsel for Guangzhou Consortium Display Product Company, Ltd. and Consortium Companies, Incorporated*

*Attorney for Steven M. Oberst, Lynda S. Oberst,  Clinton S. Oberst, and Susan J. Oberst*

Todd J. Flagel
James Papakirk
Allison Bisig Oswall
FLAGEL & PAPAKIRK LLC
50 E Business Way, Suite 410
Cincinnati, OH 45241

*Co-Counsel for Guangzhou Consortium Display Product Company, Ltd. and Consortium Companies, Incorporated*

Kevin R. Feazell
CORS & BASSETT
537 East Pete Rose Way, Suite 400
Cincinnati, OH 45202-3502

*Attorney for Roger C. Schreiber*

        /s/ Cornelius E. Coryell, II

60327512.1

12