# EXHIBIT 1

## APPLICATION FOR IRREVOCABLE STANDBY LETTER OF CREDIT AND REIMBURSEMENT AND SECURITY AGREEMENT

CREDIT WILL BE SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS OF THE INTERNATIONAL CHAMBER OF COMMERCE IN EFFECT ON THE DATE OF ISSUANCE.

## Application For Irrevocable Standby Letter Of Credit

TO: **National City.**

National City Bank
Global Trade Services
P.O. Box 5101, Loc. 01-7637
Cleveland, OH 44101-0101
Telephone: (800) 622-4585

| Bank Use Only |
|---|
| L/C #: _____ Date: _____ |

8  CL013861

Please issue an irrevocable standby letter of credit substantially in accordance with this Application and transmit it as indicated below. In issuing the Credit you are expressly authorized to make such changes from the terms set forth below as you, in your sole discretion, may deem advisable provided that no such changes shall vary the principal terms hereof.

**Client Instructions:**
1. Please complete the information requested below, using your tab key to navigate from field to field.
2. Read, sign and date the attached Reimbursement and Security Agreement (as Applicant).
3. Obtain co-applicant signature, if applicable.
4. Please return via facsimile to National City at fax # (216) 488-7650 and mail the signed original to National City at the above address.

| Client Legal Name (Applicant): Consortium Companies, Inc. | Beneficiary Legal Name: Standard Chartered Bank (China) Limited, |
|---|---|
| Client Physical Address (PO Box not allowed): 1436 Cox Ave. Erlanger, KY 41018 | Beneficiary Physical Address (PO Box not allowed): See special conditions below |
| Contact Name: Roger C. Schreiber, CFO Phone: (859) 342-7100 Fax: (859) 647-7140 | Contact Name: Lucas Du   Assistant Vice President Phone: (86) 20 8391862 Fax: (86) 20 83339998 |
| Client's National City DDA Number (for payment of L/C fees): | Transmit L/C to beneficiary by: SWIFT Courier (Default if not checked):  ☐ Mail   ☒ Swift (if Swift, provide Swift address): SCBLCNSXGZH |
| Advising Bank, if specified by Beneficiary: N/A | Advising bank charges to be paid by: *Applicant* |

| Letter of Credit Amount: $1,000,000.00 Written Amount: One million U.S. Dollars | Currency if NOT in US$? | Letter of Credit Expiration Date: 7/13/2008 | Partial drawings · permitted unless checked: ☐ | Auto renewable? Yes: ☒ No: ☐ |
|---|---|---|---|---|

**Letter of Credit Special Instructions & Documents Required:**
*(Language generally obtained from Beneficiary, subject to the approval of National City prior to issuance)*
☐ Beneficiary's signed statement reading as follows:

☐ Other Documents:

☒ Special Conditions/Other Instructions:
Complete beneficiary name and address is:
Standard Chartered Bank (China) Limited Guangzhou Branch
13/F May Flower Plaza, No. 68
Zhongshan No. 5 Road,
Guangzhou, P.R. China 510030

DEPOSITION EXHIBIT 33
5-30-12
PENGAD 800-631-6989

07 AUG 30 AM 9: 53

☒ This credit should be worded similarly to the attached addendum/addenda and/or schedule(s), each page of which has been initialed by one or more of us, forming a part thereof.

EXHIBIT 1 TO MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF COUNTERCLAIM PLAINTIFF PNC BANK

This Application is made subject to the Reimbur[...]nt and Security Agreement attached hereto and executed [...] the provisions of which are hereby made applicable to this Application and the Letter of Credit.

