# EXHIBIT 2 TO THOMAS DODD AFFIDAVIT

# DECEMBER, 30, 2009 PARTIAL PAYMENT AND PARTIAL RELEASE AGREEMENT

## PARTIAL PAYMENT AND PARTIAL RELEASE AGREEMENT

This Partial Payment and Partial Release Agreement (the "Agreement") is executed as of December 30, 2009, by and between PNC Bank, National Association as successor to National City Bank ("Lender") and Consortium Companies, Incorporated ("Consortium") and Roger Schreiber ("Schreiber"), Clint and Susan Oberst ("CSO") and Steve and Lynda Oberst ("SLO") (Schreiber, CSO and SLO are hereafter jointly and each "Guarantors").

### WITNESSETH:

WHEREAS, Consortium executed and delivered to Lender a Commercial Note: Revolving Credit ("Note") and Security Agreement ("SA") dated July 17, 2007 (SA and Note and all other documents executed in connection therewith are "Loan Documents") which evidence a loan in the face amount of $8,000,000.00 ("Loan") as more fully described in such Loan Documents; and

WHEREAS, Schreiber, CSO and SLO executed and delivered to Lender certain Guaranty agreements ("Guaranties") for the Loan extended by Lender to Consortium; and

WHEREAS, pursuant to the Guaranties and the Loan Documents executed in connection with the Loan, Lender is the holder of a valid, enforceable and perfected security interest in the assets of Consortium ("Consortium Assets"); and

WHERAS, Lender has issued letters of credit ("LOC") in connection with the Loan which LOC are outstanding in the sum of One Million Dollars due to expire in January, 2010 ("January LOC") and Two Million Dollars due to expire in July, 2010 ("July LOC"); and

WHEREAS, the Loan has not been paid, is in default and the Borrowers are unable to pay the balance ("Obligation") due on the Loan in full at this time; and

WHEREAS, Consortium has entered into an agreement to refinance the Note (the "Refi") with Bibby Financial Services (Midwest), Inc. ("BFS") which Refi will pay Lender the full amount due on the Note of $1,137,000.00 plus accrued interest and expenses ("Refi Amount") but not the amount due or to be due under the LOC when same expire; and

WHEREAS, Lender has agreed to accept the Refi and provide for the short term payment of the January LOC prior to the expiration date of the July LOC; and

NOW THEREFORE, for good and valuable consideration, including the mutual covenants contained herein, the parties agree as follows:

1. In consideration of: (i) the payment of the Refi Amount in immediately available funds not later than 4:00 p.m. on Friday, January 8, 2009 ("Payoff Deadline"), time of the essence, and (ii) the execution and delivery to Lender on or before the Payoff Deadline of an acceptable intercreditor agreement with BFS whereby Lender receives a security interest in the

PNC007244

Consortium Assets junior to that of BFS to secure the LOC; and (iii) the execution and delivery to Lender on or before the Payoff Deadline of a note ("LOC Note") by Consortium to repay the expected draw on the January LOC which LOC Note will have a maturity date of April 30, 2010 with an interest rate of 7% with monthly principal payments of $20,000.00 per month plus interest beginning January 15, 2010 which LOC Note shall be in form and content the same as that attached as Exhibit A hereto (it is assumed that the draw on the January LOC will be for the face amount of $1,000,000.00- in the event of a lesser draw the LOC Note will be for the amount of such lower draw but with similar terms); (iv) a $5,000.00 extension fee paid to Lender by Borrower on or before the Payoff Deadline in good funds; and (v) the execution of and continuing compliance with this Agreement by Borrowers, Lender releases and discharges and covenants not to sue Borrower and Guarantors for the amount due on the Note only provided nevertheless that the liability of the Borrower and Guarantors for the amount due on the January LOC/LOC Note and July LOC is unaffected such release. Nothing herein shall be deemed to release, acquit, waive or discharge Borrower or Guarantors with respect to any breach of any covenant or representation made herein by Borrower or Guarantors

2. In consideration of Lender's execution of and continuing compliance with this Agreement, and conditioned upon the consideration contracted for above being received by Borrower and Guarantors, the Borrower and Guarantors do hereby release and forever discharge Lender and its officers, employees, directors, shareholders, agents and attorneys, *its successors and assigns* (the "Lender Parties") from any and all claims, demands, causes of action, suits, damages, judgments or obligations of whatsoever nature, kind or character, whether at law or in equity, whether existing or arising under the laws of the Commonwealth of Kentucky, United States of America or any other state or political subdivision, whether known or unknown, suspected or unsuspected, matured or unmatured, whether having arisen or hereafter to arise, which Borrower or Guarantors or any of their heirs, successors and assigns may now or hereafter have against the Lender Parties based upon or arising out of in any manner, directly or indirectly, the Loan, the Guaranties, the Obligation, or any of the Loan Documents executed in connection therewith.

3. Borrowers agree and acknowledge that all parties have been represented by counsel of their choice and that they *voluntarily execute this Agreement of their own free will* and choice.

4. Guarantors specifically agree and acknowledge that Lender's willingness to release them from further liability on the Note and provide time for payoff of the January LOC is expressly contingent on the truth, accuracy and completeness of the financial information ("Financial Information") *pertaining to the assets and liabilities provided to Lender.* Guarantors acknowledge and accept the reliance by Lender on the Financial Information.

5. The parties hereto hereby state that they intend to be legally bound hereby and represent and warrant that the below indicated officers or representatives of the parties are authorized to sign this Agreement on behalf of the entity for which they have so signed and that all appropriate corporate approvals, *if any, have been obtained.*

2

PNC007245

6. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present law, such provision shall be severable, and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.

7. Borrower and Guarantors acknowledge that this Agreement is to be considered a full and final release of Lender. Each of the Borrower and Guarantors acknowledges that they may discover or determine additional or different facts hereafter which are not known as of the date of this Agreement and that, notwithstanding such discovery, he or they intends for this to be a full and complete release of claims as described herein. Borrower and Guarantors agree to: (i) execute at Lender's request such other and further documents as are deemed necessary or reasonable by Lender to fulfill the purposes of this Agreement; and (ii) take such other or further action as my be requested by Lender to fulfill the purposes of this Agreement.

8. This Agreement contains the complete and integrated agreement of the parties with respect to the items listed in the prefatory recitations and supersedes all prior agreements and understandings, both written and oral, of the parties hereto pertaining to such matter.

9. It is understood and agreed that this Agreement shall be binding upon and inure to the benefit of each respective party hereto and their respective heirs, successors and assigns.

10. This Agreement may be executed in any number of counterparts and by different parts in separate counterparts, each of which, when so executed and delivered, shall be deemed to be an original, but all of which when taken together shall constitute but one and the same instrument. This Agreement may be executed by facsimile signature.

11. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the 5th day of January 2010.

*[Signatures on the Following Page]*

3

PNC007246

_____  
Witness  
Print Name: Jennifer Schreiber

_____  
Witness  
Print Name: Gregory W. McDowell

_____  
Witness  
Print Name: Gregory W. McDowell

_____  
Witness  
Print Name: Gregory W. McDowell

_____  
Witness  
Print Name: Gregory W. McDowell

_____  
Roger Schreiber

_____  
Clint Oberst

_____  
Susan Oberst

_____  
Steve Oberst

_____  
Lynda Oberst

CONSORTIUM COMPANIES INCORPORATED

By: _____

Name: ROGER SCHREIBER

4

PNC BANK, NATIONAL ASSOCIATION
SUCCESSOR TO NATIONAL CITY
BANK

By: _____

Name: THOMAS DODD

2467501.1

2467501.1

PNC007248