IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| GUANGZHOU CONSORTIUM DISPLAY PRODUCT, LTD, ET AL. | : : : | Case No. 2:11-CV-00005 |
| | : | Judge David L. Bunning |
| Plaintiffs, | : : | Magistrate Greg Wehrman |
| v. | : : | |
| PNC BANK, N.A., ET AL. | : : | **PLAINTIFF ROGER C. SCHREIBER'S REPLY** |
| Defendants. | : : : : : | **MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Local Rule 7.1, Plaintiff Roger Schreiber ("Schreiber"), hereby submits the following for his Reply Memorandum in further support of his Motion for Partial Summary Judgment ("Motion") that was filed with the Court on March 4, 2013.

I.   INTRODUCTION

In its Combined Response to the Motions for Summary Judgment of the Guarantor Defendants and Memorandum in Support of Cross-Motion for Summary Judgment ("Opposing Brief"), PNC raises three arguments in its attempt to defeat Schreiber's Motion. As shown below, PNC's arguments are not supported by Kentucky law and they do not change the undisputed facts of this case. Although Schreiber will not restate all the facts outlined in its original Motion, one thing is worth repeating – Schreiber executed a Guaranty in 2008 and that Guaranty is unenforceable under Kentucky law. As a result, Schreiber's Motion for Partial Summary Judgment should be granted.

II. ARGUMENT

### A. The Guaranty does not reference the instrument it guarantees and fails to otherwise conform to the requirements of KRS 371.065.

PNC initially argues that KRS 371.065 does not invalidate the Guaranty because the Guaranty agreements "effectively reference the instruments guaranteed within the meaning of the statute and those agreements are valid and enforceable." (Opposing Brief at 13). Recognizing that a guaranty can satisfy KRS 371.065 in one of three ways, PNC claims that the Guaranty is valid through the statute's reference prong. This argument is fatally flawed for a number of reasons.

To begin with, in order to be valid under this portion of the statute, a guaranty must "expressly refer to the instrument being guaranteed." *BP Products N. Am. Inc. v. McGuirk Oil Co., Inc.,* 2011 U.S. Dist. LEXIS 58897, *9 (W.D. Ky. 2011) *citing Wheeler & Clevenger Oil Co. v. Washburn,* 127 S.W.3d 609 (Ky. 2004) (A copy of this decision was attached Schreiber's original Motion as Exhibit D). The Guaranty executed by Schreiber does not satisfy this requirement. Neither one of the two documents PNC asserts Schreiber is liable under, specifically the Term Note and RSA, are mentioned anywhere in the Guaranty. Instead, the Guaranty broadly guarantees the payment of "each and every obligation" of Consortium Companies, Inc. ("CCI") to PNC, including obligations "now existing or hereafter created" and including (but not limited to) "any documents or instruments executed with or given to evidence the Guaranteed Debt". (*See* the Guaranty at ¶1). In other words, the Guaranty is ostensibly limitless, covering any debt of CCI, whether present or future.

PNC desperately attempts to ignore these undisputed facts by misdirecting the Court's attention to other loan documents and misconstruing case law analyzing KRS 371.065.

According to PNC, the "statute is satisfied by the reference to the Term Note, the RSA, and the individual Guaranty agreements in the Letter Agreement and the PPRA." (Opposing Brief at 11). The Letter Agreement and PPRA were two loan documents executed by the parties more than a year after the Guaranty. (Copies of these documents were attached as Exhibit 1 and 2 to PNC's Opposing Brief.) In support of its use of these two documents, PNC sites two cases for the proposition that "Courts interpreting KRS 371.065 recognize that the required reference to the instrument being guaranteed can be found in the language of multiple documents." (*Id.* at 11). PNC then reasons that the Court can look to the Letter Agreement and PPRA as a means of validating the Guaranty under KRS 371.065. Neither of the cases cited by PNC, however, support such a result.

