Get a Document - by Citation - 74 U.C.C. Rep. Serv. 2d (Callaghan) 187 https://www.lexis.com/research/retrieve?_m=2d2e3c196d124fc99f7...

Case: 2:11-cv-00005-DLB-JGW Doc #: 140-1 Filed: 04/15/13 Page: 1 of 6 - Page ID#: 5545

Switch Client | Preferences | Help | Sign Out

| Search | Get a Document | Shepard's® | More | | History | Alerts |

**FOCUS™** Terms                    Advanced... Get a Document         Go         View Tutorial

Service: **Get by LEXSEE®**
Citation: **2011 us dist lexis 21708**

*2011 U.S. Dist. LEXIS 21708, \*; 74 U.C.C. Rep. Serv. 2d (Callaghan) 187*

BANTERRA BANK, PLAINTIFF v. PAUL HENDRICK, DEFENDANT; THOMAS L. OSBORNE, DEFENDANT/THIRD PARTY PLAINTIFF v. WAYNE SHELTON, CPA, THIRD PARTY DEFENDANT

CASE NO. 5:09-CV-00012-TBR

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, PADUCAH DIVISION

2011 U.S. Dist. LEXIS 21708; 74 U.C.C. Rep. Serv. 2d (Callaghan) 187

March 2, 2011, Decided
March 3, 2011, Filed

**PRIOR HISTORY:** Banterra Bank v. Hendrick, 2010 U.S. Dist. LEXIS 37691 (W.D. Ky., Apr. 15, 2010).

**CORE TERMS:** guaranty, guarantor, collateral, Law School, lender, summary judgment, good faith, waived, notice, promissory note, prosecute, line of credit, co-obligor, borrower, absolute guaranty, unconditional, indebtedness, collection, discharged, mortgage, reasonable diligence, right to require, sur-reply, default, surety, waive, diligence, maximum, lease, nonmoving party

**COUNSEL:** [\*1] For Banterra Bank, Plaintiff: Thomas J. Keuler, LEAD ATTORNEY, Denton & Keuler, LLP, Paducah, KY.

For Thomas L. Osborne, Defendant: Thomas L. Osborne, LEAD ATTORNEY, Thomas L. Osborne PLLC, Paducah, KY.

For CPA Wayne Shelton, ThirdParty Defendant: Frank Stainback, Jr., Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY.

For Thomas L. Osborne, ThirdParty Plaintiff: Thomas L. Osborne, LEAD ATTORNEY, Thomas L. Osborne PLLC, Paducah, KY.

For CPA Wayne Shelton, Counter Claimant: Frank Stainback, Jr., Sullivan, Mountjoy, Stainback & Miller, P.S.C., Owensboro, KY.

For Thomas L. Osborne, Counter Defendant: Thomas L. Osborne, LEAD ATTORNEY, Thomas L. Osborne PLLC, Paducah, KY.

**JUDGES:** Thomas B. Russell, Chief Judge.

**OPINION BY:** Thomas B. Russell

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Plaintiff Banterra Bank's Renewed Motion for Summary Judgment (Docket # 51) based on their original Motion for Summary Judgment (Docket #12). Defendant Thomas L. Osborne originally filed a response (Docket #21). Plaintiff originally filed a reply (Docket #27). Defendant originally filed a sur-reply (Docket #35). This matter is now ripe for adjudication. This Court also ordered additional briefing on [\*2] the issue of the applicability of KRS § 371.065 (Docket #55-58). For the reasons that follow, Plaintiff's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

The American Justice School of Law ("Law School" or "AJSL") was organized and operated from 2004 until 2006. In the fall of 2005, the Law School needed financing to fund its operating costs. Paul Hendrick, the acting president of the Law School, contacted Banterra's president, Mike Hagan, in October 2005, to apply for a $150,000.00 line of credit loan. The line of credit was signed on October 11, 2005, and the loan was collateralized by a second mortgage against the Law School's real property and was guaranteed by Rudolph B. Bergfeld and Hendrick, who were the owners and officers of the Law School.

