UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| **GUANGZHOU CONSORTIUM DISPLAY PRODUCT COMPANY**, *et al.* : <br> : <br> *Plaintiffs*, : <br> : <br> vs. : <br> : <br> **PNC BANK, NATIONAL ASSOCIATION** : <br> : <br> *Defendant*. : <br> : | Case No. 2:11-CV-00005-DLB <br><br><br> **JUDGE DAVID L. BUNNING** |

**CONSORTIUM COMPANIES, INCORPORATED'S MEMORANDUM IN OPPOSITION TO PNC'S SECOND MOTION FOR SUMMARY JUDGMENT [DOC. 133]**

## Introduction

Despite all of the rhetoric and posturing that has been submitted in PNC's three motions for summary judgment, opposition memoranda, and reply briefs, PNC refuses to address the one question that is at the center of this litigation – **why did PNC execute the CCA, after retaining outside counsel to specifically review and modify the document, if it was not going to honor the terms of the agreement?** There has been no explanation as to why a sophisticated bank that has been in existence for 209 years would have an established practice of negotiating language to an agreement, hiring outside counsel to review the agreement, and executing the agreement only to later claim the agreement had no legal significance.

Instead, one week after Consortium USA moved for summary judgment on, among other things, PNC's counterclaims, PNC filed a second Motion for Summary Judgment on those very

claims. In that Motion, PNC claims that it is entitled to payment from Consortium USA under a Reimbursement and Security Agreement dated July 17, 2007 ("RSA") and a Term Note dated December 30, 2009 (the "Term Note"). Throughout this litigation, however, Consortium USA has maintained that Consortium USA is excused from making any payment allegedly owed to PNC because, among other reasons, (1) PNC knowingly paid under the SBLC, for which it now seeks reimbursement, when it knew the payment would not serve its intended purpose; (2) after the RSA was signed, but before a demand was made under the SBLC, PNC entered into and ultimately breached the CCA that obviated repayment under the RSA; (3) PNC failed to exercise good faith in paying the SBLC despite the CCA and requests from Standard Chartered Bank to pay under the CCA; and (4) PNC breached its legal duties to Consortium USA. Based on the facts in the record, PNC not entitled to recover on its counterclaims against Consortium USA. Even if Consortium USA is somehow found liable under the RSA or Term Note, Consortium USA is entitled to offset any amount it is owed from PNC.

The standard on summary judgment is well known -- whether there exists a genuine issue of material fact on the record as it stands now. As specifically set forth in Consortium USA's Motion for Partial Summary Judgment as to Liability, it is Consortium USA and not PNC who is entitled to judgment as a matter of law on PNC's counterclaim.[1] And, at a minimum, Consortium has established facts in support of its denials and affirmative defenses that preclude judgment in favor of PNC.

---

[1] Consortium USA hereby adopts and fully incorporates by reference its Memorandum in Opposition to PNC's first Motion for Summary Judgment [Doc. 117] and its Motion for Partial Summary Judgment as to Liability [Doc. 128].

**Relevant Facts**

The facts in the record have been addressed at length in Consortium USA's memoranda.[2] For purposes of PNC's Second Motion, the Court need only consider the following undisputed facts:

- PNC executed the CCA that required PNC to wire funds directly to Consortium China on behalf of Consortium USA;[3]

- The CCA specifically references the credit facility and letter of credit previously established for Consortium Companies, Inc.;[4]

- PNC contemplated that there would be no remaining liability on the SBLC once the CCA was funded;[5]

- PNC did not want the CCA to be funded through the RSA, but through a separate term loan;[6]

- PNC failed to wire the funds as provided under the CCA;[7]

- PNC did not use the doctrine of strict compliance when reviewing and honoring the presentment document under the SBLC;[8]

- PNC failed to follow its internal protocol and failed to obtain a waiver from Consortium USA for the discrepancy in the presentment document prior to honoring the demand for payment;[9]

- PNC failed to make a demand for payment specifically under the RSA as required;[10] and

---

[2] For purposes of ensuring a complete record, Consortium USA incorporates by reference the facts set forth in its various memoranda, as if fully restated herein.

[3] Doc. 26; Doc. 121, p. 4; Doc. 117-18; Doc. 117-22.

[4] Doc. 26.

[5] Doc. 117-22.

[6] Doc. 117-28; Doc. 116. 238:1-10.