**PLEASE DATE AND OFFICIALLY SIGN THE REIMBURSEMENT AND SECURITY AGREEMENT INCLUDED HEREIN.**

71-0160-00 (Rev. 07/06)

## Reimbursement And Security Agreement

In consideration of the issuance at our request of your Standby Letter of Credit (the "Credit"), substantially according to the Application, the terms of which are included herein or are attached hereto and initialed on behalf of ourselves (by any one or more of the undersigned), which terms are hereby approved by us, we hereby unconditionally agree as follows:

1. As to drafts under or purporting to be under the Credit, we agree to reimburse you in cash at your counters in the city and state stated on the face hereof, on demand, or if so demanded by you, in advance, for the amount paid or required to pay each draft, plus your drawing fee. Payments shall be made in United States Dollars, and, if the Credit is payable in a currency other than United States Dollars, computed at the rate of exchange as fixed by you, current on the date of payment of the draft; provided, however, that if the Credit is payable in a currency other than United States Dollars, you may, in your absolute discretion, accept payments in the currency in which the Credit is payable. If there is then no rate of exchange generally current for effective wire transfers, we agree on demand to pay you an amount which you then deem necessary to pay or provide for the payment of our obligations hereunder; but in any such event we shall remain liable for any deficiency which may result if the actual cost to you of settlement of your obligations under the Credit proves to be in excess of the amount so paid by us, and we shall be entitled to a refund, without interest, of any excess payment made by us. If it is a condition of the Credit that the beneficiary is authorized to draw clean drafts, you are authorized and instructed to pay drafts without requiring, and without responsibility for, the delivery of any other documents, either at the time of payment or thereafter. As to documents presented for payment pursuant to the Credit without drafts, we agree that our obligation hereunder shall be the same as though drafts had been presented or accompanied such documents.

We further agree to pay to you on demand, your commissions, fees and any and all charges and expenses (including all charges for legal services) which may be paid or incurred by you in connection with the Credit, including, but not limited to: costs of complying with any and all applicable governmental exchange regulations, all correspondents' charges, for our account. Any amounts which are not paid when due shall bear interest, payable on demand, until paid in full. Interest payable hereunder shall be at a fluctuating rate, calculated on the basis of a 360-day year and actual days elapsed, which is ___Two___ percent ( _2.00_ %) above the Prime Rate (or, if the blank is not completed, then the rate of interest shall be four percent (4%) above the Prime Rate), with each change in the Prime Rate automatically and immediately changing the rate applicable hereto. For purposes hereof, "Prime Rate" means the fluctuating rate in effect at the time in question that is publicly announced by you from time to time as being your prime rate thereafter in effect. Such payment shall be subject to a minimum late payment fee. We shall not be entitled to any rebate of any portion of the fee paid to you if the Credit shall expire or terminate, or if the amount available under the letter of credit shall be reduced to prior to the end of the period for which such fee is paid.

In the event that any United States currency drafts are drawn by us or any of us on you in order to refinance any obligation set forth above, and such drafts, at your option, are accepted by you, we agree to pay you on demand, but in any event not later than the maturity date, the amount of each such acceptance, and this Agreement shall be applicable to all drafts so accepted by you as if such drafts were drawn under the Credit. Each amount which may become due and payable to you under this Agreement may, in your discretion and if not otherwise paid, be charged by you against any available funds then held by you for our account.