In PNC's first case, *Smith v. Bethlehem Sand & Gravel Co., LLC*, 342 S.W.3d 288 (Ky. App. 2011), the court was faced with the validity of a guaranty purporting to hold the guarantor liable for a $500,000 promissory note. The guarantor challenged the enforceability of the Guaranty for a number of reasons, but pertinent to this Motion, was his contention that it was unenforceable pursuant to KRS 371.065. The circuit court disagreed. The court first "considered the language of the guaranty agreement itself, which refers to and purports to guarantee a $500,000 term note." (*Id.* at 291). The court also considered a "Schedule 1" document that was referenced by the guaranty in three places and was "attached to and made a part of this Guaranty Agreement." (*Id.*). The Schedule 1 document described the obligations in the guaranty and explicitly referred to the guaranteed promissory note. In "light of the combined language of the guaranty agreement and Schedule 1 document, the circuit court held that the guaranty agreement did effectively reference the instrument it guaranteed within the meaning of KRS 371.065." (*Id.* at 292). On appeal, the appellate court agreed, noting that the guaranty

agreement itself referred to the term note and that Schedule 1 appeared to be the "final page of the guaranty agreement." (*Id.*).

In PNC's other cited case, *Banterra Bank v. Hendrick*, 2011 U.S. Dist. Lexis 21708 (W.D. Ky. 2011) (a copy of this decision is attached as Exhibit A), the court was faced with a guaranty with language as follows:

> For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrow's obligations under the Note and Related Documents.

(*Id.* at \*24-25). The guaranty also defined "Note" as the "promissory note from Borrower and Lender, bearing the same dates as this mortgage in the original amount equal to the maximum lien amount of this mortgage, together with all renewals or replacements of, modifications of, refinancing of, consolidations of, and substitutions for the promissory note or agreement." (*Id.* at \*25). Finally, the guaranty, promissory note, and mortgage were all dated October 30, 2006. (*Id.*). Under these facts, the court found that while "perhaps not as exact as this Court might like, the Guaranty satisfies the requirements of KRS 371.065." (*Id.* at \*25-26).

PNC now urges this court to uphold the Guaranty based on the holdings of *Smith* and *Banterra Bank*. In doing so, PNC fails to acknowledge key distinctions this Guaranty has with those in the cited cases. First and foremost, both of the guaranties in *Smith* and *Banterra Bank* did exactly what the statute requires – they referred to the instrument they guaranteed. In other words, the courts were not analyzing a guaranty that lacked *any* reference to the instrument it purportedly guaranteed. Instead, the *Smith* and *Banterra Bank* courts were addressing whether the reference in the guaranty was enough to satisfy the statute. In deciding this issue, they looked at the guaranty itself and at the documents that were referenced in the guaranty.

4

Unlike the *Smith* and *Banterra Bank* guaranties, this Guaranty does not reference any instrument it purportedly guarantees. Instead, it just generally guarantees "each and every obligation" of CCI. The reference prong of KRS 371.065 requires the guaranty to expressly refer to the instrument guaranteed. (*BP Products N. Am. Inc.,* 2011 U.S. Dist. LEXIS at *9). *Smith* and *Banterra Bank* do not eliminate this requirement. Instead, they simply show the court's willingness to look to other documents, when they are already referenced by the guaranty, in determining whether the reference can adequately satisfy KRS 371.065. PNC has not cited any case where the court has upheld a guaranty under the reference prong of the statute when that guaranty made absolutely no reference to any document it purportedly guaranteed. Moreover, in *Brunswick Bowling & Billiards v. Ng-Cadlaon,* 2011 Ky. App. Unpub. Lexis 820 (Ky. App. 2011) (a copy of this decision is attached as Exhibit B), a guaranty containing a laundry list of guaranteed obligations was invalidated even though the guaranteed instrument fell into one of the categories, because the reference was not an express reference under KRS 371.065. In other words, a reference was made, but it was not direct enough under Kentucky law. In this case, by contrast, the reference to the guaranteed instrument is not only insufficient, it is nonexistent. Obviously common sense dictates that if a guaranty is invalid because its reference is not specific enough, a guaranty that has absolutely no reference to the guaranteed instrument is also unable to satisfy the reference prong of KRS 371.065.