In the spring of 2006, the Law School needed additional funding and Hendrick met with Hagan again to apply for an increase in the Law School's line of credit. Hagan agreed to an increase in the line of credit to $275,000.00, provided the loan was collateralized and secured as the first loan had been. On May 6, 2006, the requirements of collateralization and guaranty were met and the loan was consummated. In the fall of 2006, Bergfeld withdrew [\*3] from the Law School and Thomas Osborne acquired an ownership interest in the Law School. Osborne owned a twenty percent interest in the Law School from September 11, 2006, until October 15, 2007. The Law School again needed additional funding and sought to increase the line of credit. On October 26, 2006, a third line of credit loan for $300,000.00 was consummated. The loan was again collateralized and there were two personal guaranty agreements executed by both Hendrick and Osborne. Osborne was serving on the Law School's Board of Directors at this time. The loan was fully secured by three lots of approximately ten acres each in Paducah's Information Age Park. At the time of the loan, the Law School reported to Banterra the lots were valued at $1,455,000.00.

The Law School was unable to pay the note on the stated maturity date, and subsequently filed for Chapter 7 bankruptcy relief. Banterra then notified Hendrick and Osborne of the Law School's default and made demand for payment of the note. The note remains unpaid. In the fall of 2008, Banterra alleges it filed a suit against the Law School. Banterra alleges this suit was prosecuted in the Law School's Chapter 7

EXHIBIT A

bankruptcy proceeding **[*4]** that was filed on September 23, 2008, *In Re:* American Justice School of Law, U.S. Bankruptcy Court, for Western District, Paducah Division, Bankruptcy Action No. 08-50929.

This action was filed on December 12, 2008, in McCraken County Circuit Court. It was removed to federal court based on diversity on January 20, 2009.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The nonmoving party must present **[*5]** more than a mere scintilla of evidence in support of his position; the nonmoving party must present evidence on which the trier of fact could reasonably find for the nonmoving party. *See id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

There are two primary issues to be addressed: whether Banterra may proceed against Osborne at this time and whether the Promissory Note, and thus the Commercial **[*6]** Guaranty, are void due to Hendrick lacking the authority to act on behalf of the corporation. In his sur-reply Osborne raised a third issue: the impaired collateral statute. Finally, Osborne has stated that the guaranty is invalid under KRS § 371.065.

### I. Obligation to Proceed Against the Principal

Under Kentucky law, a guarantor's liability to a creditor is determined by "[t]he intention of the parties to the contract of guaranty as gathered from the language, read in the light of attendant circumstances" as in the case of any contract. *McGowan v. Wells' Trustee,* 184 Ky. 772, 213 S.W. 573, 577 (Ky. 1919); *see also Pittsburgh Plate Glass Co. v. Cassidy,* 194 Ky. 81, 238 S.W. 172 (Ky. 1922) (holding every guaranty is to be interpreted in the light of the declared or inferred purpose and intent of the parties as ascertained from the writing itself).

In Kentucky, a guaranty may be classified as either one for payment, an absolute guaranty, or one for collection, a conditional guaranty. "A guaranty that is subject to no conditions and contains an absolute promise to pay the outstanding indebtedness guaranteed is a guaranty of payment." *Sunnyside Homes of Rockledge, Inc. v. Gordon,* No. 2004-CA-001719-MR, 2006 WL 572920, *3 (Ky. App. Mar 10, 2006) **[*7]** (citing *Liberty Nat'l Bank and Trust Co. v. Russ,* 668 S.W.2d 567 (Ky. App. 1984)); *McGowan,* 213 S.W. at 577 ("An absolute guaranty is an unconditional promise of payment or performance on default of the principal.") If the guaranty is absolute, "the obligation of the guarantor becomes fixed as quick as the guaranty is acted upon and the credit extended." *McGowan,* 213 S.W. at 577. The Kentucky Court of Appeals, in *Yager v. Kentucky Title Company,* further explained that in the case of an absolute guaranty "the guaranty may proceed against the guarantor at once on default of the principal. The guarantor's liability is dependant upon the same rule of law by which the liability of one who has broken his contract is determined." 112 Ky. 932, 66 S.W. 1027, 1028, 23 Ky. L. Rptr. 2240 (Ky. 1902). The Court went on to state that "[t]he most usual form of absolute guaranty is a promise to pay the debt at maturity if not paid by the principal debtor, and the guarantee may bring an action on default of payment at the date named against the guarantor." *Id.* (citations omitted).