[7] Doc. 36, p. 3.

[8] Doc. 117-1, ¶¶17, 18, 21(f).

[9] See Exhibit A, Exhibit, B, and Exhibit C attached hereto.

- PNC failed to provide an accurate accounting of what it claims is due and owing under the RSA and Term Note.[11]

These material and indeed dispositive facts are established by the evidence in the record and cannot be disputed by PNC.

## Argument

### A. PNC is not entitled to reimbursement under the RSA

The RSA is designed to provide a reimbursement mechanism for proper payment made under the SBLC. [Doc. 133-1, p. 8.] Here, PNC seeks to recover funds paid directly to SCB even though (a) the subsequent CCA was expected and had the effect of supplanting the RSA; (b) PNC intentionally made the payment under the SBLC after it had subsequently executed the CCA which provided for direct payment of the very same funds; (c) the SBLC demand was not properly paid; (d) the payment under the SBLC did not fulfill the intended purpose of paying off the SCB line of credit; and (e) PNC breached not only its contractual duties under the CCA but its legal duties to Consortium USA. PNC would have this Court believe that reimbursement under the RSA absolute; however, it is not. Applying the facts to the RSA, PNC is not entitled to recover under the RSA for several reasons.

**(1) Reimbursement under the RSA is conditioned upon PNC's good faith**

Under Kentucky law, a party may recover for breach of contract if it demonstrates the existence of a contractual duty and a breach of that duty. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir. 2001)(citing *Strong v. Louisville & Nashville R. Co.,* 240 Ky. 781, 43 S.W.2d 11, 13 (Ky. 1931)). According to the express language of the RSA, however, any duty of Consortium USA under the RSA is conditioned upon PNC acting in good faith:

---

[10] Doc. 38-7

[11] Compare Doc. 38-7 with Doc. 133-6

4

> In furtherance and extension and not in limitation to the specific provisions hereinbefore set forth, we agree that any action taken by you or by any of your correspondents under or in connection with the Credit or the relative drafts, instruments, demands, documents or property *if taken in good faith*, shall be binding on us and shall not put you or your correspondents under any resulting liability to us; and we make like agreement as to any inaction or omission, unless it is in **breach of good faith**.

[Doc. 133-2, ¶2 (emphasis added).]

Therefore, the RSA contains not only an express condition to Consortium USA's duties under the RSA, it expressly acknowledges the very duty of good faith that is implied in every contract.[12] The definition of good faith focuses on whether a party possesses a state of mind of "honesty in belief or purpose" and "faithfulness to one's duty or obligation." *Hollins v. Joe Guy Hagan Realtors Co, LLC,* 2006 WL 1946882 at *2 (Ky.App. July 14, 2006) (quoting Black's Law Dictionary (8th ed. 2004)).

Here, the facts establish that PNC was not faithful to its duties under the SBLC and that it did possess a state of mind of honesty in belief or purpose. At a minimum, there is a genuine issue of material fact as to whether it acted in good faith. In March 2010, PNC became aware that a payment under the SBLC would not satisfy Consortium USA's line of credit obligation to SCB. [Doc. 117-17.] That came at a time when PNC wanted out of the Consortium relationship at any cost. [Doc. 114 p. 149:5-13.]

In the weeks following its decision not to renew, Consortium USA and SCB requested that PNC consider an alternative to ensure a payment under the SBLC would pay off the SCB line of credit. [Doc. 117-19.] In June 2010, PNC revised and signed the CCA that outlined that alternative plan. [Doc. 26.] Specifically, PNC inserted language stating that the CCA was made under the authority of the credit facility and letter of credit in place with Consortium USA.

---

[12] The facts establishing the unequal bargaining power, vulnerability, and trust among PNC and Consortium USA is outlined in Doc 117.

5

[Doc. 124-2, p. 6; Doc. 108, 76:21-24, 77-79:1-12.] Payment under the CCA by PNC would effectively cancel the SBLC and satisfy Plaintiffs outstanding debt to SCB. [Doc. 112, p. 346:21-24, 347-351:1-14; 370:10-23.] With full knowledge, however, PNC never carried out the CCA and, in fact, ignored it and made payment under the SBLC, with devastating consequences. To make matters worse, PNC made the payment under a non-conforming demand, contrary to the requirements of UCP 600 to which it made the SBLC applicable. [Doc. 117-1, ¶¶17, 18.] T.O. Lee, a recognized expert in letters of credit and international banking, confirms this. In his Declaration, Mr. Lee states PNC "was careless," "totally failed the role as international banker" and "fail[ed] to observe the standard of care for international banks[.] [*Id*. ¶¶ 9-21.]