2. The users of the Credit shall be deemed to be our agents, and we assume all risks of their acts and omissions with respect to the use of the Credit and/or its proceeds. Neither you, your officers, directors, employees or agents, nor your correspondents or affiliates, or their officers, directors, employees or agents shall be responsible for: (a) the use which may be made of the Credit and/or its proceeds and/or for any acts or omissions of the beneficiary and any transferee in connection therewith, or any breach of contract between the beneficiary and/or transferee and ourselves or any of us; (b) any lack of validity, acceptability or enforceability of the Credit or any other agreement or instrument relating thereto or any provision of this Agreement; (c) verification of the truth, accuracy, sufficiency, validity or existence of facts or information contained in any statement or document required to be presented with any draft drawn under the Credit; or the genuineness of any signature appearing on any such document or statement; or whether any individual signing such document or statement is authorized to sign on behalf of the person or entity that is purporting to execute such document or statement, even if such documents should in fact prove to be in any or all respects irregular, invalid, insufficient, fraudulent or forged; (d) particular conditions stipulated in the documents or superimposed thereon; (e) the existence, character, quality, quantity, condition, value, packing, or delivery of any goods or service purporting to be represented by such documents, or any difference in character, quality, quantity, condition or value of same from that expressed in such documents; (f) any deviation from instructions, delay, default or fraud by the supplier or any other party in connection with any goods or service or the supplying thereof, including partial or incomplete performance, or failure or omission in supplying any and all of same referred to in the Credit or in any documents or agreements related thereto; (g) delay in arrival, or performance, or failure to arrive of any goods or any of  the documents or payments relating thereto; (h) any variance between invoices and bills of lading or other documents in respect of said goods or service; (i) payment against presentation of documents which do not comply with the terms of the Credit, including any failure of any document to bear any reference or adequate reference to the Credit, or failure of documents to accompany

any draft, instrument or demand at negotiation, or failure of any person to note the amount of any draft, instrument or demand as required by the terms of the Credit, each of which provisions, if contained in the Credit itself, it is agreed may be waived by you; (j) errors, omissions, interruptions, or delays in transmission, or delivery of any messages, by mail, cable, telegraph, wireless or otherwise, whether or not they be in cipher; (k) errors in translation or errors in interpretation of technical terms; (l) compliance with or circumstances resulting from any laws, customs, regulations or governmental directives which may be in effect in any country of negotiation or payment of the Credit; (m) any act, error, neglect, default, omission, insolvency or failure in the business of any of your correspondents; (n) any other circumstances whatsoever in making or failing to make payment under the Credit; or (o) any loss or liability whatsoever arising from or in connection with the Credit, except we shall have a claim against you, and you shall be liable to us, to the extent, but only to the extent, of any direct, as opposed to consequential, damages suffered by us which we prove were caused by (1) your gross negligence or willful misconduct in honoring a presentation under the Credit, or (2) your willful failure to pay under the Credit after the presentation to you by the beneficiary (or a successor to whom the Credit has been transferred in accordance with its terms) of a draft and/or documents strictly complying with the terms and conditions of the Credit.

In furtherance and extension and not in limitation of the specific provisions hereinbefore set forth, we agree that any action taken by you or by any of your correspondents under or in connection with the Credit or the relative drafts, instruments, demands, documents or property, if taken in good faith, shall be binding on us and shall not put you or your correspondents under any resulting liability to us; and we make like agreement as to any inaction or omission, unless in breach of good faith.

3. We hereby further indemnify and hold you and your correspondents harmless from and against any and all claims, damages, losses, liabilities, costs and expenses whatsoever (including, but not limited to, attorney's fees) which you may incur, or which may be claimed against you, by any person or entity whatsoever by reason of or in connection with the execution and delivery or the transfer of, or the payment or the failure to pay under, the Credit, including any claim or demand by you against us or any of us, except we shall not so indemnify and hold you harmless from any claims, damages, losses, liabilities, costs and expenses which we prove were caused by the events referred to in items (o)(1) and (o)(2) of the immediately preceding paragraph.