Additionally, in citing *Smith* and *Banterra Bank,* PNC has ignored the fact that all of the documents examined in those cases were executed contemporaneously with the guaranty. The Letter Agreement and PPRA, on the other hand, were not even in existence at the time the Guaranty was executed. Instead, they were executed more than a year after the Guaranty was signed by Schreiber. Despite this time gap, PNC argues that they serve as the "necessary nexus

between the Guaranty agreements and the instruments they guaranteed." (Opposing Brief at 13). In other words, according to PNC's logic, any guaranty defective on its face pursuant to KRS 371.065, can be rehabilitated by subsequent documents containing language that refers to both the original guaranty and to any instruments to which the guaranty will be applied. This reasoning is clearly not supported by the express language of the statute and it is also not condoned by the holdings of *Smith* and *Banterra Bank*. Although Schreiber has not located another case making the exact same argument as PNC, it is axiomatic that a guaranty cannot "expressly refer" to the guaranteed instrument when that instrument is not even in existence at the time the guaranty is executed. Not only were the Letter Agreement and PPRA not in existence at the time the Guaranty was executed, it is undisputed that the Term Note, one of the documents PNC seeks liability under, was also not in existence.

In sum, despite PNC's attempt to validate the Guaranty through the reference prong of KRS 371.065, it is clear that the Guaranty does not reference any document it purportedly guarantees. As a result, it simply does not satisfy this portion of the statute. Moreover, as shown in Schreiber's original Motion, the Guaranty does not satisfy any other portion of the statute and is therefore invalid under KRS 371.065.

### B. Schreiber did not waive the application of KRS 371.065.

In its second argument, PNC claims that Schreiber waived any defects in the Guaranty, including its failure to comply with KRS 371.065. PNC bases this claim on the language of the Guaranty as well as the Letter Agreement. As already noted, the Letter Agreement was executed over a year after the Guaranty. PNC's desperate attempt to validate and/or rehabilitate the Guaranty based on this document is meritless. PNC has not cited any case giving it the ability to override the requirements of KRS 371.065, and thereby validate a guaranty, defective on its face,

by means of a waiver provision located in an extrinsic document executed over a year after the defective guaranty. As a result, and because the argument is itself absurd, this reply will focus on the waiver found in the actual Guaranty.[1] Paragraph three of the Guaranty includes the following:

> Guarantor hereby waives any notice of acceptance of this Guaranty, or any notice of the incurring by the Borrower at any time of any obligation or liability covered hereunder. Guarantor also waives any and all presentment, demand of payment, protest or notice of protest, notice of dishonor, notice of nonpayment or other default with respect to any obligation or liability covered hereunder, and all defenses in law or equity.

According to PNC, this language precludes Schreiber from attacking the Guaranty based on KRS 371.065. (Opposing Brief at 13). Once again, PNC's argument is fatally flawed.

For starters, Schreiber did not waive the application of KRS 371.065. Waiver is defined as the "voluntary and intentional surrender" of a "*known* right." (*Am. General Home Equity, Inc. v. Kestel*, 253 S.W.3d 543 (Ky. 2008), emphasis added). Furthermore, "[k]nowledge of the existence of the right on the part of the party claimed to have made the waiver is an essential prerequisite to its relinquishment. No one can be said to have waived that which he does not know, or where he has acted under a misapprehension of the facts." (*Harris Bros. Constr. v. Crider*, 487 S.W.2d 731, 733 (Ky. 1973)). Finally, the "burden of proof is upon the person relying upon the waiver." (*Pangallo v. Ky. Law Enforcement Council*, 106 S.W.3d 474 (Ky. App. 2003)).

Applying these principles to this case, PNC cannot prove that Schreiber waived his rights under Kentucky law. While the Guaranty's waiver provision lists a number of rights Schreiber

---

[1] Although Schreiber believes the Letter Agreement is inapplicable for the reasons stated, in the event the Court finds it relevant to this Motion, Schreiber's waiver analysis would still apply to that loan document. Like the Guaranty, the waiver provision found in the Letter Agreement is a general catch-all that lacks any direct reference to KRS 371.065.

specifically waived, KRS 371.065 is not included. The only fact supportive of PNC's claim is that the Guaranty ends with the catch-all "and all defenses in law or equity," but this catch-all does not equate to a known waiver under Kentucky law. PNC has presented absolutely no evidence proving that Schreiber was even aware of the protections of KRS 371.065 when he executed the waiver. As a result, Schreiber did not waive the statutory protection of KRS 371.065.

Additionally, it is important to recognize that through its waiver argument, PNC asks this court to condone its attempt to circumvent Kentucky law. According to PNC's reasoning, PNC would never have to adhere to any of Kentucky laws, including KRS 371.065, as long as it includes a waiver provision in each document it drafts. The waiver provision does not even have to mention the rights the individual is relinquishing. Instead, it can be just a generic, catch-all provision like the one in this case.