Here, the Commercial Guaranty states that the "guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness **[*8]** of Borrower to Lender. . . . This is a guarantee of payment and performance not of collection." Looking to the language of the document as required by Kentucky law, this document is an absolute, unconditional guaranty. Similarly, the circumstances surrounding the issuance of the guaranty in no way indicate that this agreement was intended to be conditional. It appears the guarantee by Osborne was intended to replace that of Bergfeld who had withdrawn from the Law School. All attendant circumstances illustrate that all parties intended the relationship to continue as usual. The line of credit was extended on the same basis that it had been previously: collateralization and personal guarantee by the operating officers and directors of the corporation.

As stated, an absolute guaranty creates liability in the guarantor as soon as the guaranty is acted upon and credit extended to the borrower. *McGowan,* 213 S.W. at 577. Additionally, the absolute guaranty allows the lender to proceed against the guarantor immediately upon default of the principal. *Yager,* 66 S.W. at 1028; *see also Galbraith et al. v. Shores-Mueller Co.,* 178 Ky. 688, 199 S.W. 779, 780 (Ky. 1918) (holding on an absolute guaranty "the guarantor **[*9]** is unconditionally bound to satisfy the obligation at its maturity, and prior legal proceedings by the creditor against the principal debtor are not necessary to a recovery"). The lender, Banterra, therefore, is not required to proceed against the principal, the Law School, before proceeding against the guarantors, Osborne and Hendrick

In this case, the Commercial Guaranty states clearly,

> [t]his is a guarantee of payment and performance and not of collection, so Lender can enforce this guarantee against guarantor even when Lender has not exhausted Lender's remedies against any one also obligated to pay the indebtedness or against any collateral securing the indebtedness, this guarantee or any other guarantee of the indebtedness.

Although this language is not required in order to provide the remedy of proceeding against the guarantor immediately, Kentucky law requires that the Court look to the intention of the parties within the document which controls. The Commercial Guaranty clearly states it was the intention of the parties at the time it was executed that the lender, Banterra, had the remedy of proceeding against the guarantors, Osborne and Hendrick, before exhausting its remedies **[*10]** against any other party or exhausting the collateral.

Additionally, each guarantor expressly waived any right to require the lender, Banterra, to first proceed against the Law School or the collateral. The Commercial Guaranty states:

> Except as prohibited by applicable law, guarantor waives any right to require Lender...(C) to resort for payment or to proceed

directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person...; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

The Defendant asserts, however, that the lender, Banterra, must first attempt collection of the debt from the principal pursuant to KRS § 412.110. On the basis of this statute the Defendant contends that Banterra had only ten days to prosecute its claim against the principal and that only a specific waiver will allow a lender to pursue a guarantor without first seeking recovery from the principal.

The statute[1] allows a surety, co-obligor, or co-contractor, to require [*11] a creditor to sue or issue an execution against the principal. KRS § 412.110. The surety, co-obligor, or co-contractor must provide written notice to the creditor or his agent or attorney. Id. If the creditor does not "in good faith prosecute the suit with reasonable diligence . . . the cosurety, co-obligor, cocontractor . . . shall be discharged from all liability . . . ." Id. On the issue of waiver of notice the statute states: "[t]he written notice required In this section shall not be waived, unless the waiver is in writing. No waiver of the notice shall be pleaded as a defense or given in evidence, unless it is in writing."Id.

**FOOTNOTES**

1 The statute states in full: "A surety, co-obligor, or cocontractor, or one (1) of several defendants to a judgment may, by notice in writing served in person within the state on the creditor or plaintiff, or, if the plaintiff is a nonresident or absent from the place of his residence for the period of thirty (30) days consecutively, upon his agent or his attorney, require him to sue or issue execution. If the creditor does not in good faith prosecute the suit with reasonable diligence, or if the plaintiff does not, within ten (10) days after judgment, sue [*12] out execution and in good faith prosecute the collection, the cosurety, co-obligor, cocontractor, or defendant shall be discharged from all liability, except for his proper share according to the then existing condition of the several obligors, contractors, or defendants. In any joint suit against the whole, or separate suit against him, judgment shall be rendered against him separately, and only for such proper share. The written notice required in this section shall not be waived, unless the waiver is in writing. No waiver of the notice shall be pleaded as a defense or given in evidence, unless it is in writing." KRS 412.110.