In fact, in honoring SCB's draw request on the SBLC, PNC failed to observe its own standard of care established by it prior conduct with Consortium USA. Prior to the draw request issued to PNC by SCB in July 2010, Consortium USA had other standby letters of credit with PNC that were honored by PNC. In January 2010, PNC was presented with a draw request from the Royal Bank of Scotland on a one million dollar standby letter of credit that did not conform to the terms of the letter of credit. [**Exhibit A**, PNC003251.] Before honoring this draw request, PNC identified that there was a discrepancy in the presentment document and requested that Consortium USA waive the discrepancy in writing. [**Exhibit B**, PNC000337.] The waiver, prepared by PNC and presented to Consortium USA after working its way through several PNC channels, specifically states:

> If you do not waive the discrepancies, we shall so inform the
> beneficiary and shall refuse to pay under the drawing.

[**Exhibit C**, PNC003252.] PNC's review of the presentment document submitted by SCB should have received the same care and diligence the draw request from Royal Bank of Scotland received six months earlier. Instead, PNC attempts to circumvent its own requirements by now

6

arguing the error in applicant's name is not material and is a minor deviation [See Doc. 136 pp. 19-22.] By PNC's own admission and course of dealing, that type of discrepancy is not minor and provides a basis for refusing payment to the beneficiary who made the improper request.

The covenant of good faith is breached if it evades the spirit of the bargain, acts with a lack of diligence, willfully renders imperfect performance, abuses the power to specify terms, interferes with or fails to cooperate in the other party's performance, or exercises contractually authorized discretion in an unreasonable manner. *Berks Mut. Leasing Corp. v. Travelers Property Cas. a Member of Citigroup*, 01-CV-6784, 2002 WL 31761419 (E.D. Pa. Dec. 9, 2002)(discussing the standard for breach of good faith in any contract). Here, PNC breached the covenant of good faith in almost every respect. Therefore, because Consortium USA's obligation under the RSA is conditioned PNC's good faith, Consortium USA is not obligated to PNC under the RSA.

**(2)    Reimbursement under the RSA is conditioned on a demand**

The express terms of the RSA also require that PNC make a demand before any obligation arises. In other words, the demand triggers any obligation under the RSA. PNC contends that Exhibit 7 to its counterclaim [Doc. 38-7] is the demand by PNC to Consortium USA to pay under the terms of the RSA.

However, upon closer review, the "demand" allegedly made by PNC upon Consortium USA is not a demand under the RSA and, therefore, any request for reimbursement is premature. On its face, Exhibit 7 fails to refer to the RSA in any fashion. It only refers to the Term Note which, as PNC alleges, is a distinct document and a distinct obligation. [Doc. 38-7.]

In light of the fact PNC has not made a proper demand on Consortium USA for payment under the RSA, a fundamental requirement of the RSA has not been satisfied and Consortium USA has no obligation to PNC, absent an appropriate demand.

## B. Consortium USA is otherwise legally excused from performing any obligations under the RSA and Term Note

PNC's failure to exercise good faith or make proper demand precludes any payment obligation under the RSA. Nevertheless, assuming that PNC has established a prima facie right to payment,[13] Consortium USA is otherwise legally excused from paying under the RSA or the Term Note due to PNC's negligence, breach of contract, subsequent agreements, and estoppel.

Through the briefing that has taken place since PNC filed its First Motion for Summary Judgment [Doc. 104], Consortium USA has designated facts and law in support of its affirmative defenses and, if the issues are not resolved in favor of Consortium USA, there are, at a minimum, genuine issues remaining for trial.

### (1) PNC was negligent in honoring the presentation under the SBLC

The RSA provides that PNC is, in fact, liable to Consortium USA for its gross negligence or willful misconduct in honoring a presentation under the SBLC. [Doc. 133-2, ¶2.] Because Consortium USA has designated specific facts that PNC was grossly negligent in honoring the presentment under the SBLC,[14] Consortium is not only legally excused from payment under the RSA, it is entitled to judgment against PNC. [*See* Doc. 117, *passum*.]