4. If at any time and from time to time you require collateral (or additional collateral) security, we agree to deliver, convey, transfer and/or assign to you as security for our obligations and liabilities hereunder and also for any and all other of our obligations and liabilities (or the obligations or liabilities of any of us) to you, howsoever created, arising or evidenced, whether joint or several, direct or indirect, absolute or contingent, now or hereafter existing, due or to become due (collectively, "Liabilities"), such collateral security as you may request; and if we do not provide you, within five (5) days of such demand, with such security as you believe in good faith necessary to secure such Liabilities, we shall deposit with you an amount of cash equal to the face amount of the Credit issued hereunder and any fees, commissions and other charges then or thereafter payable with respect thereto, and such amount shall remain on deposit with you until a reasonable time after the expiry date of the Credit. If we make such deposit of cash with you, we understand that you will pay interest on such deposit at such rates as you would pay on similar deposits with similar maturities. You shall be entitled to obtain specific performance of our obligation to make such cash deposit. All such cash and other property hereinabove referred to, together with any and all other property in which you are granted a security interest by us (or any of us) hereunder or under any other instrument, are hereinafter collectively referred to as the "Collateral." All or any of the Collateral coming into your possession or that of any of your correspondents may be dealt with, held, and disposed of by you as hereinafter provided; and receipt by you, or any of your correspondents at any time, of other security, including cash, shall not be deemed a waiver of any of your rights and powers herein mentioned. We agree to execute and deliver to you trust receipts and other security agreements and financing statements complying with the requirements of applicable law, in such form as may be required by you, and to pay all filing fees in connection therewith, it being understood that your rights as specified herein or therein shall be in addition to, and not in limitation of, your rights under any applicable law.

5. Upon default in or non-performance of any agreement or condition herein contained, or if any representation or warranty made by us or by any of us shall prove to have been incorrect or misleading in any material respect when made; or our failure, after your demand, to furnish any financial information you may request of us or to permit your inspection of our books and records of account; or in case of any depreciation in the value of the Collateral below that agreed upon or subsequently requested by you; or in the event of any application for the appointment of a receiver for, or the filing of a petition by or against, any of us in bankruptcy or for reorganization or proposing an arrangement under the Federal Bankruptcy Code, as now or hereafter amended, or otherwise, or the making of a general assignment by any of us or any guarantor of any drafts or acceptances, or the death of any of us, or any act or event or occurrence, however expressed or indicated, which in your sole judgment impairs your security or increases your risk, all of our Liabilities, direct and indirect, to you, whether arising hereunder or otherwise, shall, at your option, become immediately due and payable, and in such event you are hereby authorized immediately to sell the whole or any part of the Collateral at any brokers' board or at public or private sale at your option, without notice of the amount due or claimed to be due, demand of payment, advertisement and notice of sale, or any of them, each and all of which are hereby expressly waived, and to apply the net proceeds of such sale, after deduction of expenses for collection, sale and delivery, to the

payment of all acceptances and obligations hereunder and any other Liabilities, whether due or not due, returning the surplus, if any, to us, who shall remain liable for any deficiency upon any such sale with interest at the rate set forth above.

6. Without limiting, and in addition to, the above provisions, each of us agrees that all monies and other property belonging to us or any of us of every name and nature whatsoever, now or at any time hereafter delivered, conveyed, transferred, assigned or paid to you, or coming into your possession or into the possession of anyone for you in any manner whatsoever, whether expressly as security for any or all Liabilities of us or any of us to you or for safekeeping or otherwise, or as to which any of us may have any interest, right or power, including any items received for collection or transmission, and the proceeds thereof, whether or not such property is in whole or in part released to us or any of us on trust or bailee receipt, are hereby made security for each and all Liabilities. We further agree that any indebtedness due or owing from you to any of us may at any time, before as well as after the maturity of any or all Liabilities, be set off and applied against any or all Liabilities, in such order of preference as you may determine. You may retain or take immediate possession of all Collateral (whether or not you have turned some or all of it over to us under this Agreement or a separate security agreement) without demand, notice, or legal process, and for this purpose, we shall, at your request, assemble the Collateral to a reasonably convenient place designated by you, and you shall have the right to enter upon our premises, without legal process, and remove the Collateral (including the right to render equipment unusable) and we hereby authorize such entry and waive and release you of and from any and all claims arising from such entry; you shall be subrogated to all of our interests, rights, and remedies with respect to the Collateral, and may in your discretion, take or bring any and all commercially reasonable steps, actions or legal proceedings, in your name or in ours, to realize upon the Collateral and apply the net proceeds thereof to our indebtedness to you; and your written notice to us at the last known address of any of us, ten days prior to the date of public sale of the Collateral or prior to the date after which private sale of the Collateral will be made, shall constitute reasonable notice. We waive any rights we may have to notice or hearing prior to your taking possession of any Collateral or otherwise exercising your rights hereunder. We will bear and pay all expenses of every kind (including all charges for legal services) of the enforcement of any of your rights herein mentioned, of any claim or demand by you against us or any of us, and of any actual or attempted sale, exchange, enforcement, collection, maintenance, retention, insurance, compromise, settlement, release, delivery on trust receipt, or delivery of any such security, and of the receipt of proceeds thereof, and will repay to you any such expenses incurred by you. Upon any sale by virtue hereof, you may purchase the whole or part of the property sold, discharged from any right of redemption, which is hereby expressly waived and release.