PNC's proposition is offensive and should be summarily rejected by this court. In *Said v. Lackey,* 731 S.W.2d 7 (Ky. App. 1987), the Kentucky Court of Appeals rejected PNC's reasoning. In *Said* the court was faced with the issue of waiver as it applied to the statutory rights of a deputy jailer. Kentucky law gave the jailer certain statutory protections regarding his discharge, but the jailer signed an agreement allowing him to be "terminated at any time without notice or cause." (*Id.* at 7). Several months later, the jailer was fired and he subsequently sued for wrongful discharge. Although the trial court granted the employer's motion for summary judgment, the Kentucky Court of Appeals reversed. In its decision, the court rejected the argument that the jailer's employment agreement waived his statutory protections stating "[w]e would be reluctant to hold that the agreement relied upon by appellees and the trial court could effectuate a knowing and voluntary waiver of appellant's statutory rights even with language

8

more explicit than that which it contained. As the contract violates statutory law it will not be enforced." (*Id.* 9). In other words, the court recognized the repugnancy of PNC's argument. A contract that violates statutory law on its face, cannot be enforced on the basis that it contains a waiver provision attempting to waive the violation. Consequently, this court should reject PNC's attempt to use the doctrine of waiver to circumvent the requirements of KRS 371.065.

### C. PNC cannot satisfy Kentucky's requirements for equitable estoppel.

PNC's last argument asks this court to enforce the Guaranty based on the doctrine of equitable estoppel. Although claiming that equitable estoppel is "directly applicable to the situation at hand" (Opposing Brief at 16), PNC never lists the elements necessary to warrant relief under this doctrine, presumably because PNC knows that it cannot satisfy these elements. As recently held by the Kentucky Supreme Court:

> Under Kentucky law, equitable estoppel requires both a material misrepresentation by one party and reliance by the other party: The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

(*Fluke Corporation v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010)).

Applying these elements to the facts of this case, it is apparent that there is nothing to warrant the application of equitable estoppel. Simply put, there is not any evidence establishing any misrepresentation or concealment on the part of Schreiber or the necessary reliance on the part of PNC. PNC had full and complete access to the Guaranty at issue in this case. The fact that it is unenforceable is not because Schreiber misrepresented or hid the contents of the Guaranty from PNC. Instead, it just lacked the terms necessary for it to be enforceable under Kentucky law. Although PNC surely regrets this undisputed fact, that does not warrant PNC relief under the doctrine of equitable estoppel. As clearly demonstrated by *Fluke Corporation,* PNC has not and cannot establish the elements of equitable estoppel and, consequently, there is absolutely no legal basis for its application in this case.

**CONCLUSION**

Based upon the foregoing, the Guaranty must be found invalid under KRS 371.065. Schreiber has not waived the applicability of this statutory provision and PNC has not established any of the requirements necessary for equitable estoppel. As a result, Schreiber is entitled to summary judgment finding the Guaranty unenforceable as a matter of law and denying the portion of PNC's counterclaim based upon the Guaranty.

Respectfully submitted:

/s/ Kevin Ray Feazell
Kevin Ray Feazell (#84678)
Alexis L. McDaniel (#92924)
537 East Pete Rose Way, Suite 400
Cincinnati, OH  45202-3578
513-852-8200 phone
513-852-8222 fax
krf@corsbassett.com
Trial Attorneys for Plaintiff
Roger C. Schreiber

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Clerk using the CM/ECF system this 15th day of April 2013, which will serve the following:

Todd J. Flagel, Esq. tflagel@fp-legal.com
Byron E. Leet, Esq. bleet@wyattfirm.com
Christopher Tyson Gorman, Esq. tgorman@wyattfirm.com
Cornelius E. Coryell, II, Esq. ccoryell@wyattfirm.com
Rania Marie Basha, Esq. rbasha@wyattfirm.com
Gregory W. McDowell, Esq. gmcdowell@assuredtitlellc.com
John Shannon Bouchillon, Esq. Shannon@haydencraiggrant.com
P. Blaine Grant, Esq. blaine@haydencraiggrant.com
Matthew Decker, Esq. matt.decker@alston.com
Alex Hood, Esq. alex.hood@alston.com
Karl Geerken, Esq. karl.geerken@alston.com

/s/ Kevin Ray Feazell
Kevin Ray Feazell

564485.1