This Court interprets the language of the statute, with regard to the ten day requirement, differently than the Defendant. The statute is intended to apply to sureties, co-obligors, or co-contractors or one of several defendants to a judgment. These possible parties form two rather distinctive groups: sureties, co-obligors and co-contractors who are responsible due to a contractual document and a defendant held jointly and severally liable via a judgment. In the second sentence, the conjunction "or" pulls together two independent clauses. The first clause, "if [*13] the creditor does not in good faith prosecute the suit with reasonable diligence" is separate from the second clause "if the plaintiff does not, within ten days after judgment, sue out execution and in good faith prosecute the collection." This is consistent with the language of the statute. Logically, the legislature would not use both the language "in good faith prosecute the suit" and "in good faith prosecute the collection" to apply to the same object, e.g., the co-surety or defendant, since they mean essentially the same thing. Therefore, the Court finds that the ten day limitation applies only to the plaintiff who has a judgment against a defendant, joint and severally. The surety, co-obligor and cocontractors need only "in good faith prosecute the suit with reasonable diligence."

The Plaintiff in this case, Banterra, has presented evidence that it has "in good faith prosecute[d] the suit [against the principal] with reasonable diligence." Banterra provided the Court with Proof of Claim from its suit against American Justice Law School, the principal, in *In Re: American Justice School of Law,* Action No. 08-50929 (Bankr. W.D.Ky.). Banterra has also asserted that due to the automatic [*14] stay provision under 11 U.S.C. § 362, Banterra is precluded from prosecuting any additional suit against the Law School.

The Defendant Osborne has asserted in his Sur-Reply that the automatic stay is routinely lifted for secured creditors to foreclosure so that it is not an impediment to Banterra filing suit against the principal and that the stay was lifted prior to the filing of this suit by Banterra. Additionally, Osborne asserts that Banterra asserted only a bankruptcy claim when AJSL filed for Chapter 7 and did not initiate an adversarial proceeding. The Court finds that the waiver within the Commercial Guaranty was proper, therefore, determination of whether the action taken by Banterra during the bankruptcy proceeding constituted prosecution of a suit with reasonable diligence need not be made at this time. *See infra.*

Osborne also asserts in his sur-reply that the waiver language is preceded with language referencing applicable state law. Osborne reasons that this language requires Banterra to follow the mandate of KRS § 412.100 and file a lawsuit rather than bankruptcy claim. The list of waivers is preceded by the phrase "[e]xcept as prohibited by applicable law, Guarantor waives [*15] any right to require Lender . . . ." The Court finds that this language was intended only to reference state law as it applied to ability of the parties to waive particular rights. This language was not intended to mandate Banterra follow KRS § 412.110, especially after those rights had been waived in accordance with that very statute. *See infra.*

As to the waiver, the statute states that waiver of the written notice required may be waived if in writing. In *Coombs v. Beneficial Finance Company,* the court discussed the issue of waiver, specifically the waiver of the requirement that the creditor proceed against the principal first. 549 S.W.2d 327 (Ky. App. 1977). The court held that there must be specific language waiving "diligence in bringing suit." *Id.* at 328. The general waiver of "any and all exemptions permitted by law to be waived" was too broad and required the creditor seek remedy from the principal before the guarantor. *Id.* However, the court has held that specific language may constitute a waiver. *Owensboro Savings Bank & Trust Co.'s Receiver v. Haynes,* 143 Ky. 534, 136 S.W. 1004 (Ky. 1911). In *Owensboro Savings Bank,* the court found the following language a suitable waiver: "[t]he parties [*16] hereto . . . hereby expressly waive presentment thereof for payment, notice of nonpayment, protest, and notice of protest and diligence in bringing suit against any party hereto, either maker or indorser." The court held the language of the waiver unambiguous and explained, "[w]here a party has contracted away all right to demand diligence in bringing suit, he cannot afterwards give notice under the statute, and insist on that diligence which he has expressly waived. A contract cannot be defeated In this way."