---

[13] Citing a Georgia appellate court, PNC claims that once the evidence shows that an agreement to repay a debt and is in default, "a prima facie right to judgment is established and the burden shifts to the debtor to establish an affirmative defense." [Doc. 133-1]. Assuming this is correct, Consortium USA has nevertheless established several affirmative defenses.

[14] PNC has previously argued that because the "First Amended Complaint provided absolutely no notice of any claim that the draw request was defective" Plaintiffs have waived the right to make such a claim. [Doc. 136 p. 14-17.] However, PNC received adequate notice of Plaintiffs' affirmative defense of negligence when it received Plaintiffs' Answer to PNC's Counterclaim on November 30, 2011.

8

On July 7, 2010, PNC honored a defective draw request on the SBLC from SBC. [Doc. 25-11, 25-12.] PNC negligently honored the defective draw request because the request did not identify a PNC customer as the Applicant on the presentment document. [Doc. 117-1, ¶¶17, 18.] Instead, the draw request identified Consortium China, who was not a PNC customer or account holder, as the Applicant.[15] [Doc. 25-11.] In international standard banking practice, the doctrine of strict compliance is used exclusively in the examination of documents for compliance in a standby letter of credit. [Doc. 117-1 ¶18.] As a consequence of the discrepancy in the applicant's name in the presentation of the SBLC, PNC did not properly perform the obligations embodied in the SBLC as amended, by failing to comply with the provision of UCP 600 article 14 and UCP article 16. [*Id.*]

A finding of gross negligence requires proof of the absence of slight care on the part of PNC. *Chesapeake & O. Ry. Co. v. Dodge*, 66 S.W. 606, 23 Ky.Law Rep. 1959. Consortium has established facts that PNC failed to use slight care when it reviewed and honored the presentation document under the SBLC. [*See* Doc. 117-1, *passum*.]

There is no dispute that PNC was aware of the international standard banking practice of strict compliance when reviewing presentment documents on a standby letter of credit. This is evidenced by PNC's course of conduct with Consortium USA with respect to the draw on the Royal Bank of Scotland standby letter of credit. Before PNC would honor the presentment from Royal Bank of Scottland, PNC obtained a signed, physical waiver from the applicant, Consortium USA, waiving what PNC characterized as a "minor typo discrepancies" before it would honor the presentment. [Exhibit B.]

PNC's awareness of international standard banking practice is further evidenced by the deposition of Santosh Podar, a former Assistant Vice President of Global Trade Services,

---

[15] PNC has vehemently disclaimed any relationship or affiliation with Consortium China.

9

Standby Letter of Credit Department, at PNC who oversaw the SBLC at issue in this litigation, who testified about PNC's adherence to the strict compliance doctrine:

> A: I told everyone, you know, if you want to draw, you have the right, you can draw, follow strictly the terms of the LC.

[Doc. 111 174:6-9.]

\*\*\*

> A: If there's a draw under this LC the draw would come by SWIFT and if the draw comes in by SWIFT, one of the staff would examine the document to draw the claim and once his or her finding is there then they would give it to me for final checkup and approval.
> Q: So you will review each one?
> A: Yes.
> Q: So if the draw request is made you review it?
> A: Yes.

[Id. 175:1-9.]

The record reflects PNC failed to use even the slightest care in reviewing the presentment under the SBLC. First, PNC failed to even bother to understand the transaction underlying the SBLC. Mr. Podar testified that he would never both to look into this, even though most fundamentally one would have to understand who the applicant and who the beneficiaries are. [Doc. 111, 80-83.] PNC failed to understand that by sheer lack of care. Moreover, PNC failed to recognize that the draw request contained information that did not comply with the very terms of the SBLC. PNC failed to use common sense in reviewing the presentment document by not identifying the error in the name of the Applicant. Specifically, Mr. Podar, who admittedly knew nothing about underlying relationship between Consortium USA and Consortium China, failed to identify that the wrong party was named in the draw request. [Doc. 111, 125-128; 165-166.]

Based on PNC's gross negligence, it is barred from claiming reimbursement for payment it negligently made and PNC is not entitled to judgment under the RSA.