7. Our obligations under this Agreement shall be absolute, unconditional and irrevocable and shall be performed strictly in accordance with the terms of this Agreement and the Credit under all circumstances whatsoever, including, without limitation, the following circumstances: (a) any lack of validity or enforceability of the Credit or any other agreement or instrument relating thereto (collectively, the "related documents") or any provision of this Agreement; (b) any amendment or waiver, of, or any consent to departure from, all or any of the related documents; (c) the existence of any claim, setoff, defense or other rights which we may have at any time against the beneficiary or any transferee of the Credit, you or any other person or entity, whether in connection with this Agreement, the related documents or any unrelated transaction; (d) any statement or any other document presented under the Credit proving to be forged, fraudulent, invalid or insufficient in any respect, or any statement or representation therein being untrue or inaccurate in any respect whatsoever; (e) payment by you under the Credit against presentation of any draft, or document which does not comply with the terms of the Credit, provided that such payment shall not have constituted gross negligence or willful misconduct by you; and (f) any act, error, neglect, default, omission, insolvency or failure in the business of any of your correspondents.

Without limiting the generality of the foregoing, you and your correspondents may honor as complying with the terms of the Credit any drafts or other documents, otherwise in order, which may be signed by, or issued to, the administrator or executor of, or the trustee in bankruptcy of, or the receiver for any of the property of, or any other person or entity acting as the representative or in the place of, the party in whose name the Credit provides that any drafts or other documents should be drawn or issued.

8. Each right, power or privilege specified or referred to in this Agreement is in addition to and not in limitation of any other rights, power and privileges that you may otherwise have or acquire by operation of law, by any other contract, or otherwise. No delay, extension of time, renewal, compromise, failure on your part to exercise any right, or other indulgence which may occur, shall impair your rights or powers hereunder. You shall not be deemed to have waived any of your rights hereunder unless you or your authorized agent shall have signed such waiver in writing. No such waiver, unless expressly as stated therein, shall be effective as to any transaction except the specific transaction described in the waiver, nor as to any transaction which occurs subsequent to the date of such waiver, nor as to any continuance of a breach after such waiver.

9. We hereby warrant that the beneficiary of the Credit is not a prohibited person and that any and all transactions related to the Credit are not prohibited under any Foreign Assets Control Regulations of the United States Treasury Department and that all transactions related to the Credit will conform in every respect with all foreign and domestic laws, rules and regulations (including financing and exchange control regulations) now or hereafter applicable to the transaction related to the Credit or applicable to the execution, delivery and performance by ourselves. You and your

correspondents shall not be liable for any failure by you or anyone else to pay or accept any draft or honor any presentation under the Credit or for any loss or damage resulting from any censorship, law, control or restriction, rightfully or wrongfully exercised by any de facto or de jure domestic or foreign government or agency thereof, declared or undeclared war, or from any other cause beyond your or your correspondents', agents' or subagents' control, and we agree to indemnify and hold you harmless from any claim, loss, liability or expense arising by reason thereof.