The language of the waiver at issue in this case is likewise unambiguous. The language is also specific as to which rights the guarantor is waiving. The language, "guarantor waives any right to require Lender . . . (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person . . . ," specifically waives the rights of the guarantor to insist the lender proceed against the principal first. As in the case of *Owensboro Savings Bank,* the Defendant can not contract away his rights to require the [*17] lender proceed against the principal first and then insist the lender proceed against the principal first.

Osborne in his Sur-Reply also asserts, correctly, that the duty of good faith and liability for negligence can not be waived. However, the Court finds that at issue in this Motion for Summary Judgment are Banterra's claims against Osborne alone; there are no counterclaims by Osborne against Banterra. Additionally, the Court finds that the rights waived in this case were the right to require the lender, Banterra, to proceed against the principal first, not the right of Osborne to bring a claim for breach of the covenant of good faith or for negligence. The Uniform

Commercial Code sections and cases cited for the proposition that these duties can not be waived, while correct, are not applicable to the case at bar.

The Court finds this Commercial Guaranty creates an absolute guarantee that is immediately enforceable against the guarantor without first proceeding against the principal or exhausting the collateral. Additionally, KRS § 412.110 does not alter this ruling. Even if the Plaintiff had not proceeded against the principal with "reasonable diligence", there was a specific and **[*18]** valid waiver of this right in the Commercial Guaranty.

### II. Validity and Enforceability of the Promissory Note

Even though, in many circumstances, a corporation is considered a "person" under the law, a corporation may only act through its Board of Directors and is bound by the acts of its officers or agents made within the scope of their authority. *Har-Bel Coal Co. v. Asher Coal Min. Co.,* 414 S.W.2d 128 (Ky. 1966). It is well settled law in Kentucky that "an officer of a corporation has no general authority to execute contracts on behalf of the corporation." *Id.* at 131. In fact, the authority of an officer to bind a corporation, "must come either from the by-laws or the board of directors, or the action of the officer must be of the nature that comes within the apparent scope of his employment . . . . The mere representations of a claimed agent, even when coupled with signing a paper in such capacity, are not sufficient to show his agency or extent thereof." *Id.* (citations omitted).

However, express authority to bind the corporation or approval by the Board of Directors may not be required in cases where the corporation receives the benefit of the unauthorized act. A corporation will **[*19]** be bound by the acts of its officers or agents in the regular course of business, even without specific authority having been granted by the Board of Directors, when the Directors appropriate the benefits of the act to the use of the corporation. *Enterprise Foundry & Machine Works v. Miner's Elkhorn Coal Co.,* 241 Ky. 779, 45 S.W.2d 470 (Ky. 1931).

The Defendant contends that there was never any corporate organization meeting by the original Directors or any time after, there was no organization meeting of shareholders, and no directors have ever been elected by shareholders. The Defendant states there are no corporate records kept and no corporate Board action ever authorized Hendrick to sign contracts or conduct business of any kind. In opposition, the Plaintiff has provided a document labeled "Corporate Resolution to Borrow." This document was signed by Hendrick and Osborne, and certifies Board approval of the loan. The Defendant contends that he did not sign this document because he was no longer involved with the school in October 2008, which he states is the date the Plaintiff alleges the document was signed. The dates on the document are not clear due to the quality of the copy; however, **[*20]** it appears to the Court the Loan Date on the document is 10/30/2006 and the Maturity Date is 10/31/2007. Additionally, the Plaintiff has provided documentation that the loan funds were placed into the corporation's account and were used for the benefit of the corporation.

Although the lack of corporate formalities would constitute an issue for the act of piercing the corporate veil, it does not appear to bear any weight on this issue. The fact that the loan funds were used for the benefit of the corporation establishes that, although there may have not been formal ratification or authorization, the corporation agreed to the formation of the contract and became bound by the action of its agent. The Court must look at the evidence presented in a light most favorable to the nonmoving party, the Defendant. However, even in a light most favorable to the Defendant, the evidence establishes that the Promissory Note is valid and enforceable.