**(2) PNC's breach of the CCA excuses Consortium USA from liability under the RSA**

As Consortium USA has demonstrated in its own Motion for Summary Judgment, PNC has breached its own agreement under the CCA. This is significant because, had PNC not breached the CCA, Consortium USA would have no obligation to PNC under the RSA.[16] And, this very litigation would not have been necessary because Consortium USA would not have double liability on the same debt to SCB and PNC and its Chinese operations would not have been brought to a halt because of the outstanding indebtedness owed to SCB.

The CCA is an independent agreement. In fact, its whole purpose is to provide a substitute mechanism for payment under the SBLC. As such, it has the effect of a novation because it is a subsequent agreement that substitutes for the previous agreement and extinguishes the old agreement. *See Kirby v. Scroggins,* 246 S.W.2d 453, 455 (Ky.1952). Whether a novation has occurred is a question of the parties' intent. *G.D. Deal Holdings, Inc. v. Baker Energy, Inc.,* 501 F.Supp.2d 914, 920 (W.D.Ky.2007) (citing *In re Cantrill Const. Co.,* 418 F.2d 705, 707 (6th Cir.1969)). Novational intent is *implied* "whenever the new contract is manifestly in place of or inconsistent with a former one, or which renders a former contract impossible of performance." *Hall v. Wright,* 127 S.W. 516, 519 (Ky.1910) (emphasis added).

Here, PNC's own documents demonstrate that the CCA and its term loan repayment structure is inconsistent with the RSA. Through the CCA, PNC agreed that instead of making a payment to SCB under the SBLC, PNC would make a capital contribution to Consortium China in the exact amount of the SCB loan. [Doc. 112, 234:2-5.] Before signing the CCA, PNC had internal discussions to ensure that there would be no remaining liability on the SBLC once the CCA was funded. [Doc. 117-22.] The evidence shows that it was PNC's intent to eliminate the

---

[16] PNC has admitted that in June 2010, the PNC and Consortium USA agreed that the existing obligations under the RSA were going to be rolled into a new term note. [Doc. 117-18.] This subsequent agreement [Doc. 117-27] was never consummated due to PNC's breach of the CCA.

11

obligations under the SBLC prior to signing the CCA. [*Id.*] Further, PNC's intent to form a new contract was clear when PNC engaged outside counsel to review and revise the CCA. [Doc. 108, 65:5-13.]

Likewise, Consortium USA's expectation was that the CCA would replace the obligations under the SBLC because any amount paid under the CCA would be repaid to PNC through separate term loan documents. [Doc. 112, 209-212.] Through the facts and circumstances surrounding the CCA, the evidence establishes that the CCA, as a subsequent agreement, was intended to be a novation of the draw under SBLC and the accompanying RSA providing for reimbursement. Under principles of novation, the CCA would thereby extinguish the RSA agreement.

For this same reason, any claim by PNC that Consortium USA somehow waived all its rights and defenses under the RSA is completely baseless. You cannot waive a subsequent agreement and, as discussed above, the subsequent agreement actually replaces the original one. At a minimum, there are questions of fact on this issue and summary judgment in favor of PNC is not appropriate.

**(3)     PNC is estopped from demanding payment under the RSA**

PNC is likewise estopped from demanding payment under the RSA. Estoppel is a question of fact to be determined by the circumstances of each case. *Weiand v. Bd. of Trs. of Ky. Ret. Sys.,* 25 S.W.3d 88, 91–92 (Ky.2000) (citations omitted). Estoppel involves the reasonable reliance of one party on the conduct or statements of another party. *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 595 (Ky. 2012). If the relying party suffers harm as a result of its reliance, the law estops the other party from disavowing its earlier conduct or statements. *Fluke Corporation v. LeMaster,* 306 S.W.3d 55, 62 (Ky.2010).

Here, PNC is estopped from claiming reimbursement and repayment under the RSA in light of the subsequent CCA and the understanding that payment would not be funded under the RSA. There is no dispute that PNC signed the CCA. There is no dispute that Consortium understood that any payment under the CCA would be funded through a separate term note, and not the RSA. [Doc. 109, 370:10-23] In its internal records, PNC acknowledges this on the same day it executed the CCA. [Doc. 117-18.] Consortium USA relied, in good faith upon the conduct of PNC when it signed the CCA. [Doc. 114, 92:9-15.] Based upon PNC's representations to Consortium USA about the CCA,[17] Consortium USA relied on the fact PNC was contractually bound to fund a capital contribution to Consortium China and governed itself accordingly in its dealings with SCB and the Chinese government. Among other things, Consortium USA established a capital investment account in China that required Chinese regulator approval, hired Chinese accountants and lawyers to oversee the implementation of the capital investment account, and made representations to the Chinese government about the funding of a capital contribution from PNC. [Doc. 112, 249:1-6; Doc. 112, 249:13-22; Doc. 110, 62:12-17.]