We will procure promptly any necessary import, export or other licenses for the import, export, shipping or warehousing of any and all property shipped under, pursuant to or in connection with the Credit or covered by any document held by you or your correspondent relative to any draft(s) accepted by you or included in the Collateral, and will furnish such certificates in that respect as you may at any time require; and will keep the property adequately covered by insurance satisfactory to you, in companies satisfactory to you, and will assign the policies or certificates of insurance to you, or will make the loss or adjustment, if any, payable to you at your option; and will furnish you upon request with evidence of acceptance of such assignment by the insurers. Should the insurance upon any such property for any reason be unsatisfactory to you, you may, at our expense, obtain insurance satisfactory to you. Notwithstanding your approval of such insurance, we assume all responsibility as to the sufficiency and genuineness of the insurance.

10.  Any modification of the terms of the Credit, other than an increase in the amount of the Credit or an extension of the maturity or time for presentation of drafts, acceptances and/or documents, may at your sole option be made by any of us with or without notification to the others, but any increase in the amount of the Credit or extension of maturity or time for presentation of drafts, acceptances and/or documents shall only be at the request of all of us, and in either such event this Agreement shall be binding upon us with regard to the Credit so increased or modified, to drafts, documents and property covered thereby, and to any action taken by you or any of your correspondents, in accordance with any such extension, increase or other modification, unless such modification is not accepted by the beneficiary. You may at your sole option refuse to issue any amendment or extension to the Credit.

We agree that no acceptance or payment of overdrafts, irregular drafts, other irregular documents or drafts with irregular documents attached shall, if assented to or approved by us orally or in writing, impair any rights which you have under this Agreement. In case of any other variation between the documents called for by the Credit and the documents accepted by you or your correspondents, we shall be conclusively deemed to have waived any right to object to such variation with respect to any action by you or your correspondents relating to such documents and to have ratified and approved such action as having been taken on our direction, unless we, immediately upon receipt of such documents, file objection with you in writing.

If a transport document or copy thereof is stipulated, documents may be presented later that the maximum allowable time specified in the UCP (as hereinafter defined), but still must be presented within the validity of the Credit.

11.  If it is a condition of the Credit that payment may be made upon receipt by you of a telecommunication advising negotiation, we hereby agree to reimburse you on demand for the amount indicated in the said telecommunication advice, and further agree to hold you harmless if the documents fail to arrive or, when, as and if documents arrive, it should appear that the terms of the Credit have not been complied with, and/or that the documents are not in order.

12.  If any law, regulation, guideline or requirement (whether or not having the force of law), or any change in same or in the interpretation thereof by any court or administrative or governmental authority charged with the administration thereof, or any change in generally accepted accounting principles (i) shall impose, modify or deem applicable any reserve, special deposit, minimum capital, risk-based capital or similar requirement against or with respect to letters of credit issued by you, or (ii) would impose on you and other condition regarding this Agreement or the Credit or any related document or transaction hereunder, or (iii) subjects you to any tax, charge, fee, deduction or withholding of any kind whatsoever, and the result of any event referred to in clauses (i), (ii) or (iii) above shall be to increase the cost to you of issuing or maintaining the Credit (which increase in cost shall be the result of your reasonable allocation of the aggregate of such cost increases resulting from such events), or would have the effect of reducing the rate of return on your capital as a consequence of your obligations hereunder to a level below that which you could have achieved but for the enactment, promulgation or change (taking into account your policies with respect to capital adequacy), then, upon demand from you, we shall immediately pay to you, from time to time as specified by you, additional amounts sufficient to compensate you for such increased cost incurred or reduced rate of return suffered by yourselves. A certificate from you as to such increased cost or reduced rate of return incurred by yourselves as a result of any event referred to in clauses (i), (ii) or (iii) above showing the manner of calculation thereof shall, in the absence of manifest error, be conclusive and binding evidence as to the amount thereof.