The evidence submitted by the Defendant as to this issue is no more than a mere scintilla of evidence and the Court could not reasonably find for the Defendant based on the present evidence. As stated, "the mere existence of a colorable factual dispute will **[*21]** not defeat a properly supported motion for summary judgment."*Monette,* 90 F.3d at 1177. The Defendant has not established that Hendrick had no authority to sign the Promissory Note on behalf of the Law School.

### III. Impaired Collateral

Osborne in his sur-reply raises the issue of the impaired collateral statute, KRS § 355.3-605, contending that under the statute his liability is discharged. Under the statute liability may be discharged if Banterra released the obligation in whole or in part or granted the principal an extension of time. KRS § 355.3-605(1) and (2). There is no evidence that Banterra released the obligation owed by AJSL or granted an extension of time to pay the amount in default. Additionally, if "a person entitled to enforce the instrument [Banterra] impairs the value of the interest in collateral, the obligation of the secondary obligor [Osborne] is discharged to the extent of the impairment." KRS § 355.3-605(4). The statute explains

> impairing the value of an interest in collateral includes failure to obtain or maintain perfection or recordation of the interest in collateral, release of collateral without substitution of collateral of equal value or equivalent reduction **[*22]** of the underlying obligation, *failure to perform a duty to preserve the value of collateral owed, under Article 9 of this chapter or other law, to a debtor or other person secondarily liable,* and failure to comply with applicable law in disposing of or otherwise enforcing the interest in collateral.

*Id.* (emphasis added). Osborne cites KRS § 355.9-207 for the proposition that banks have a duty to preserve and protect the value of collateral. However, KRS § 355.9-207 applies only to collateral that is in the possession or control of the secured party. In this case, Banterra is not alleged to have had possession or control over the property which secured the loan; therefore, Banterra was under no duty to preserve or protect the value of the property. No other statute in Article 9 requires a secured party not in possession of collateral to act to protect the value of the collateral. Therefore, the liability of Osborne is not discharged pursuant to this statute. Additionally, as discussed above, this was an absolute and unconditional guaranty. Given that Banterra has the unconditional right to proceed against Osborne first, the decrease in market value of the collateral is not relevant. **[*23]** Any diminution in value of the collateral in the current case has no bearing on Osborne's liability. *Accord Compuware Corp. v. Bahn,* 107 Fed. Appx. 528, 530 (6th Cir. 2004) (applying Michigan law, the court found that an absolute and unconditional guarantee "waived any and all defenses to payment of the obligation."); *United States v. Rose,* 798 F.2d 1416, 1986 WL 17336, *2 (6th Cir. 1986) ("The failure of a secured party to diligently enforce its rights against collateral security . . . clearly would not discharge a guarantor's duties pursuant to an unconditional guaranty." (quoting *United States v. Willis,* 593 F.2d 247, 255, n. 10 (6th Cir. 1979)) (alterations in original)). If, on the other hand, Banterra had *disposed* of the property in a commercially unreasonable manner, Osborne would be entitled to a reduction or discharge of liability. *United States v. Willis,* 593 F.2d 247, 259 (6th Cir. 1979).[2]

#### FOOTNOTES

2 The distinction is important because commercially unreasonable disposal of the collateral would interfere with a guarantor's subrogation right against the debtor and collateral. As discussed above, though, failure to proceed against the debtor or collateral prior to proceeding against **[*24]** the guarantor is well within the rights of the creditor in an unconditional guaranty.

### IV. Application of KRS § 371.065

Defendant contests any judgment against him on the grounds that KRS § 371.065 makes the current agreement unenforceable. The relevant portion of KRS § 371.065 states:

> No guaranty of an indebtedness which is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates.

Defendant argues that the instrument does not include the maximum aggregate liability or the date on which the guaranty terminates. However, such items need only be included if the guaranty is not written on, or does not expressly refer to, the instruments or instruments being guaranteed. *Wheeler & Clevenger Oil Co., Inc., v. Washburn,* 127 S.W.3d 609 (Ky. 2004).[3] The current guarantee states in the introduction:

> For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of [*25] the indebtedness of Borrower to Lender, and the performance and discharge of all Borrow's obligations under the Note and the Related Documents."