In hindsight, it is clear that that PNC signed the CCA with no intentions of carrying it out. At a minimum, PNC knowingly ignored the CCA and selfishly chose the route to pay SCB's presentment, even though it would have dire consequences on Consortium USA that could have been avoided. [Doc. 110, 179:15-24, 180, 181:1-5.] The Fifth Circuit defines estoppel as "any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law. It is grounded not

---

[17] PNC argues that it was not "aware" of the CCA until June 10, 2010, however, Consortium USA submits that telephone conversations about the CCA were had between Roger Schreiber PNC representatives prior to Mr. Schreiber emailing Mr. Dodd a draft of the CCA on June 10, 2010. [Doc. 110, 62-64; Doc. 114, 81:15-24, 82, 141-142.]

on subjective intent but rather on the objective impression created by the actor's conduct." *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 525 (E.D. Tex. 2005). It would be unjust for PNC to recover on the RSA based upon its own conduct of breaching the CCA, improperly paying the SBLC, and demanding payment under the RSA.

A plaintiff's motion for summary judgment must be denied if affirmative defenses raise matters, which, if proved, may possibly preclude a judgment in favor of the plaintiff as a matter of law. 35B C.J.S. Federal Civil Procedure § 1158 (2008). Consortium USA has demonstrated that PNC is estopped from demanding payment under the RSA.

## C. Consortium USA is entitled to offset any amounts owed to PNC against its damages as alleged in the Amended Complaint

PNC seeks summary judgment on its counterclaim for monies due and owing pursuant to the RSA and Term Note. [Doc. 133.] Even if Consortium USA somehow owes PNC under the RSA and/or Term Note, PNC is not entitled to summary judgment under the doctrine of setoff. The right of offset allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." *Studley v. Boylston Nat. Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913).

Although, as a procedural device, the offset has been supplanted by the permissive counterclaim, the term is sometimes used in a substantive or remedial sense that is very near to the lay sense of the word, to mean an offset to liability, a netting out of opposing claims. *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1440-41 (7th Cir. 1993) citing *Trust Services of America, Inc. v. United States,* 885 F.2d 561, 566 (9th Cir.1989) (equitable setoff allows the government to reduce a tax refund by the amount of any improper deduction); *Templeton v. Sam Klain & Son, Inc.,* 425 N.E.2d 89, 94 (Ind.1981); (it is natural to speak of setting off the owner's claims against the subcontractors' claims under mechanic's lien law).

14

Consortium USA has specifically asserted the common law right of setoff in its Answer to PNC's Counterclaim. These setoffs would reduce or completely eliminate any obligations referenced in PNC's Counterclaim. Setoff is an equitable doctrine that requires the weighing of equities by the court.[18] *Davidson v. Geoghagan*, 6 Ky. 233, fn 1 (1813).

PNC may argue that the RSA contains exculpatory language that waives any liability on PNC's part regarding any defenses asserted by Consortium USA. As a preliminary matter, however, we know the RSA was executed both before the Term Note and the CCA. Therefore, its exculpatory provisions cannot apply to subsequent agreements. More importantly, the RSA contains a specific carve out for PNC's gross negligence or willful misconduct and conditions PNC's right to payment on PNC's good faith. [Doc. 133-2, ¶¶2, 3, 7(e).] What is more, Consortium USA specifically <u>did not waive</u> the right to assert an offset under the Term Note. [*See* Doc. 133-5.]

An evaluation of Consortium USA's setoff claim requires an evaluation and resolution of many factual issues. A motion for summary judgment is not the proper place for such a determination. As such, PNC's Second Motion for Summary Judgment must be denied. Since Consortium USA has submitted sufficient evidence for a jury to decide if PNC failed to act in good faith and was grossly negligent in honoring the presentation under the SBLC, summary judgment in favor of PNC is not appropriate.