13.  The Uniform Customs and Practice for Documentary Credits as most recently published by the International Chamber of Commerce (the "UCP") shall in all respects be deemed a part hereof as fully as if incorporated herein and shall apply to the Credit, except as otherwise specifically provided herein. This Agreement shall be governed by and construed in accordance with the laws of the state shown on the face hereof as your address, except to the extent such laws are inconsistent with the UCP. Wherever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision hereof shall be prohibited by or invalid

under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions hereof.

14. We acknowledge that you do not purport to give any legal advice; that you make no representation or warranty that the Credit will satisfy our needs; that we should consider consulting legal counsel concerning any questions about the terms of this Agreement or the Credit; that we are not relying on you in any manner in connection with the wording of the Credit or the structuring of any transaction related thereto; that we are responsible for our decisions to enter into any underlying contract with the beneficiary of the Credit, to cause the issuance of the Credit, and to choose the terms of the application for the Credit, and that you may determine in your sole discretion whether or not to issue the Credit.

15. This Agreement shall be binding upon us, our heirs, executors, administrators, successors, and assigns and shall inure to the benefit of, and be enforceable by us, your successors, transferees, and assigns. If this Agreement should be terminated or revoked as to us by operation of law, we will indemnify and save you harmless from any loss which may be incurred by you in acting hereunder prior to your acknowledgment of receipt by you or your successors, transferees, or assigns of notice in writing of such termination or revocation. If this Agreement is signed by one party, the terms "we", "our" and "us" shall be read throughout as "I", "my" and "me," as the case may be. If this Agreement is signed by two or more parties, it shall be the joint and several agreement of such parties; and in any such case, this Agreement shall not be revoked or impaired as to any one or more of such parties by the death of any of the others or by the revocation or release of any obligations hereunder of any one or more of such parties. The obligations hereof shall continue in force and apply notwithstanding any change in the membership of any partnership undersigned, whether arising from the death, resignation, retirement or other withdrawal of one or more partners or the accession of one or more new partners.

16. In the event you receive any facsimile, telex or electronic letter of credit application and/or oral, facsimile, telex or electronic instruction from person(s) purporting to be, and/or which instruction or application you believe in good faith to be made, given or authorized by any of us, in connection with the application, issuance, amendment, renewal, termination, payment or other action regarding the Credit, you shall be entitled to rely on the authority of the person(s) making the request, whether or not they are so authorized, and we hereby agree that you may, but shall not be required to, act upon any such instruction or application. We further agree to indemnify and hold you harmless from any claims by virtue of your acting upon any such instruction or application as same was understood by you, except for claims resulting solely from your gross negligence or willful misconduct.

We agree to send you a manually signed confirmation of all oral, facsimile, telex and electronic instructions, marked "PREVIOUSLY COMMUNICATED BY (PHONE, FAX, ETC.) ON _____ . DO NOT DUPLICATE," within 24 hours. You shall have no duty to compare the manually signed confirmation against instructions previously received nor shall you have any responsibility should the confirmation not be received or should the contents of the written confirmation differ from the oral, facsimile, telex or electronic instructions as acted upon by you. You have no liability for facsimile, telex or electronic instructions not legibly or correctly received, due to equipment problems, or not received at the numbers designated for facsimile, telex and/or electronic equipment for your International Department/Letter of Credit area.

17. We agree that if the Credit is to be automatically renewed and/or the expiry date of the Credit is to be automatically extended, in the event that we do not want such Credit renewed or extended, we will so request in writing to you, delivered at least _60_ days prior to the latest date for notification by you of non-renewal or non-extension stipulated therein (or if blank is not completed, then 60 days prior to such date), not to renew or extend. We agree that if such a timely request not to renew or extend is not made, you may automatically renew or extend the Credit, and we hereby agree that in such event we shall have no claim or cause of action against you, nor defense to payment under this Agreement, as a result of such automatic renewal or extension of the Credit.