Under the Definitions section, Note is defined as:

> The promissory note from Borrower to Lender, bearing the same dates as this mortgage in the original amount equal to the maximum lien amount of this mortgage, together with all renewals or replacements of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**FOOTNOTES**

3 See *Alliant Tax Credit Fund 31-A, Ltd. v. Nicholasville Cmty. Hous., LLC,* 663 F. Supp. 2d 575 (E.D.Ky. 2009), for an excellent summary of additional case law discussing KRS § 371.065.

The final paragraph on the agreement states: "THIS GUARANTY IS DATED OCTOBER 30, 2006." Similarly, the "Promissory Note" establishing the revolving line of credit is dated "10-30-2006." The mortgage associated with the promissory note and guaranty also states "THIS MORTGAGE dated October 30, 2006..." and concludes with a signature stating "this 30th day of October, 2006." The mortgage also expressly refers to the $300,000 maximum of the line of credit.

While perhaps not as exact as this Court [*26] might like, the Guaranty satisfies the requirements of KRS § 371.065. The language used in the guaranty is similar to language found acceptable in *Gen. Elec. Capital Corp. v. Kasey,* No. 05-355-C, 2007 U.S. Dist. LEXIS 3798, 2007 WL 162941 (W.D.Ky. January 18, 2007). In that case, the guaranty stated that it was given "to induce [Plaintiff] to enter into a certain lease transaction ("Lease") with [3rd Party]" and contained language referring only to "[the Lease and its related documents.]" 2007 U.S. Dist. LEXIS 3798, [WL] at *4 (alteration in original in second quotation). "The Lease and its related documents" and "a certain lease transaction" are less descriptive than the instant case's "the note and its related documents . . . bearing the same dates as this mortgage in the original amount equal to the maximum lien amount . . ." Accordingly, the current agreement comports with the requirements of KRS § 371.065. In addition, taking the circumstances surrounding the guaranty as a whole, Osborne was fully aware of the amount he was guarantying, and therefore also fulfills the underlying policy concerns of KRS § 371.065 - that a guarantor make an informed decision when signing a guaranty.

**CONCLUSION**

The Court finds, under Kentucky law, the Plaintiff [*27] may proceed against the Defendant at this time, without first proceeding against the principal or extinguishing the collateral. The Court also finds that the Promissory Note and the Commercial Guarantee are valid and enforceable: the Corporate Resolution to Borrow provides evidence Hendrick was authorized to sign the Promissory Note; even if he was not, the corporation ratified the contract by accepting the benefit and therefore made it valid. Finally, the Defendant's liability has not been discharged pursuant to the statute regarding impairment of collateral or KRS § 371.065. Therefore, Plaintiff's Motion for Summary Judgment is GRANTED. Defendant shall have TEN (10) DAYS to object to the amount of the judgment contained in Plaintiff's Motion for Summary Judgment and proposed order.

Plaintiff has requested Summary Judgment against Defendants Osborne and Hendrick. This Court can find no evidence in the record that Defendant Hendrick was ever served. Accordingly, Summary Judgment cannot be entered against Defendant Hendrick. Plaintiff shall have TEN (10) DAYS to come forward with proof-of-service for Defendant Hendrick, or else this Court will enter an order DISMISSING said Defendant.

For [*28] the foregoing reasons the Plaintiff's Motion for Summary Judgment is GRANTED against Defendant Osborne. Defendant shall have TEN (10) DAYS to object to the judgment amount. Plaintiff shall have TEN (10) DAYS to demonstrate service of Hendrick. An appropriate order shall issue.

/s/ Thomas B. Russell

**Thomas B. Russell**

**Chief Judge, U.S. District Court**

March 2, 2011

Service: **Get by LEXSEE®**
Citation: **2011 us dist lexis 21708**
View: Full
Date/Time: Monday, April 15, 2013 - 3:00 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
⊙ - Questioned: Validity questioned by citing refs

- ⚠ - Caution: Possible negative treatment
- ✦ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation Information available

* Click on any *Shepard's* signal to *Shepardize*® that case.

In

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2013 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.