**(1)**     **The amounts PNC claims are due under the RSA and Term Note are inconsistent and unliquidated.**

Assuming it can establish liability, to be granted summary judgment, PNC must also show that there is no genuine issue of material fact about the amounts owed by Consortium USA

---

[18] Consortium USA specifically asserted setoff in response to PNC's Counterclaim. It has the same effect whether asserted as a defense or a claim.

to PNC. However, issues of fact exist regarding the alleged amounts owed under the RSA and Term Note that preclude summary judgment. PNC's own documentation regarding the balances owed under the RSA and Term Note reflect errors in the calculation of principal owed by Consortium USA to PNC. The Affidavit of Thomas Dodd [Doc. 133-6], which serves as PNC's Fed. R. Civ. P. 56 evidence in support of PNC's Second Motion for Summary Judgment, is refuted by prior evidence in the record pertaining to the amounts owed by Consortium USA:

| RSA | |
|---|---|
| Principal claimed in demand [Doc. 38-7] | $1,749,279.21 |
| Principal claimed in Affidavit of Thomas Dodd [Doc. 133-6] | $1,766,690.55 |

| Term Note | |
|---|---|
| Principal claimed in demand [Doc. 38-7] | $842,370.78 |
| Principal claimed in Affidavit of Thomas Dodd [Doc. 133-6] | $822,370.78 |

Under Kentucky law, a cause of action for breach of contract must state "the contract, the breach and the facts which show the loss or damage by reasons of the breach." *Fannin v. Commercial Credit Corp.,* 249 S.W.2d 826, 827 (Ky.1952). Assuming that PNC has adequately established that contracts existed between Consortium USA and that Consortium USA breached these contracts, PNC has not presented enough evidence to demonstrate there are no genuine issues of material fact as to the damage caused by the breach. In fact, PNC has established the opposite. Moreover, PNC does not provide the Court enough information to discern if PNC's calculations go beyond the limitations of the RSA and Tern Note. Because there is conflicting evidence in the record that disputes the amounts owed by Consortium USA, a rational jury must determine the extent, if any, of Consortium USA's liability under the RSA and Term Note.[19]

## Conclusion

---

[19] Recognizing that multiple issues of fact exist on the issue of damages, Consortium USA did not move for summary judgment with respect to damages in its Partial Motion for Summary Judgment as to Liability. [Doc. 128.]

Any liability Consortium USA has under the RSA and Term Note cannot be determined until Consortium USA's claims and defenses against PNC are resolved. And, any liability in favor of PNC will be subject to setoff by any amount Consortium USA is awarded on its Amended Complaint. Accordingly, PNC's Second Motion for Summary Judgment must be denied and the issues of damages be determined by a trial by jury.

Respectfully submitted,

**FLAGEL & PAPAKIRK LLC**

/s/ Allison Bisig Oswall
James Papakirk (*pro hac vice*)
Allison Bisig Oswall (KBA #94641)
50 E Business Way, Suite 410
Cincinnati, OH 45241
513-984-8111
jpapakirk@fp-legal.com
*Co-counsel for Guangzhou Consortium Display Product Company, Ltd., and Consortium Companies, Incorporated*

**GREGORY W. McDOWELL, P.S.C.**

/s/ Gregory W. McDowell
Gregory W. McDowell (KBA 83227)
7405 Burlington Pike, Suite 201
Florence, Kentucky 41042
(859) 371-7774
gmcdowell@assuredtitle.com
*Co-Counsel for Guangzhou Consortium Display Product Company, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed with the Clerk using the CM/ECF system this 15th day of April, 2013, which will serve the following:

Cornelius E. Coryell, II ccoryell@wyattfirm.com
Christopher Tyson Gorman tgorman@wyattfirm.com
Byron E. Leet bleet@wyattfirm.com

| | |
|---|---|
| Kevin Ray Feazell | krf@corsbassett.com |
| Gregory W. McDowell | gmcdowell@assuredtitle.com |
| John Shannon Bouchillon | Shannon@haydencraiggrant.com |
| P. Blaine Grant | blaine@haydencraiggrant.com |
| Matthew Decker | Matt.Decker@alston.com |
| Kal Geercken | Karl.Geercken@alston.com |
| Alex Hood | Alex.Hood@alston.com |

        /s/ Allison Bisig Oswall
        Allison Bisig Oswall