You may, at your sole discretion, elect not to allow the Credit to renew or extend automatically. If you elect not to renew or extend, we shall have no claim or cause of action against you, nor defense to payment under this Agreement, as a result of your non-renewal or non-extension.

18. We understand, that, if the credit is issued in favor of any bank or other financial, commercial or governmental entity which as issued or is to issue an undertaking on you or our behalf in connection with the Credit, we hereby agree to remain liable under this Agreement in respect of the Credit (even after its stated expiry date) until you are released by such bank or entity.

19. Any notice to you shall be deemed effective only if in writing sent to and received at your International Department/Letter of Credit area. Any notice to or demand on any of us shall be binding on all of us and shall be deemed effective when made to any person who has signed this Application on behalf of any of us, or to any of us by mail, telecommunication, telephone or otherwise to the last address or telephone number of such person appearing on your records.

20. You may assign or transfer this Agreement or any instrument(s) evidencing all or any of the aforesaid obligations and/or liabilities, and may deliver all or any of the property then held as security therefore, to the transferee(s), who shall

thereupon become vested with all the powers and rights in respect thereto given you herein or in the instrument(s) transferred, and you shall thereafter be forever relieved and fully discharged from any liability or responsibility with respect thereto, but you shall retain all rights and powers hereby given with respect to any and all instrument(s), rights or property not so transferred.

21. We understand that, once you issue the Credit, your obligation to the beneficiary is independent of any agreement or relationship which we have with the beneficiary. We further understand that, in letter of credit operations, banks deal with documents and not with goods, services and/or other performances to which the documents may relate, regardless of any notice or information they may possess or be provided regarding such goods, services and/or other performances, and without any responsibility for further investigation. We hereby waive any right we may have to bring any action against you based on fraud, forgery other defects not apparent on the face of the documents presented under the Credit. We shall have no right to instruct you to refuse or fail to pay a draft drawn under the Credit, and when you pay any such draft we shall remain obligation to reimburse you as provided herein.

**(When applicable)**
**CORRESPONDENT BANK OR OTHER CO-APPLICANT**

Name: _____

Address: _____

_____

Authorized Signature(s) _____  Date

_____
Typed Name(s)          Title(s)

Phone Number: _____

Account Number to Debit: _____

**APPLICANT (ACCOUNT PARTY)**

Name: Consortium Companies, Inc.

Address: 7438 Cox Ave., Erlanger, KY 41018

_Roger C. Schreiber_  7/17/07
Authorized Signature(s)          Date

Roger C. Schreiber          CFO
Typed Name(s)          Title(s)

Phone Number: 859-647-9910

Account Number to Debit: 985934827

| FOR BANK USE ONLY | | |
|---|---|---|
| Liabilities Outstanding: _____ | Commission: _____ | All signatures authorized and valid _____ |
| Comm. L/Cs _____ | Issuance % or Min./Max. _____ | ☐ Secured          ☐ Unsecured |
| Acceptances _____ | Evergreen % p.a. or Min. p.a. _____ | Collateral, if any, forwarded to C & C Loans _____ |
| Standby L/Cs _____ | Rate % p.a. or Flat Fee p.a. _____ | Approval Document to International _____ |
| Others _____ | | |
| Sub Total _____ | | Approval By: _____ |
| New L/C Amount _____ | SIC Code: _____ | Signature |
| Total _____ | Purpose of L/C: _____ | Print Name |
| International Dept. Line _____ | ☐ Financial     ☐ Other | Dept. |
| | | Date |

**Risk-Based Customer Codes:**
☐ Check if customer, applicant or co-applicant is a depository institution.
(bank, savings and loan, credit union — NOTE: a financial holding company is not a depository institution)

ADDTIONAL COMMENTS / INSTRUCTIONS: _____

71-0180-00 (Rev. 07/06)